IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| FEDERAL BUREAU OF INVESTIGATION | ) ) |
| Defendant. | ) ) |

Civil Action No.  12-CV-667-CKK

## DECLARATION OF DAVID M. HARDY

I, David M. Hardy, declare as follows:

(1)      I am currently the Section Chief of the Record/Information Dissemination Section

("RIDS"), Records Management Division ("RMD"), formerly at Federal Bureau of Investigation

Headquarters ("FBIHQ") in Washington, D.C., and currently relocated to Winchester, Virginia.  I

have held this position since August 1, 2002.  Prior to joining the Federal Bureau of Investigation

("FBI"), from May 1, 2001 to July 21, 2002, I was the Assistant Judge Advocate General of the

Navy for Civil Law.  In that capacity, I had direct oversight of Freedom of Information Act

("FOIA") policy, procedures, appeals, and litigation for the Navy.  From October 1, 1980 to April

30, 2001, I served as a Navy Judge Advocate at various commands and routinely worked with

FOIA matters.  I am also an attorney who has been licensed to practice law in the state of Texas

since 1980.

(2)      In my official capacity as Section Chief of RIDS, I supervise approximately 274

1

employees who staff a total of ten (10) FBIHQ units and two field operational service center

units whose collective mission is to effectively plan, develop, direct, and manage responses to

requests for access to FBI records and information pursuant to the FOIA as amended by the

OPEN Government ACT of 2007 and the Open FOIA Act of 2009; Privacy Act of 1974;

Executive Order 13526; Presidential, Attorney General and FBI policies and procedures; judicial

decisions; and Presidential and Congressional directives.  The statements contained in this

declaration are based upon my personal knowledge, upon information provided to me in my

official capacity, and upon conclusions and determinations reached and made in accordance

therewith.

(3)     Due to the nature of my official duties, I am familiar with the procedures followed

by the FBI in responding to requests for information pursuant to the provisions of the FOIA,

5 U.S.C. § 552, and the Privacy Act (PA) of 1974, 5 U.S.C. § 552a.  Specifically, I am aware of

the treatment which has been afforded plaintiff's FOIA request.

(4)     The declaration responds to the Court's July 1, 2012 Order providing the FBI with

the opportunity to more fully explain the exceptional circumstances it faces in responding to

plaintiff's FOIA request in accordance with the schedule proposed by plaintiff in the parties's

most recent Status Report, and is submitted in support of the FBI's motion for an *Open America*

Stay in order to allow it adequate time to properly address and process plaintiff's request.[1]  As

---

[1]  Plaintiff proposes a schedule under which the FBI would complete the scoping,
classification review, and FOIA processing of approximately 25,000 potentially responsive pages
by August 27, 2012, and the parties' motions for summary judgment would be fully briefed by
December 12, 2012.  The FBI proposes completing production by October 31, 2014 and
completing briefing by July 9, 2015.

discussed more fully below, to date the FBI has located approximately 25,000 pages of

potentially responsive pages[2] in this case and is currently scoping them, performing necessary

classification reviews, and has commenced FOIA processing.[3]  In addition, the FBI continues to

search for potentially responsive records from an office which recently was identified as possibly

having material.  To aid the Court and plaintiff in understanding the basis for the amount of time

the FBI has requested, this declaration provides an overview of the FBI's efforts to respond to

FOIA requests generally and plaintiff's FOIA request in particular.

## CORRESPONDENCE RELATED TO PLAINTIFF'S FOIA REQUEST

(5)      By faxed letter dated February 10, 2012, plaintiff submitted a FOIA request to

---

[2]  While 25,000 pages have been identified as being potentially responsive to Plaintiff's request, the FBI may determine as it processes the request that some records are not actually responsive or that records are duplicates.  Indeed, a preliminary assessment has revealed the existence of a number of duplicates within the 25,000 pages.  (*Id.*)  If this proves to be the case, the FBI will be able to reduce the processing time.

[3]  The parties recently discussed whether plaintiff was amenable to reducing the scope of its FOIA request in order to reduce the number of potentially responsive pages, thereby reducing the time needed by the FBI to process and release any non-exempt information.  The FBI identified two categories of documents that, if excluded from plaintiff's request, could reduce the time required to process Plaintiff's request: (1) classified material; and (2) operating manuals.  Classified materials were suggested as a category for exclusion because a preliminary assessment of the first group of 10,000 pages demonstrated that many of the documents, possibly as much as twenty-five percent of the 25,000 potentially responsive pages, will be subject to classification/declassification review if they are determined to be responsive.  I have been informed that counsel for the FBI contacted plaintiff's counsel on June 26, 2012 to ask whether plaintiff would consider excluding these categories from its request, as the FBI could reduce its processing time by six months if one category was excluded or by twelve months if both were excluded.  Counsel for the FBI did not receive a final response from plaintiff regarding the proposal to limit the two categories of documents, leading the FBI to the conclusion that plaintiff had rejected the proposal.

FBIHQ seeking:

> "Agency records concerning cell site simulator and other cell phone tracking
> technologies deployed by the Federal Bureau of Investigation to covertly locate,
> target, and track targets of interest."

Specifically, plaintiff requested the following agency records:

1. All documents concerning technical specifications of the StingRay device or other cell site simulator technologies.
2. All documents concerning procedural requirements or guidelines for the use of StingRay device or other cell site simulator technologies (e.g. configuration, data retention, data deletion).
3. All contracts and statements of work that relate to StingRay device or other cell site simulator technologies.
4. All memorandum regarding the legal basis for the use of StingRay device or other cell site simulator technologies.
5. All Privacy Impact Assessments or Reports concerning the use or capabilities of StingRay device or other cell site simulator technologies.

In addition to the above documents, plaintiff requested expedited processing of any responsive documents, and to receive "News Media" fee status for fee waiver purposes. **(See Exhibit A.)**

(6)     By letter dated February 16, 2012, the FBI acknowledged receipt of plaintiff's request to FBIHQ, assigning it FOIA 1182490, and advised plaintiff that it was searching the indices of the Central Records System ("CRS") for information responsive to the request. In addition, plaintiff was notified that his fee waiver request was under consideration. **(See: Exhibit B.)**

(7)     By faxed letter dated March 19, 2012, plaintiff administratively appealed FBI's failure to make a timely determination regarding its FOIA request to the Director of Office of Information Policy ("OIP"), Department of Justice ("DOJ"). **(See: Exhibit C.)**

4

(8)     On April 5, 2012, OIP-DOJ, acknowledged receipt of plaintiff's appeal, and assigned it appeal number AP-2012-01783. **(See: Exhibit D.)**

(9)     Plaintiff filed this instant lawsuit April 26, 2012.

(10)     By letter dated May 22, 2012, OIP-DOJ, informed plaintiff that its administrative appeal was closed inasmuch as the matter was now before the Court. **(See: Exhibit E.)**

(11)     By letter dated June 4, 2012, the FBI granted plaintiff's fee waiver request. **(See: Exhibit F.)**

(12)     By letter dated June 4, 2012, the FBI notified plaintiff that its request for expedited processing was denied.  FBI advised plaintiff that it had not provided enough information concerning the statutory requirements permitting expedition; specifically, plaintiff had not demonstrated an urgency to inform the public about the subject of its FOIA request. **(See: Exhibit G.)**

## HOW A FOIA REQUEST IS PROCESSED IN RIDS

(13)     To best put in context the time the FBI needs to complete the processing of the approximately 25,000 potentially responsive pages it has located in this case, it is useful to have an understanding of both the organization and magnitude of the FBI's FOIA/Privacy Act program.  As discussed more fully below, RIDS handles over 17,000 FOIA/Privacy Act requests annually and has, on average, 117 FOIA cases in litigation throughout the nation daily.  RIDS must carefully balance multiple competing demands to ensure the best use of finite resources.  A FOIA/Privacy Act request to the FBI passes through a series of discrete, separate phases in RIDS: (1) initial receipt and perfection, (2) searching for and collecting potentially responsive material,

(3) scoping the material for responsiveness, (4) classification or declassification review, if

needed, and (5) processing responsive material for release. These steps must be taken

sequentially, as access to the information must be controlled to ensure its integrity. While the

storage and movement of material at each of these steps is facilitated by the FBI's electronic

FOIA Data Processing System (FDPS), the vast bulk of the work on a FOIA/Privacy Act request,

whether at the administrative stage or in litigation, still requires action by an individual analyst

who must conduct a line by line review of each and every word on a page in order to determine,

ultimately, whether the material can be released.

(14)    In executing its mission to effectively plan, develop, direct, and manage responses

to requests for access to FBI records and information, RIDS provides program and policy

management pertaining to the research, review, analysis, processing, and

classification/declassification work related to the FOIA as amended by the OPEN Government

ACT of 2007 and the Open FOIA Act of 2009; Privacy Act of 1974; Executive Order 13526;

Presidential, Attorney General, and FBI policies and procedures; judicial decisions; and

Presidential and Congressional directives. RIDS also provides prepublication review of material

written by current and/or former FBI employees concerning FBI matters as mandated by the

FBI's employment agreement, executes the FBI's historic declassification program, and assists in

managing defense discovery efforts in large counter-terrorism criminal trials. RIDS currently

employs 274 personnel, most of whom are Legal Administrative Specialists ("LASs"), and who

are assigned among 10 units within RIDS, and two field operational service center units: a Work

Process Unit ("WPU"), three Classification Units ("CU"), five FOIA/Privacy Act Units ("FOIPA

Disclosure Units"),[4] and the Litigation Support Unit ("LSU").  To facilitate the Court and plaintiff's understanding of the FBI's FOIA program a brief discussion of these units follows.

        (a)     Work Process Unit

        (I)     The Work Process Unit ("WPU") is responsible for reviewing and sorting all correspondence/incoming requests for information from the public, Congress, Presidential Libraries, foreign governments, other federal and state agencies, and other FBI entities (i.e., FBI field offices, Legats).  WPU handles various initial tasks required to "perfect" a FOIA/Privacy Act request, including sending letters to acknowledge requests, advising a requester to provide identifying data so that an accurate records search can be made and/or to submit a notarized signature/Privacy Act waiver, and advising a requester when no responsive records are located.  WPU opens new requests, assigns a FOIA/Privacy Act ("FOIPA") Request Number, and enters the perfected requests into the FBI's electronic FOIA/Privacy Act  Document Processing System ("FDPS") tracking system.  WPU conducts searches of the general indices for identifiable records,[5] confirms responsive documents, stamps files for retention, addresses fee issues (other than fee waiver reviews), retrieves and forwards files for scanning into FDPS,

_____

[4] An off-site unit in Savannah, Georgia handles FOIPA requests; a sub-unit in Butte, Montana also handles FOIA requests.

[5] At times, when a standard search of the general indices does not produce anticipated results, WPU drafts an electronic communication called a "search EC" and directs it to those divisions most likely to house potentially responsive material.  The search EC then requires a specific point of contact from those divisions to respond to WPU within a specific time period, usually 30 days, and provide WPU with copies of any potentially responsive documents they have located within their division.  Searches that involve this level of coordination with other divisions are far more complex than the searches conducted on the average request and therefore often require additional time.

responds to status inquiries from requesters that do not have access to the FBI's website,[6] and

maintains requests prior to their transfer to the FOIPA Disclosure Units.  WPU is also

responsible for preparing "perfected" requests for transfer to the five FOIPA Disclosure Units.  A

request is considered "perfected" when all administrative tasks have been completed and all

responsive documents have been collected and scanned into FDPS.  Once a request has been

perfected, it is placed in backlog for assignment to a FOIPA Disclosure Unit for processing.

      (II)    Once WPU perfects a request it is sent to the "perfected backlog."

To ensure fairness to all requesters and to equitably administer the deluge of FOIA/Privacy Act

requests received by the FBI, a request is assigned based on the date of receipt on a "first-in, first-

out" basis from within each of three queues according to sound administrative practices.[7]  The

FBI uses a three-queue system as a way to fairly assign and process new requests.[8]  The three-

queue system established "multi-track" processing for requests, based on the amount of time and

work involved in handling a particular request.[9]  The system nevertheless preserves the principle

that, within the three queues, requests are still assigned and processed on a first-in/first-out basis.

The placement of a request in one of the three queues depends on the total amount of material

responsive to that request - 500 pages or less ("small queue"), 501 to 2,500 pages ("medium

---

[6] The FBI's acknowledgment letter to Plaintiff informs it to check the status of their FOIA request at www.fbi.gov/foia.

[7] See 28 C.F.R. § 16.5(a).

[8] This system went into effect on July 10, 1997, superseding the previous system of two queues (one for 100 pages or less, the other for requests greater than 100 pages).

[9] See 5 U.S.C. § 552(a)(6)(D)(I) and 28 C.F.R. § 16.5(b).

queue"), or more than 2,500 pages ("large queue").  This standard operating procedure, coupled

with the FBI's "first-in, first-out" policy, permits requests to be addressed in the order in which

they are received, while obviating the inequities to other requesters whose interests relate only to

a small number of documents.

        (b)   Classification Units:  The three Classification Units ("CUs") are responsible

for complying with the classification/declassification review of FBI records under Executive

Order 13526 and for conducting mandatory declassification review consistent with Executive

Order 13526.  The CUs review documents responsive to FOIA/Privacy Act requests, criminal

and civil discovery requests, Congressional and Presidential mandates, Presidential Library

requests, mandatory declassification requests, Office of Inspector General Reports, and other

federal agency requests in order to determine whether such material should remain classified or

be declassified.  In addition, the CUs review and prepare classified material for review by the

Department of Justice Review Committee ("DRC").[10]

        (c)   FOIPA Disclosure Units:  There are five FOIPA Units in RIDS - three of

these have also recently assumed responsibility for performing the same tasks performed by

WPU in addition to the processing tasks described below.  This change has enabled RIDS to

increase efficiency by reducing the time it takes to accomplish WPU functions upon receiving a

request.  FOIPA Disclosure Units perform the actual processing of records pursuant to the

provisions of the FOIA and Privacy Act.  "Processing" involves a word by word, page-by-page

---

        [10]  The DRC is the FBI's appellate authority with regard to the implementation and
administration of Executive Order 13526 and related directives and guidelines concerning
classified information.  See 28 C.F.R. § 17.14.

review of responsive documents to determine which, if any, FOIA and/or Privacy Act exemptions may apply. This includes redaction of the exempt material and notation of the applicable exemption(s) in the margin of each page and/or preparation of deleted page information sheets when pages are withheld in their entirety, all done electronically in FDPS. During the course of review, the FOIPA Disclosure Units consult with other government agencies, as necessary, for their respective determinations as to the releasability of the other agency's information contained within FBI records, or refer non-FBI documents to those originating agencies for processing and direct response to the requester. The FOIPA Disclosure Units ensure that FOIA and/or Privacy Act exemptions have been applied properly, no releasable material has been withheld, no material meriting protection has been released, all necessary classification reviews have been completed by transferring applicable cases to the CUs, and other government agency information and/or entire documents originating with other government agencies have been properly handled.

(d) Litigation Support Unit: The Litigation Support Unit ("LSU") is responsible for providing legal support and administrative assistance to the FBI's Office of the General Counsel in all FOIA requests that result in federal litigation. LSU coordinates the progress of the FBI's response to a particular FOIA/Privacy Act request as it progresses through the units described above, the receipt of substantive litigation-related information from involved FBI Special Agents in the field offices and operational Divisions at FBIHQ, and the referral of documents to other DOJ components and/or government agencies. LSU prepares the administrative record, drafts both procedural and substantive declarations, codes and Bates

stamps documents processed by the FOIPA Disclosure Units,[11] and drafts detailed declarations justifying the assertion of all applicable FOIA/Privacy Act exemptions.

(15)    To promote administrative efficiency in light of the tremendous number of requests it receives, LAS's in RIDS understandably must work on more than one request at a time.  Certain cases may require that the usual processing be halted midstream.  This can occur for a variety of reasons, including the resolution of classification issues, the location of additional records, or consultation with other government agencies as to the nature and propriety of releasing certain information.  In the interest of efficiency during this waiting period, the LAS may fully process other requests.  Large requests are often processed on parallel tracks with smaller requests in an attempt to ensure that one requester does not consume a disproportionate share of RIDS resources.

(16)    Consistent with standard administrative procedure, any records referred to the FBI from other DOJ components or other government agencies in response to a particular request are added to that pending FOIA/Privacy Act request.  This process is an equitable way for RIDS to maintain administrative control of FOIA/Privacy Act requests.  Under this system, the same LAS

---

[11]  A coded format is used in cases to assist the Court and parties in reviewing information which the FBI withholds within the context of processed documents. Each instance of information withheld pursuant to the FOIA is accompanied by a coded designation that corresponds to specified categories.  For example, if "(b)(7)(C)-1" appears on a document, the "(b)(7)(C)" designation refers to Exemption (b)(7)(C) of the FOIA, which concerns "Unwarranted Invasion of Privacy." The numerical designation "-1" following the "(b)(7)(C)" narrows the main category to the more specific subcategory of "Names and/or Identifying Data of Third Parties Merely Mentioned." Although adding codes is a time-consuming process, it helps the Court and the parties in those jurisdictions that accept coded declarations to explain more clearly the nature of the withheld material.

assigned to process a particular request will also handle the review of records referred by other

DOJ components or government agencies.  By ensuring continuity in the processing of

FOIA/Privacy Act requests, this system is not only fair to all persons seeking information under

the FOIA/Privacy Act, but is also administratively efficient.

### SEARCH FOR RECORDS RESPONSIVE TO PLAINTIFFS' FOIA REQUEST

(17)    As part of the sequential processes described above, and with regard to responding

to plaintiff's request in the instant case, the FBI has employed several mechanisms in its search to

identify documents potentially responsive to the request.  As a threshold matter, due to the

extraordinary breadth and depth of plaintiffs' FOIA request and the fact that it seeks primarily

non-investigative records, i.e., policy and technology related records, the request does not lend

itself readily or naturally to the searches that the FBI routinely conducts in response to FOIA

requests seeking access to FBI investigative files.  Consequently, the search for potentially

responsive records in the instant case proved more time consuming than would a search in

response to a request for purely investigative records.

(18)    The standard FBI search for responsive records pursuant to a FOIA request

involves using terms indexed in the FBI's Central Records System ("CRS"), which is an

investigative tool primarily managed and used by Special Agents to aid them in investigations.

The files are indexed by Special Agents with terms useful to an investigation such as names of

individuals, organizations, companies, publications, activities, or foreign intelligence matters (or

programs).  The index therefore might not contain terms that one would use in a more

generalized search such as the search in this case for "cell-site simulator technologies" related

12

material and for related aggregate data.

(19)     Because the subject matter of plaintiff's FOIA request did not lend itself to a CRS search, the FBI decided to conduct a more individualized inquiry (outside of the CRS) of certain FBI divisions and offices which were deemed reasonably likely to have potentially responsive records based on the subject matter of the request.  Before the FOIPA analyst assigned to plaintiff's administrative request circulated an Electronic Communication ("EC") to the FBIHQ divisions and offices most likely to possess responsive records, he determined that a different FOIA requester, in correspondence submitted in November 2011,  had already requested information for subject matter very similar to that sought by plaintiff.  The analyst assigned to plaintiff's request learned that the analyst assigned to the November 2011 request's standard CRS searches failed to locate responsive material.  As a result that analyst circulated a search EC on February 29, 2012.  Because the FOIPA analyst assigned to plaintiff's request knew the results of that EC issued as a result of the November 2011 request were pending, he decided to wait to see if any material obtained via that search EC might also be responsive to plaintiff's FOIA request.  If the responsive records were indeed the same, both FOIA cases could be pre-processed together for a concurrent release.

(20)     Plaintiff filed this instant action on April 26, 2012, just around the time that pertinent FBI Offices were responding to the EC circulated with regard to the somewhat similar November 2011 request by another entity.  After being served in this instant case on or about May 9, 2012, RIDS sent a search EC request on May 23, 2012, to all FBI Offices that might have material potentially responsive to plaintiff's request.  RIDS is in contact with and is waiting for

one last office to provide its response to this EC. After an additional FBI office was

subsequently identified as possibly having potentially responsive records in early June 2012, a

second search EC was circulated on June 29, 2012. RIDS received this office's response on July

20, 2012. Both ECs requested that personnel in the designated divisions conduct a thorough

search for any potentially responsive documents in their possession, in response to the plaintiff's

FOIA request.[12]

(21)    As of July 30, 2012, RIDS has received approximately 25,000 potentially

responsive pages. Because one response from an FBI office is still reviewing their records for

potentially responsive material the final page count may increase.

## FACTORS AFFECTING THE PROCESSING OF PLAINTIFF'S REQUESTS

(22)    Historically, the FBI repeatedly has sought additional funding for the creation of

new FOIA positions. For example, Congress appropriated funds in the 1997 fiscal budget

providing for 129 additional employees, and in the 1998 fiscal budget, providing for 239

additional employees. In 2003, the FBI moved from paper processing to data processing. Many

of these additional employees transitioned to document scanning to support the FBI's new

automated FOIA process. Despite these staffing constraints, RIDS made significant strides in

reducing its backlog of FOIA and Privacy Act requests. For perspective, at the end of FY 1998,

there were 10,816 pending requests in various stages of processing. By the end of FY 2005, the

number of pending requests had been reduced to 1,786. In order to achieve this reduction in its

---

[12]  A copy of plaintiff's February 10, 2012 FOIA request was incorporated into the text of
both search ECs to inure accuracy of the search.

14

backlog level, RIDS implemented various steps designed to streamline its work. These steps include the utilization of direct on-line computer searches to locate responsive records, use of form letters, formation of specific teams to address backlog issues, processes to handle consultations and referrals to other Government agencies, and the creation of the Litigation Support Unit to handle all FOIA/Privacy Act litigation in RIDS. RIDS also implemented the use of its FOIPA Document Processing System ("FDPS") to electronically process requests. All of the units responsible for responding to FOIA and Privacy Act requests, as well as the Office of the General Counsel's FOIA Litigation Unit, DOJ's Office of Information Policy, and certain other employees in the FBI have access to FDPS, which also reduces the amount of time spent physically transferring documents throughout the processing of a request, and is another time-saving step implemented by the FBI. In addition to these efforts, RIDS's ability to reduce the backlog as aided by a steady decline in the number of FOIA and Privacy Act requests received by the FBI from FY 2001 through FY 2005. (Intake fell as low as an average of 906 requests per month in FY 2004 and an average of 911 requests per month in FY 2005.)

(23)    In 2009, as a result of new Department of Justice FOIA guidelines, the average size of an FBI FOIA request jumped from 500 pages to over 1,000 pages, in effect doubling the work required to complete a request. The FBI responded by funding 35 contract employees to assist the FOIA program.

(24)    Despite the increase in size of each FOIA request, at the end of FY 2011 the number of pending FOIA requests was only 1,179. While the size of a FOIA request has increased, the number of requests received by the FBI also has significantly risen. For example,

15

the FBI received an average of 911 FOIA requests a month in FY 2005. In FY 2011, the FBI received a total of 17,755 FOIA and Privacy Act requests, or an average of 1,480 requests per month. And with two months left in FY 2012, we have already exceeded our FY 2011 intake. For FY 2012 thus far (October 2011 through today), the FBI has received 17,927 FOIA and Privacy Act requests, or an average of 1,793 requests per month. There are approximately 2.6 million pages of information currently assigned to the five FOIPA Disclosure Units for review. The number of pending requests has risen to 3,718. Among the requests currently pending processing by the FOIPA Disclosure Units are 81 large-queue requests, each of which involve in excess of 8,000 pages of potentially responsive records.

(25)    RIDS is continually considering and implementing procedures and processes to more efficiently address workload issues. One example of a shift in procedure designed to achieve additional efficiency is described in supra ¶ 14(c) - i.e., three FOIPA Disclosure Units have assumed "cradle to grave" responsibility for responding to FOIA and Privacy Act requests received by RIDS, to include completing initial tasks necessary to perfect requests, searching for responsive records, reviewing records, redacting exempt information and applying exemptions (other than Exemption 1/classification review), and preparing letters and records for release to requesters. This "one stop shopping" approach will allow RIDS to move FOIA and Privacy Act requests more efficiently through the various stages of processing.

(26)    Also as part of its on-going effort to continually improve its efficiency and effectiveness RIDS is upgrading its FOIPA Document Processing System ("FDPS"); the upgrade will add some important features that will maximize processing and improve efficiency.

16

However, RIDS's ability to review and process material responsive to the requests in plaintiff's

lawsuit, as well as other pending requests, will be impacted by this upgrade to FDPS. The

upgrade is currently scheduled to take place from mid-August to mid-September 2012. The

upgrade will involve installation of the next generation version of the FDPS software program.

At this time, we anticipate the installation process will take approximately 30 days to complete

fully, and will require a complete shutdown of the system for at least five full days, although we

will have a more accurate estimate once the upgrade process begins. During this time, all FOIA

work in RIDS will, of necessity, completely cease. It is also quite possible that at other times

during this continuous 30-day period, FDPS access will be considerably degraded or virtually

impossible, so productivity will be affected significantly.

(27)    In addition to the workload demands on its finite resources described above, the

FBI's ability to complete the processing of material responsive to plaintiff's request is directly

affected by competing litigation resource requirements. The aggregate volume of work in RIDS

directly impacts the availability and allocation of resources to requests in litigation. With finite

resources and an extremely high FOIA workload, RIDS constantly strives to adhere to and

comply with the FOIA's statutory and regulatory requirements for responsiveness and processing

times, to the maximum extent possible. This requires a careful balancing of resources and

priorities among both litigation and administrative requests as the same RIDS personnel who are

working to comply with numerous litigation deadlines, such as those discussed below,

simultaneously handle a constantly high volume of administrative requests and appeals. As of

today, the FBI is involved as a defendant in 121 pending FOIA lawsuits nationwide. A number

17

of these cases - including plaintiff's case - involve large volumes of records, and will continue to require that RIDS devote significant resources in order to comply with federal district court Orders or agreed-upon court-entered deadlines.  Examples of some of these cases include, but are not limited to:

   (a) *Lardner v. FBI, et al.*, Civ. A. No. 03-CV-0874 (D.D.C.) - 60,000 pages must be re-processed by June 2013, per agreement of the parties;

   (b) *Webster et al. v. DOJ, et al.*, Civ. A. No. 02-CV-0603 (D.D.C.) - approximately 3,000 pages per month must be processed until August 8, 2012, per Court Order and agreement of the parties;

   (c) *Kisseloff v. FBI, et al.*, Civ. A. No. 09-CV-391 (D.D.C.) - at least 2,000 pages per month must be re-processed until all pages (which exceed 300,000 pages) are completed, per court-approved agreement of the parties;

   (d) *International Counsel Bureau, et al. v. CIA, et al.*, Civ. A. No. 09-CV-2269 (D.D.C.) - 430 pages must be processed by July 31, 2012, per agreement of the parties;

   (e) *Garrett M. Graff v. FBI, et al.*, Civ. A. No. 09-CV-2047 (D.D.C.) - 6,000 pages must be processed by May 2013, per Court Order; and

   (f) *Corey Davis v. DHS, et al.*, Civ. A. No. 11-CV-203 (E.D.N.Y.) - the FBI has agreed to process 500 pages per month until the remaining 12,500 pages and 16 DVDs are completed.

  (28) Finally, RIDS personnel also work closely with staff from OIP to review and

assist with OIP's adjudication of administrative FOIA appeals. As of today, the FBI has 334

pending administrative appeals. Addressing these appeals results in additional demands - and

direct competition with - the same RIDS resources being expended on review and processing of

pending requests.

## PROPOSED PRODUCTION SCHEDULE

(29)    In the instant case RIDS is very actively working on the approximately 25,000

pages of potentially responsive pages located as the result its search. On June 18, 2012 RIDS

uploaded approximately 10,000 pages into FDPS via the "perfected" large queue. The remaining

approximately 15,000 pages will be uploaded into FDPS shortly, but scoping for responsiveness

for all 25,000 pages has been completed. Any other material subsequently received from the

remaining FBI office that is actively working on its response to the second search EC will be

uploaded as soon as possible. Due to the sensitivity of much of the material in this case, several

layers of internal review will be required within the FBI before any of it can be released. RIDS

is, and will, make every effort to move the material through the FOIA processes described above

as quickly as possible.

(30)    The efforts described above notwithstanding, the FBI's ability to complete

processing of plaintiff's request is directly affected by both competing administrative and

litigation related resource requirements. While requests in litigation of necessity receive a higher

priority than do pending, non-expedited administrative requests, the aggregate volume of work in

RIDS directly impacts how long it takes to respond to a request in litigation. With finite

resources and an extremely high FOIA workload, RIDS constantly strives to the maximum extent

possible to adhere to, and comply with the FOIA's statutory and regulatory requirements with

regard to responsiveness and processing times.  This requires a careful balancing of resources

and priorities among both litigation and administrative requests.

## CONCLUSION

(31)    The FBI takes very seriously its responsibilities with regard to the administration

of the FOIA/Privacy Act program and all reasonable efforts are being made to process both

administrative and litigation requests, including plaintiff's, in a timely manner.  The FBI's

proposal to scope, perform any necessary classification reviews, and process a minimum of 1,000

pages a month in the instant case, with the first release of responsive material by September 30,

2012, and continuing monthly thereafter until completion on October 31, 2014, recognizes

plaintiff's right to timely access to FBI records while also recognizing and preserving that same

right for other current litigants and administrative requesters.  As detailed above, the extremely

high volume of administrative and litigation related FOIA work, coupled with the serial nature of

the FOIA processing process, poses an exceptional demand on RIDS's finite resources.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true

20

and correct, and that all documents attached hereto are true and correct copies.

Executed this 30th day of July, 2012

DAVID M. HARDY

Section Chief
Record/Information Dissemination Section
Records Management Division
Federal Bureau of Investigation
Winchester, Virginia

21

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ELECTRONIC PRIVACY                  )
INFORMATION CENTER                  )
                                    )
        Plaintiff,                  )
                                    )
             v.                     )        Civil Action No. 12-CV-00667-CKK
                                    )
FEDERAL BUREAU OF                   )
INVESTIGATION,                      )
                                    )
        Defendant.                  )
                                    )

# **Exhibit A**

# ELECTRONIC PRIVACY INFORMATION CENTER

1718 CONNECTICUT AVENUE NW, SUITE 200
WASHINGTON, D.C. 20009
202-483-1140
FAX 202-483-1248

CONFIDENTIAL -- SUBJECT TO ATTORNEY-CLIENT PRIVILEGE

ANY DISSEMINATION, DISTRIBUTION, OR COPYING OF THIS COMMUNICATION BY OTHER THAN ITS ADDRESSEE IS STRICTLY PROHIBITED. IF THIS FACSIMILE HAS BEEN RECEIVED IN ERROR, PLEASE IMMEDIATELY NOTIFY THE SENDER

## TO: DAVID M. HARDY

COMPANY:

Federal Bureau of Investigation

RECIPIENT'S FAX NUMBER:

(540) 868-4997

RECIPIENT'S TELEPHONE NUMBER:

(540) 868-4500

## FROM:  ALAN BUTLER

DATE:

2/10/12

SENDER'S EMAIL:

foia@epic.org

SENDER'S TELEPHONE  NUMBER:

(202) 483-1140

TOTAL NO. OF PAGES INCLUDING COVER:

14

## COMMENTS:

## FOIA Request

February 10, 2012

**VIA FACSIMILE (540) 868-4977**
David M. Hardy
Chief, Record/Information Dissemination Section, Records Management Division
170 Marcel Drive
Winchester, VA 22602-4843
(540) 868-4500 (Telephone)
(540) 868-4997 (Fax)

      Re:     **Freedom of Information Act Request and Request for Expedited Processing**

Dear Mr. Hardy:

      This letter constitutes a request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and is submitted on behalf of the Electronic Privacy Information Center ("EPIC"). As detailed below, EPIC seeks agency records concerning cell site simulator and other cell phone tracking technologies deployed by the Federal Bureau of Investigation ("FBI") to covertly locate, target, and track targets of interest.

      <u>Factual Background</u>

      On July 23, 2008 Daniel David Rigmaiden was indicted on various counts of conspiracy, wire fraud, and identity theft by U.S. Attorneys in Phoenix, Arizona.[1] Rigmaiden was located after "federal agents used a stingray to track a mobile device to an apartment building."[2] A StingRay is a device that can triangulate the source of a cellular signal by acting "like a fake cell phone tower" and measuring the signal strength of an identified device from several locations.[3]

      Defendant Rigmaiden has submitted various discovery motions seeking information about the investigatory techniques used to locate him.[4] In opposition to one such motion, the Department of Justice submitted a memorandum, dated October 27, 2011, by the FBI's Supervisory Special agent who stated that all data from stingray-type devices are deleted because the devices may tend to pick up information "from all

---

[1] *United States v. Rigmaiden*, CR 08-814-PHX-DGC, 2010 WL 3463723 (D. Ariz. Aug. 27, 2010).
[2] Jennifer Valentino-Devries, *Feds Shift Tracking Defense*, THE WALL STREET JOURNAL, Nov. 3, 2011, *available at* http://online.wsj.com/article/SB10001424052970204621904577014363024341028.html.
[3] *Department of Justice Neuters Fourth Amendment with StingRay Ruling*, TECHANDFILM, Nov. 6, 2011, *available at* http://techandfilm.wordpress.com/2011/11/06/department-of-justice-neuters-forth-amendment-with-stingray-ruling/.
[4] *Id.*

1

wireless devices in the immediate area of the FBI device that subscribe to a particular provider ... including those of innocent, non-target devices."[5]

In support of its October 27, 2011 memorandum, the U.S. Attorneys submitted the affidavit of supervisory special agent Bradley S. Morrison.[6] Agent Morrison is the Unit Chief of the Tracking Technology Unit (TTU), Traditional Technology Section, Operational Technology Division in Quantico, Virginia.[7] As such, Agent Morrison is responsible for the "development, procurement and deployment of technical assets and capabilities to covertly locate, tag and track targets of interest in support of all FBI investigative, intelligence collection and operational programs."[8] Agent Morrison's affidavit stated that:

> FBI policy requires that at the conclusion of a location operation, FBI technical personnel are to purge all data stored in the [tracking device]. During a local operation, the electronic serial numbers (ESNs) (or their equivalent) from all wireless devices in the immediate area of the FBI device that subscribe to a particular provider may be incidentally recorded, including those of innocent, non-target devices.[9]

As the court documents submitted by the Government in *US v. Rigmaiden* make clear, the FBI currently uses "cell site simulator" technologies such as StingRay to "locate, tag and track."[10] These devices were procured from third party vendors, which would require contracts and/or statements of work. The devices presumably have related technical documents and descriptions of operational requirements. Given the potential impact on "innocent, non-target devices," and the requirements of the E-Government Act of 2002, the agency is obligated to conduct a Privacy Impact Assessment ("PIA") before using these devices . As the Department of Justice PIA Official Guidance book describes:

> Section 208 of the E-Government Act of 2002 requires all federal agencies to conduct a PIA before developing or procuring information technology that collects, maintains, or disseminates information that is in identifiable form or before initiating a new collection of information that will be collected, maintained, or disseminated using information technology and that includes any information in identifiable form in certain circumstances involving the public.[11]

---

[5] Affidavit of Supervisory Special Agent Bradley S. Morrison, *US v. Rigmaiden*, No. 08-cr—00814 at *3 (D. Ariz. Oct. 27, 2011).
[6] *Id.* at *1.
[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] *Id.* ("As the Unit Chief of the TTU, I am responsible for the development, procurement and deployment of technical assets and capabilities to covertly *locate, tag, and track* targets of interest in support of all FBI investigative, intelligence collection and operational programs.").
[11] OFFICE OF PRIVACY AND CIVIL LIBERTIES, UNITED STATES DEPARTMENT OF JUSTICE, PRIVACY IMPACT ASSESSMENTS – OFFICIAL GUIDANCE (Revised August 2010), *available at* http://www.justice.gov/opcl/pia_manual.pdf.

Because the "[Government's] position continues to be that, as a factual matter, the [aircard tracking] operation did not involve a search or seizure under the Fourth Amendment,"[12] and because Special Agent Morrison insists that the equipment qualifies as "a pen register/trap and trace device, as defined in 18 U.S.C. §§ 3127(3) and (4),"[13] it is likely that the FBI or another office has issued a legal basis memorandum regarding the use of cell site simulator technology.

### Documents Requested

EPIC requests copies of the following agency records in possession of the ___:

1. All documents concerning technical specifications of the StingRay device or other cell site simulator technologies.
2. All documents concerning procedural requirements or guidelines for the use of StingRay device or other cell site simulator technologies (e.g. configuration, data retention, data deletion).
3. All contracts and statements of work that relate to StingRay device or other cell site simulator technologies.
4. All memoranda regarding the legal basis for the use of StingRay device or other cell site simulator technologies.
5. All Privacy Impact Assessments or Reports concerning the use or capabilities of StingRay device or other cell site simulator technologies.

### Request for Expedited Processing

This request warrants expedited processing because it is made by "a person primarily engaged in disseminating information ..." and it pertains to a matter about which there is an "urgency to inform the public about an actual or alleged federal government activity." 5 U.S.C. § 552(a)(6)(E)(v)(II) (2008); *Al-Fayed v. CIA*, 254 F.3d 300, 306 (D.C. Cir. 2001).

EPIC is "primarily engaged in disseminating information." *American Civil Liberties Union v. Department of Justice*, 321 F. Supp. 2d 24, 29 n.5 (D.D.C. 2004).

There is a particular urgency for the public to obtain information about location tracking technology, given the heated debate surrounding the recent US Supreme Court decision, *US v. Jones*, holding unanimously that the use of a GPS Tracking Device was a Fourth Amendment search requiring a warrant. *United States v. Jones*, 565 U.S. ___ (2012). The public's interest in and desire for information about the Government's

---

[12] Government Memorandum re Motion for Discovery, *US v. Rigmaiden*, No. 08-cr—00814 at *1 n.1 (D.Ariz Oct. 27, 2011).
[13] Affidavit of Supervisory Special Agent Bradley S. Morrison, *US v. Rigmaiden*, No. 08-cr—00814 at *3 (D. Ariz. Oct. 27, 2011).

tracking activities is reflected in the sheer volume of news coverage that *Jones* and related cases have received in the last six months. For examples, see EPIC: US v. Jones.[14]

### Request for "News Media" Fee Status

EPIC is a "representative of the news media" for fee waiver purposes. *EPIC v. Department of Defense*, 241 F. Supp. 2d 5 (D.D.C. 2003). Based on our status as a "news media" requester, we are entitled to receive the requested record with only duplication fees assessed. Further, because disclosure of this information will "contribute significantly to public understanding of the operations or activities of the government," any duplication fees should be waived.

Thank you for your consideration of this request. As provided in 6 C.F.R. § 5.5(d)(4), I will anticipate your determination on our request for expedited processing within ten (10) calendar days.

Respectfully Submitted,

Alan Butler
EPIC Appellate Advocacy Fellow

Ginger McCall
Director, EPIC Open Government Project

---

[14] *Available at* http://epic.org/amicus/jones/.

4

Exhibit 1

1  ANN BIRMINGHAM SCHEEL
   United States Attorney
2  District of Arizona

3  FREDERICK A. BATTISTA
   Maryland State Bar Member
   PETER S. SEXTON
   Arizona State Bar No. 011089
4  JAMES R. KNAPP
   Arizona State Bar No. 021166
   Assistant U.S. Attorneys
5  Two Renaissance Square
   40 North First Avenue, Suite 1200
6  Phoenix, Arizona 85004
   Telephone: (602) 514-7500
7  Fred.Battista@usdoj.gov
   Peter.Sexton@usdoj.gov
   James.Knapp2@usdoj.gov
8
                           UNITED STATES DISTRICT COURT
9
                                DISTRICT OF ARIZONA
10

11  United States of America,                    No. CR-08-0814-PHX-DGC

12              Plaintiff,                        GOVERNMENT'S MEMORANDUM
                                                  RE MOTION FOR DISCOVERY
13       v.

    Daniel David Rigmaiden, et al.,
14
                Defendant.
15

16         The United States, through undersigned counsel, submits this Memorandum in an attempt

17  to clarify and narrow some issues for the upcoming October 28, 2011, hearing regarding

18  Defendant's Motion for Discovery.

19         First, the United States proposes that the Court assume, arguendo, for Defendant's Motion

20  for Discovery and any forthcoming motion to suppress, that the aircard tracking operation was

21  a Fourth Amendment search and seizure. [1]

22  _____

23         [1] The United States' position continues to be that, as a factual matter, the operation did
    not involve a search or seizure under the Fourth Amendment. The United States explained in
24  its March 11, 2011, Memorandum Regarding Law Enforcement Privilege that Defendant does
    not have a reasonable expectation of privacy in his general location or in the cell site records he
25  transmitted wirelessly to Verizon. (CR 465 at 13-17.) Therefore, the use of the cell site
    simulator is not a search under the Fourth Amendment. See, e.g., Smith v. Maryland, 442 U.S.
26  735, 740 (1979) ("application of the Fourth Amendment depends on whether the person
    invoking its protection can claim a 'justifiable,' a 'reasonable,' or a 'legitimate expectation of
27  privacy' that has been invaded by government action"). Nevertheless, in an attempt to simplify
    the analysis and to avoid unnecessary disclosure of privileged information, the United States will
28                                                                              (continued...)

1    Second, the United States agrees to rely solely on the Rule 41 tracking warrant,

2  application, and affidavit, No. CR08-90330-MISC, to authorize the use of equipment to

3  communicate directly with Defendant's aircard and determine its location. [2]

4    Third, the United States will agree to allow the Court to factually assume, that, at the

5  conclusion of the July 16, 2008, aircard tracking operation, the FBI located the aircard within

6  Unit 1122 of the Domocilio Apartments. [3]

7    Fourth, with respect to whether the equipment used to locate the aircard was operated in

8  a "man in the middle" manner or caused a brief "disruption of service," the United States will

9  agree that the Court can assume, arguendo, that it did. [4]

10    Fifth, for the purpose of defendant's pending motion(s) to compel discovery and his

11  prospective motion to suppress, the United States does not expect to present facts in any in

12  camera proceeding that it would then request the Court to consider for the purpose of rebutting

13  any of defendant's claims without disclosing those facts to the defendant.

14

15
_____

[1] (...continued)
16  no longer argue in this case only that the aircard tracking operation was not a search or seizure
   under the Fourth Amendment, and will instead rely on its authority under the hybrid order and
17  tracking warrant, Defendant's lack of standing, and, if necessary, the agents' good faith reliance
   on these court orders.
18

    [2] Again, the United States' position is that the hybrid order confers sufficient authority
19  to use a cell site simulator and that a tracking warrant is unnecessary. Nevertheless, the United
   States will rely solely on the Rule 41 warrant application, affidavit and order in this case to
20  authorize its use of a cell site simulator. The hybrid order, No. CR08-90331-MISC, will be used
   to justify obtaining cell site and other non-content information from Verizon Wireless.
21

    [3] This is not, in fact, accurate. As explained previously, the FBI was only able to
22  narrow the aircard down to three or four apartments. But to avoid disclosure of privileged
   information and simplify the Fourth Amendment analysis, the United States will concede, for
23  purposes of any forthcoming motion to suppress, that the FBI located the aircard within Unit
   1122 of the Domocilio Apartments.
24

    [4] The United States indicated at the September 22, 2011, hearing that it believed "the
25  simulator in this case was taking the message it received from the aircard and sending it on to
   a Verizon tower." (RT 9/22/2011 (CR 637) at 61:5-8.) As FBI Agent Bradley Morrison
26  clarifies in the attached affidavit, however, the equipment did not capture any content and it did
   not act as a "man in the middle," collecting data and passing it along to Verizon Wireless.
27  (Morrison Aff. 2-3 ¶ 4.)

28                                        2

1    Finally, the United States is submitting a sworn affidavit from Bradley Morrison, the Unit
2    Chief of the FBI Tracking Technology Unit, to describe facts regarding the aircard tracking
3    operation and clarify some remaining factual issues.  The United States will make Agent
4    Morrison available ex parte and in camera to answer questions the Court may have about the
5    tracking operation and the equipment used.  In addition, the United States will make this
6    individual available for testimony at any future suppression hearing, so long as the United States
7    has an opportunity to file a motion in limine in order to seek to limit cross-examination regarding
8    privileged law enforcement sensitive material.  In order to proceed in this fashion, the United
9    States requests an opportunity to explain, in camera, the basis for its claims of privilege.

10    Respectfully submitted this 27th day of October, 2011.

11                                            ANN BIRMINGHAM SCHEEL
                                              Acting United States Attorney
12                                            District of Arizona

13
                                              S/Frederick A. Battista
14
                                              FREDERICK A. BATTISTA
15                                            PETER S. SEXTON
                                              JAMES R. KNAPP
16                                            Assistant U.S. Attorneys

17

18

19

20

21

22

23

24

25

26

27

28                                 3

1                              **CERTIFICATE OF SERVICE**

2

3          I hereby certify that on October 27, 2011, I caused the attached document to be electronically transmitted to the Clerk's Office using the ECF system for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

4

5 Philip Seplow
Shadow Counsel for Defendant Daniel David Rigmaiden

6 Taylor Fox
Counsel for Defendant Ransom Carter

7
A copy of the attached document was also mailed to:

8

9 Daniel David Rigmaiden
Agency No. 10966111
CCA-CADC
10 PO Box 6300
Florence, AZ 85132

11

12 S/James Knapp

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                              4

Exhibit 2

# AFFIDAVIT OF SUPERVISORY SPECIAL AGENT BRADLEY S. MORRISON

1.      I, Bradley S. Morrison, am a Supervisory Special Agent with the Federal Bureau of Investigation. I am assigned as the Unit Chief of the Tracking Technology Unit (TTU), Traditional Technology Section, Operational Technology Division in Quantico, Virginia. I have been an FBI Special Agent since 1996. As the Unit Chief of the TTU, I am responsible for the development, procurement and deployment of technical assets and capabilities to covertly locate, tag and track targets of interest in support of all FBI investigative, intelligence collection and operational programs. As part of these duties, I am responsible for overseeing deployment and monitoring policy compliance governing the FBI's use of equipment to locate cellular devices.

2.      On July 16, 2008, FBI technical personnel used equipment to locate an aircard believed to be used by the defendant in this matter, and that equipment falls within the statutory definition of a pen register/trap and trace device. The actual make and model of the equipment used in any particular operation by the FBI is law enforcement sensitive, and pursuant to FBI policy, cannot be released to the general public.

3.      As a pen register/trap and trace device, as defined in 18 U.S.C. §§ 3127(3) and (4), the equipment used in this case can only record, decode or capture electronic impulses which identify the originating number of a source of electronic communications, or other

1

dialing, routing, signaling and addressing information utilized in the processing and

transmitting of electronic communications. To comply with the legal definition of a pen

register/trap and trace device, the equipment used in this case is unable to upload, encode

or write any information to a target device. If the equipment were capable of these

functions, it would no longer be in compliance with the statutory definition of a pen

register/trap and trace device. Therefore, the equipment used in this case is

technologically unable to take any action to reprogram the hardware or software in the

aircard or the defendant's laptop.

4.      Further, 18 U.S.C. §§ 3127(3) and (4) specifically prohibit pen register or trap and

trace devices from recording, decoding or capturing the substantive content of any

communication. Were the equipment to do this, by statute, it would no longer be a pen

register/trap and trace device. Instead, it would be an electronic intercept device

regulated by Title III. To ensure that the content of communications is not intercepted, in

accordance with 18 U.S.C. §3121(c), all pen register/trap and trace devices used by

government agencies must be restricted from recording or decoding any data or impulses

not strictly related to the dialing, routing, signaling or addressing information utilized in

the processing or transmitting of wire or electronic communications. The equipment

used in this case was in compliance with the requirements of the statutes cited above.

Therefore, the pen register/trap and trace equipment used to locate the defendant's aircard

did not capture, collect, decode, view, or otherwise obtain any content transmitted from

2

the aircard, and therefore was unable to pass any of this information from the aircard to
Verizon Wireless.

5.     FBI policy requires that at the conclusion of a location operation, FBI technical
personnel are to purge all data stored in the pen register/trap and trace equipment. During
a location operation, the electronic serial numbers (ESNs) (or their equivalent) from all
wireless devices in the immediate area of the FBI device that subscribe to a particular
provider may be incidentally recorded, including those of innocent, non-target devices.
Purging is done by the FBI as an additional, internal procedural safeguard to ensure (1)
that the privacy rights of those innocent third parties are maintained, (2) that the FBI does
not store or maintain pen register/trap and trace data beyond the scope of its legal
authorization, or (3) that the FBI does not collect information about individuals who are
not the subject of criminal or national security investigations.

6.     I declare under penalty of perjury that the foregoing facts are true and correct.

_10/27/11_                     _Bradley S. Morrison_
     Date                          Bradley S. Morrison
                                   Supervisory Special Agent
                                   FBI

3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 12-CV-00667-CKK |
| FEDERAL BUREAU OF INVESTIGATION, | ) ) ) | |
| Defendant. | ) ) | |

# Exhibit B

U.S. Department of Justice



**Federal Bureau of Investigation**

*Washington, D.C. 20535*

February 16, 2012

MR. ALAN BUTLER
ELECTRONIC PRIVACY INFORMATION CENTER
SUITE 200
1718 CONNECTICUT AVENUE, NW
WASHINGTON, DC 20009

FOIPA Request No.: 1182490- 000
Subject: STINGRAY/SPECIFIC
PROCEDURAL DOCUMENTS

Dear Mr. Butler:

This acknowledges receipt of your Freedom of Information/Privacy Acts (FOIPA) request to the FBI.

☒ This FOIPA request has been received at FBI Headquarters for processing.

☐ This FOIPA request has been received at the **[_____ Resident Agency / _____ Field Office]** and forwarded to FBI Headquarters for processing.

☒ We are searching the indices to our Central Records System for the information responsive to this request. You will be informed of the results in future correspondence.

☒ Your request for a fee waiver is being considered and you will be advised of the decision at a later date.

☐ Please check for the status of your FOIPA request at www.fbi.gov/foia

The FOIPA Request number listed above has been assigned to your request. Please use this number in all correspondence concerning your request. Your patience is appreciated.

Very truly yours,

David M. Hardy
Section Chief,
Record/Information
  Dissemination Section
Records Management Division

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civil Action No. 12-CV-00667-CKK |
| FEDERAL BUREAU OF INVESTIGATION, | ) ) ) |
| Defendant. | ) ) ) |

# Exhibit C

*[handwritten: Full (4) Failure?  FBI  AP-2012-01783]*

# ELECTRONIC PRIVACY INFORMATION CENTER

1718 CONNECTICUT AVENUE NW, SUITE 200
WASHINGTON, D.C. 20009
202-483-1140
FAX 202-483-1248

CONFIDENTIAL – SUBJECT TO ATTORNEY-CLIENT PRIVILEGE

ANY DISSEMINATION, DISTRIBUTION, OR COPYING OF THIS COMMUNICATION BY OTHER THAN
ITS ADDRESSEE IS STRICTLY PROHIBITED. IF THIS FACSIMILE HAS BEEN RECEIVED IN ERROR,
PLEASE IMMEDIATELY NOTIFY THE SENDER

**TO: MELANIE ANN PUSTAY**           **FROM:  ALAN BUTLER**

COMPANY:                                              DATE:

Office of Information Policy - DOJ           3/19/12

RECIPIENT'S FAX NUMBER:                    SENDER'S EMAIL:

202-514-3642                                         foia@epic.org

RECIPIENT'S TELEPHONE NUMBER:       SENDER'S TELEPHONE NUMBER:

                                                              (202) 483-1140

TOTAL NO. OF PAGES INCLUDING COVER:

9

## COMMENTS:

**Freedom of Information Act Appeal –
FBI FOIPA Request No.: 1182490-000
Subject: STINGRAY/SPECIFIC PROCEDURAL DOCUMENTS**

☞ RECEIVED

**MAR 1 9 2012**

Office of Information Policy

March 19, 2012

**VIA FACSIMILE 202.514.FOIA (3642) AND CERTIFIED MAIL**

Freedom of Information Appeal
Melanie Ann Pustay, Director
Office of Information Policy
U.S. Department of Justice
Suite 11050
1425 New York Avenue, N.W.
Washington, D.C. 20530-000

**Re: Freedom of Information Act Appeal – FOIPA Request No: 1182490-000**

Dear Ms. Pustay,

This letter constitutes an appeal under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and is submitted to the Federal Bureau of Investigation ("FBI") by the Electronic Privacy Information Center ("EPIC").

On February 10, 2012, EPIC requested, via facsimile, agency records related to the use of cell site simulator and other cell phone tracking technologies deployed by the FBI to covertly locate and track targets of interest. Specifically, EPIC requested the following:

1. All documents concerning technical specifications of the StingRay device or other cell site simulator technologies.

2. All documents concerning procedural requirements or guidelines for the use of StingRay device or other cell site simulator technologies (e.g. configuration, data retention, data deletion).

3. All contracts and statements of work that relate to StingRay device or other cell site simulator technologies.

4. All memoranda regarding the legal basis for the use of StingRay device or other cell site simulator technologies.

5. All Privacy Impact Assessments or Reports concerning the use or capabilities of StingRay device or other cell site simulator technologies.

*See* Appendix 1. In addition, EPIC's FOIA Request stated that EPIC was a news media organization and requested a waiver of all fees associated with the request and a desire for expedited processing.

EPIC received a letter acknowledging receipt of this FOIA request on February 16, 2012, but EPIC has not received any other communications from the FBI regarding this FOIA Request.

## EPIC Appeals the FBI's Failure to Disclose Records

EPIC hereby appeals the FBI's failure to make a timely determination regarding EPIC's FOIA Request. The Freedom of Information Act requires the agency to make a "determination" regarding a FOIA request within twenty working days.[1] EPIC also requested expedited processing on this request. The Freedom of Information Act requires the FBI to decide whether to grant an expedited processing request and notify the requester of that decision within 10 working days of the request to expedite.[2]

EPIC's FOIA request and fee waiver were complete, in accordance with FBI regulations, and submitted to the proper office. EPIC's request was written and sent by facsimile.[3] The request includes all required information: it specifically mentioned that it was made under FOIA; the facsimile coversheet was marked "FOIA"; the request was addressed to the appropriate FOIA office, based on the current FBI FOIA Home Page; and EPIC has no preference for the format in which the records are returned, so did not specify. Additionally, the request specified EPIC's fee category (news media) and described how the requester believes each of the criteria for fee waiver is met.[4] Finally, EPIC described the particular records sought "in enough detail to enable Department personnel to locate them with a reasonable amount of effort" including the subject matter of the records.[5]

A "determination" must include at least a list of the documents to which the requester is being denied access and reasons for the withholding. "Denial of this information would in all likelihood be a violation of due process as well as effectively gutting the reasons for applying the exhaustion doctrine in FOIA cases."[6] An agency's

---

[1] 5 U.S.C. § 552(a)(6); *see also Wash. Post v. Dep't of Homeland Sec.*, 459 F. Supp. 2d 61, 74 (D.D.C. 2006) (citing *Payne Enters. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1998)) ("FOIA was created to foster public awareness, and failure to process FOIA requests in a timely fashion is 'tantamount to denial.'"). The twenty days begins to run once the request is received. 28 C.F.R. § 16.6(b) ("Ordinarily, a component shall have twenty business days from when a request is received to determine whether to grant or deny the request. Once a component makes a determination to grant a request in whole or in part, it shall notify the requester in writing.") (2011).

[2] 28 C.F.R. § 16.5(c)(4) (2011).

[3] 28 C.F.R. § 16.3.

[4] *Id.* at § 16.11(b)(6).

[5] *Id.* at § 16.3(b).

[6] *Shermco Indus., Inc. v. Sec'y of Air Force*, 452 F. Supp. 306, 317 n 7 (N.D Texas. 1978) *rev'd on other grounds*, 613 F.2d 1314 (5th Cir. 1980); *see also Oglesby v. Dep't of Army*, 920 F.2d 57, 65 (D.C. Cir. 1990) (citing *Shermco Indus.*, 452 F. Supp. 306).

2

"acknowledgement" of a request "cannot be construed as a 'determination' ... if it does not grant or deny the right to appeal."[7]

Twenty-four working days have elapsed since EPIC's FOIA request was sent by facsimile. The FBI has made no response of any kind to EPIC's request for documents, and therefore has not made a "determination." Because this request was complete, in accordance with regulations, and submitted to the proper office, the FBI's failure to make a "determination" within the twenty-day window violates the FOIA.

EPIC Renews Its Request for "News Media" Fee Status

At this time, EPIC reiterates and renews all arguments that it should be granted "news media" fee status. EPIC is a non-profit, educational organization that routinely and systematically disseminates information to the public. EPIC is a representative of the news media.[8]

EPIC's status as a "news media" requester entitles it to receive requested records with only duplication fees assessed. In addition, because disclosure of this information will "contribute significantly to public understanding of the operations or activities of the government," any duplication fees should be waived.

EPIC Renews Its Request for Expedited Treatment and Requests Expedited Treatment of This Appeal

EPIC reiterates its request for expedited processing of its FOIA Request to the FBI. In addition, this appeal also warrants expedited processing for the same reasons: it is made by "a person primarily engaged in disseminating information . . . " and it pertains to a matter about which there is an "urgency to inform the public about an actual or alleged federal government activity."[9]

EPIC is "primarily engaged in disseminating information."[10] There is a particular urgency for the public to obtain information about location tracking, especially in light of the Supreme Court's recent opinion in *United States v. Jones*, 132 S. Ct. 945 (2012). The use of location tracking technology has become commonplace, and Justice Department officials have described the Supreme Court's decision to overturn warrantless tracking as a "sea change" in Fourth Amendment law.[11] In addition, the use of advanced location

[7] *Martinez v. FBI*, No. 82-1547 (D.D.C. Oct. 11, 1983) (citing *Shermco Indus., Inc., v. Sec'y of Air Force, 1* 452 F. Supp. 306 (N.D. Tex. 1978) and *Marschner v. Dep't of State*, 470 F. Supp. 196, 199 (D. Conn. 1979)).
[8] *EPIC v. Dep't of Defense*, 241 F. Supp. 2d. 5 (D.D.C. 2003).
[9] 5 U.S.C. § 552(a)(6)(E)(v)(II) (2008); *Al-Fayed v. CIA*, 254 F.3d 300, 306 (D.C. Cir. 2001).
[10] *American Civil Liberties Union v. Dep't of Justice*, 321 F. Supp. 2d 24, 29 n.5 (D.D.C. 2004).
[11] *See* Julia Angwin, *FBI Turns Off Thousands of GPS Devices After Supreme Court Ruling*, The Wall Street Journal – Digits Blog (Feb. 25, 2012), http://blogs.wsj.com/digits/2012/02/25/fbi-turns-off-thousands-of-gps-devices-after-supreme-court-ruling/.

3

tracking techniques opens the door to domestic surveillance on an unprecedented scale.[12] The FBI's current legal position that "the [use of cell site simulator technology] did not involve a search or seizure under the Fourth Amendment,"[13] directly contradicts the Supreme Court's recent opinion in *Jones*. It is important that the public have access to the documents it needs to evaluate the FBI's continuing use of location tracking techniques.

Conclusion

By failing to reply to EPIC's FOIA Request within the required time period, the FBI is in violation of 5 U.S.C. § 552(a)(6). EPIC appeals the FBI's non-responsiveness for EPIC's FOIA Request. EPIC also requests expedited processing for this appeal.

Thank you for your prompt response to this appeal. I anticipate that you will produce responsive documents within 10 working days of this appeal. If you have any questions, please feel free to contact me at (202) 483-1140 x 123 or foia@epic.org.

Sincerely,

Ginger McCall
EPIC Open Government Director

Alan Butler
EPIC Appellate Advocacy Fellow

/enclosures

---

[12] *See, e.g.*, Patrick Madden, *Cell Phone Tracking, License Plate Readers Raise Privacy Concerns*, WAMU 88.5 Morning Edition, Mar. 1, 2012, *available at*
http://wamu.org/news/morning_edition/12/03/01/cell_phone_tracking_license_plate_readers_raise_privacy_concerns; Melissa Daniels, *Feds Attempt to Search Phones Without Warrants*, Mobiledia (Feb. 15, 2012), http://www.mobiledia.com/news/128226.html.
[13] Affidavit of Supervisory Special Agent Bradley S. Morrison, *US v. Rigmaiden*, No. 08-cr—00814 at *3 (D. Ariz. Oct. 27, 2011).

## Appendix 1

EPIC's February 10, 2012 FOIA Request to the FBI

wireless devices in the immediate area of the FBI device that subscribe to a particular provider ... including those of innocent, non-target devices."[5]

In support of its October 27, 2011 memorandum, the U.S. Attorneys submitted the affidavit of supervisory special agent Bradley S. Morrison.[6] Agent Morrison is the Unit Chief of the Tracking Technology Unit (TTU), Traditional Technology Section, Operational Technology Division in Quantico, Virginia.[7] As such, Agent Morrison is responsible for the "development, procurement and deployment of technical assets and capabilities to covertly locate, tag and track targets of interest in support of all FBI investigative, intelligence collection and operational programs."[8] Agent Morrison's affidavit stated that:

> FBI policy requires that at the conclusion of a location operation, FBI technical personnel are to purge all data stored in the [tracking device]. During a local operation, the electronic serial numbers (ESNs) (or their equivalent) from all wireless devices in the immediate area of the FBI device that subscribe to a particular provider may be incidentally recorded, including those of innocent, non-target devices.[9]

As the court documents submitted by the Government in *US v. Rigmaiden* make clear, the FBI currently uses "cell site simulator" technologies such as StingRay to "locate, tag and track."[10] These devices were procured from third party vendors, which would require contracts and/or statements of work. The devices presumably have related technical documents and descriptions of operational requirements. Given the potential impact on "innocent, non-target devices," and the requirements of the E-Government Act of 2002, the agency is obligated to conduct a Privacy Impact Assessment ("PIA") before using these devices . As the Department of Justice PIA Official Guidance book describes:

> Section 208 of the E-Government Act of 2002 requires all federal agencies to conduct a PIA before developing or procuring information technology that collects, maintains, or disseminates information that is in identifiable form or before initiating a new collection of information that will be collected, maintained, or disseminated using information technology and that includes any information in identifiable form in certain circumstances involving the public.[11]

---

[5] Affidavit of Supervisory Special Agent Bradley S. Morrison, *US v. Rigmaiden*, No. 08-cr—00814 at *3 (D. Ariz. Oct. 27, 2011).

[6] *Id.* at *1.

[7] *Id.*

[8] *Id.*

[9] *Id.*

[10] *Id.* ("As the Unit Chief of the TTU, I am responsible for the development, procurement and deployment of technical assets and capabilities to covertly *locate, tag, and track* targets of interest in support of all FBI investigative, intelligence collection and operational programs.").

[11] OFFICE OF PRIVACY AND CIVIL LIBERTIES, UNITED STATES DEPARTMENT OF JUSTICE, PRIVACY IMPACT ASSESSMENTS – OFFICIAL GUIDANCE (Revised August 2010), *available at* http://www.justice.gov/opcl/pia_manual.pdf.

Because the "[Government's] position continues to be that, as a factual matter, the [aircard tracking] operation did not involve a search or seizure under the Fourth Amendment,"[12] and because Special Agent Morrison insists that the equipment qualifies as "a pen register/trap and trace device, as defined in 18 U.S.C. §§ 3127(3) and (4),"[13] it is likely that the FBI or another office has issued a legal basis memorandum regarding the use of cell site simulator technology.

### Documents Requested

EPIC requests copies of the following agency records in possession of the ___:

1. All documents concerning technical specifications of the StingRay device or other cell site simulator technologies.
2. All documents concerning procedural requirements or guidelines for the use of StingRay device or other cell site simulator technologies (e.g. configuration, data retention, data deletion).
3. All contracts and statements of work that relate to StingRay device or other cell site simulator technologies.
4. All memoranda regarding the legal basis for the use of StingRay device or other cell site simulator technologies.
5. All Privacy Impact Assessments or Reports concerning the use or capabilities of StingRay device or other cell site simulator technologies.

### Request for Expedited Processing

This request warrants expedited processing because it is made by "a person primarily engaged in disseminating information ..." and it pertains to a matter about which there is an "urgency to inform the public about an actual or alleged federal government activity." 5 U.S.C. § 552(a)(6)(E)(v)(II) (2008); *Al-Fayed v. CIA*, 254 F.3d 300, 306 (D.C. Cir. 2001).

EPIC is "primarily engaged in disseminating information." *American Civil Liberties Union v. Department of Justice*, 321 F. Supp. 2d 24, 29 n.5 (D.D.C. 2004).

There is a particular urgency for the public to obtain information about location tracking technology, given the heated debate surrounding the recent US Supreme Court decision, *US v. Jones*, holding unanimously that the use of a GPS Tracking Device was a Fourth Amendment search requiring a warrant. *United States v. Jones*, 565 U.S. ___ (2012). The public's interest in and desire for information about the Government's

---

[12] Government Memorandum re Motion for Discovery, *US v. Rigmaiden,* No. 08-cr—00814 at *1 n.1 (D.Ariz Oct. 27, 2011).
[13] Affidavit of Supervisory Special Agent Bradley S. Morrison, *US v. Rigmaiden*, No. 08-cr—00814 at *3 (D. Ariz. Oct. 27, 2011).

tracking activities is reflected in the sheer volume of news coverage that *Jones* and related cases have received in the last six months. For examples, see EPIC: US v. Jones.[14]

Request for "News Media" Fee Status

EPIC is a "representative of the news media" for fee waiver purposes. *EPIC v. Department of Defense*, 241 F. Supp. 2d 5 (D.D.C. 2003). Based on our status as a "news media" requester, we are entitled to receive the requested record with only duplication fees assessed. Further, because disclosure of this information will "contribute significantly to public understanding of the operations or activities of the government," any duplication fees should be waived.

Thank you for your consideration of this request. As provided in 6 C.F.R. § 5.5(d)(4), I will anticipate your determination on our request for expedited processing within ten (10) calendar days.

Respectfully Submitted,

Alan Butler
EPIC Appellate Advocacy Fellow

Ginger McCall
Director, EPIC Open Government Project

---

[14] *Available at* http://epic.org/amicus/jones/.

4

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER | ) ) ) |  |
| Plaintiff, | ) ) ) |  |
| v. | ) ) | Civil Action No. 12-CV-00667-CKK |
| FEDERAL BUREAU OF INVESTIGATION, | ) ) ) |  |
| Defendant. | ) ) |  |

# **Exhibit D**



**U.S. Department of Justice**

Office of Information Policy

*Telephone: (202) 514-3642*                    *Washington, D.C. 20530*

**APR 0 5 2012**

Ginger P. McCall, Esq.
Electronic Privacy Information Center
Suite 200
1718 Connecticut Avenue, NW
Washington, DC 20009

      Re: Request No. 1182490-000

Dear Ms. McCall:

      This is to advise you that your administrative appeal from the action of the Federal Bureau of Investigation was received by this Office on March 19, 2012.

      The Office of Information Policy has the responsibility of adjudicating such appeals. In an attempt to afford each appellant equal and impartial treatment, we have adopted a general practice of assigning appeals in the approximate order of receipt. Your appeal has been assigned number **AP-2012-01783**. Please mention this number in any future correspondence to this Office regarding this matter.

      We will notify you of the decision on your appeal as soon as we can. If you have any questions about the status of your appeal you may contact me at the number above.

                        Sincerely,

                        Priscilla Jones
                        Supervisory Administrative Specialist

FBI

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELECTRONIC PRIVACY<br>INFORMATION CENTER<br><br>Plaintiff,<br><br>v.<br><br>FEDERAL BUREAU OF<br>INVESTIGATION,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)   Civil Action No. 12-CV-00667-CKK<br>)<br>)<br>)<br>)<br>)<br>) |

# **Exhibit E**



**U.S. Department of Justice**
Office of Information Policy
*Suite 11050*
*1425 New York Avenue, NW*
*Washington, DC 20530-0001*

*Telephone: (202) 514-3642*

**MAY 2 2 2012**

Ginger P. McCall, Esq.
Electronic Privacy Information Center
Suite 200                                              Re:    Appeal No. AP-2012-01783
1718 Connecticut Avenue, NW                                   Request No. 1182490
Washington, DC  20009                                         ADW:MTC

Dear Ms. McCall:

You appealed from the action of the Federal Bureau of Investigation on your request for
access to records concerning cell site simulator and other cell phone tracking technologies.

I have been informed that you filed a lawsuit concerning the FBI's action in the United
States District Court for the District of Columbia. Inasmuch as this matter is now before the
Court, I am closing your appeal file in this Office in accordance with 28 C.F.R. § 16.9(a)(3)
(2011).

Sincerely,

Janice Galli McLeod
Associate Director

By:    Anne D. Work

Anne D. Work
Senior Counsel
Administrative Appeals Staff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ELECTRONIC PRIVACY                    )
INFORMATION CENTER                    )
                                      )
         Plaintiff,                   )
                                      )
         v.                           )    Civil Action No. 12-CV-00667-CKK
                                      )
FEDERAL BUREAU OF                     )
INVESTIGATION,                        )
                                      )
         Defendant.                   )
                                      )

# **Exhibit F**

 **U.S. Department of Justice**

**Federal Bureau of Investigation**

Washington, D.C. 20535

June 4, 2012

MR. ALAN BUTLER
ELECTRONIC PRIVACY INFORMATION CENTER
SUITE 200
1718 CONNECTICUT AVENUE, NW
WASHINGTON, DC 20009

FOIPA Request No.   1182490- 000
Subject: STINGRAY DEVICES

Dear Mr. Butler:

This is in reference to your February 10, 2012 letter, in which you requested a fee waiver for the above-referenced Freedom of Information / Privacy Acts (FOIPA) requests. Requests for fee waivers are determined on a case-by-case basis. <u>See</u> 5 U.S.C. 552 (a)(4)(A)(iii). The burden is on the requester to show that the statutory requirements for a fee waiver have been met.

You have requested that duplication fees be waived because disclosure of the information sought in the above FOIPA requests will "contribute significantly to public understanding of the operations or activities of the government."

I have considered your request in accordance with Title 28, Code of Federal Regulations, Section 16.11(k) and agree with the reasons you have provided as to why you qualify in this instance for a fee waiver. Therefore, your request for a fee waiver is granted.

Sincerely yours,

David M. Hardy
Section Chief,
Record/Information Dissemination Section
Records Management Division

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER | ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 12-CV-00667-CKK |
| | ) | |
| FEDERAL BUREAU OF INVESTIGATION, | ) ) | |
| | ) | |
| Defendant. | ) | |

# Exhibit G



U.S. Department of Justice

Federal Bureau of Investigation

*Washington, D.C. 20535*

June 4, 2012

MR. ALAN BUTLER
ELECTRONIC PRIVACY INFORMATION CENTER
SUITE 200
1718 CONNECTICUT AVENUE, NW
WASHINGTON, DC 20009

FOIPA Request No.:  1182490- 000
Subject:  STINGRAY DEVICES

Dear Mr. Butler:

This is in reference to your letter directed to the Federal Bureau of Investigation (FBI), in which you requested expedited processing for the above-referenced Freedom of Information /Privacy Acts (FOIPA) request. Pursuant to the Department of Justice (DOJ) standards permitting expedition, expedited processing can only be granted when it is determined that a FOIPA request involves one or more of the below categories.

You have requested expedited processing according to:

☐ **28 C.F.R. §16.5 (d)(1)(i):** "Circumstances in which the lack of expedited treatment could reasonably be expected to pose an imminent threat to the life or physical safety of an individual."

☒ **28 C.F.R. §16.5 (d)(1)(ii):** "An urgency to inform the public about an actual or alleged federal government activity, if made by a person primarily engaged in disseminating information."

☐ **28 C.F.R. §16.5 (d)(1)(iii):** "The loss of substantial due process of rights."

☐ **28 C.F.R. §16.5 (d)(1)(iv):** "A matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence."

You have not provided enough information concerning the statutory requirements permitting expedition; therefore, your request is denied. Specifically, you have not demonstrated there is an urgency to inform the public about the subject of your request.

You may appeal this denial by writing to the Office of Information Policy (OIP), United States Department of Justice, 1425 New York Ave., NW, Suite 11050, Washington, D.C., 20530-0001. Your appeal must be received by OIP within sixty (60) days from the date of this letter in order to be considered  timely.  The envelope and the letter should be clearly marked "Freedom of Information Appeal" or "Information Appeal."  Please cite the FOIPA number assigned to your request to facilitate its identification.

Sincerely yours,

David M. Hardy
Section Chief
Record/Information
  Dissemination Section
Records Management Division