## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ ) | |
| ELECTRONIC PRIVACY ) | |
| INFORMATION CENTER, ) | |
|      Plaintiff, ) | |
| ) | |
|     v. ) | Civil Action No: __12-cv-00667__ |
| ) | |
| FEDERAL BUREAU OF INVESTIGATION, ) | |
|     Defendant. ) | |
| _____) | |

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S
## MOTION FOR OPEN AMERICA STAY

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................... ii

INTRODUCTION ........................................................................................................... 1

STATEMENT OF FACTS .............................................................................................. 2

    I.   EPIC Submitted a FOIA Request to the FBI Seeking Documents Related to the Use of StingRay and Other Cell Phone Tracking Technologies ............................................................................................. 2

    II.  The FBI Has Received a Steady Volume of FOIA Requests Over the Last Twenty Years, But It Continues to Demand Exceptional Delays While Its Budget and Staff Have Grown Substantially ................ 4

    III. The FBI Has Allowed Its FOIA Backlog to Grow Substantially Over The Past Five Years ......................................................................... 8

    IV. EPIC's FOIA Request, Administrative Appeal, Lawsuit and the FBI's Responses ..................................................................................... 9

ARGUMENT .................................................................................................................. 10

    I.   The FBI Has Not Established That It Faces "Exceptional Circumstances" Necessary to Require a Stay for Nearly Two and a Half Years ........................................................................................... 12

        A.   The FBI Has Failed to Establish That Its Current FOIA Volume Is Outside the Range of a Predictable Agency Workload ............................................................................... 14

        B.   The FBI Has Failed to Demonstrate Reasonable Progress in Reducing Its Backlog of Pending Requests ............................... 17

        C.   The FBI Has Failed to Establish That Classified Material and Competing Agency Deadlines Are Sufficient to Justify Two and a Half Years of Delay .................................................. 19

        D.   The Fact That EPIC Declined the FBI's Proposal to Exclude Critical Documents from its FOIA Request Is Insufficient to Support a Finding of Exceptional Circumstances ........................................................................... 20

    II.  This Court Routinely Orders Agencies to Meet Reasonable Processing Deadlines, and FBI's Requested Stay Is Unreasonably Long ..................................................................................................... 22

CONCLUSION ............................................................................................................... 24

## **TABLE OF AUTHORITIES**

Cases

*Aguilera v. FBI*, 941 F. Supp. 144 (D.D.C. 1996) .................................................... 7

*Allen v. FBI*, 716 F. Supp. 667 (D.D.C. 1988) ...................................................... 24

*Avitia v. DEA*, No. 90-0894, 1990 WL 1018680 (D.D.C. Nov. 8, 1990) ................ 7

*Bricker v. FBI*, 54 F. Supp. 2d 1 (D.D.C. 1998) ................................................... 6

*Buc v. FDA*, 762 F. Supp. 2d 62 (D.D.C. 2011) ............................ 12, 13, 14, 17, 20

*Dacosta v. DOJ*, 782 F. Supp. 147 (D.D.C. 1992) .............................................. 7

*Edmonds v. FBI*, No. 02-1294, 2002 WL 32539613
    (D.D.C. Dec. 3, 2002) ................................................................... 5, 6, 15, 22

*Elec. Frontier Found. v. DOJ*, 517 F. Supp. 2d 111
    (D.D.C. 2007) ................................................ 5, 6, 8, 15, 17, 18, 20, 21, 22, 24

*Elec. Frontier Found. v. DOJ*, 563 F. Supp. 2d 188 (D.D.C. 2008) ................. 6, 22

*EPIC v. Dep't of Defense*, 241 F. Supp. 2d 5 (D.D.C. 2003) ................................ 2

*EPIC v. DOJ*, 416 F. Supp. 2d 30 (2006) .......................................................... 22

EPIC v. FBI, 865 F. Supp. 1 (D.D.C. 1994) ........................................................ 7

*EPIC. v. DOJ*, No. 02-0063, 2005 U.S. Dist. LEXIS 18876 (Aug. 31, 2005) ......... 6

*Gov't Accountability Project v. Dep't of Health and Human Services*,
    568 F. Supp. 2d 55 (D.D.C. 2008) ................................................................ 17

*Guzzino v. FBI*, No. 95-1780, 1997 WL 22886 (D.D.C. Jan. 10, 1997) ................. 6

*Haddon v. Freeh*, 31 F. Supp. 2d 16 (D.D.C. 1996) ............................................. 7

*Hunsberger v. DOJ*, No. 92-2587, 1993 WL 455445 (D.D.C. Oct. 29, 1993) ......... 7

*Hunter v. Christopher*, 923 F. Supp. 5 (D.D.C. 1996) ........................................ 7

*Jimenez v. FBI*, 938 F. Supp 21 (D.D.C. 1996) ................................................. 7

*Joyce v. FBI*, 152 F. Supp. 2d 32 (D.D.C. 1996) ............................................... 7

*Judicial Watch of Fla., Inc v. DOJ*, 102 F. Supp. 2d 6 (D.D.C. 2000) ................ 23

*Judicial Watch v. National Archives & Records Admin.,* No. 07-1987 (D.D.C.) .. 23

*Linsee v. CIA*, 741 F. Supp. 988 (D.D.C. 1990) ................................................. 7

*Meeropol v. Meese*, 790 F.2d 942 (D.C. Cir. 1986) ........................................... 24

*Nuzzo v. FBI*, No. 95-1708, 1996 WL 741587 (D.D.C. Oct. 8, 1996) .................... 7

*Ohaegbu v. FBI*, 936 F. Supp. 7 (DDC 1996) ................................................... 7

*Open America v. Watergate Special Prosecution Force*, 547 F.2d 605
    (D.C. Cir. 1976) ............................................................................. 4, 12, 24

*Piper v. DOJ*, 339 F. Supp. 2d 13 (D.D.C. 1999) ............................................. 6, 23

*Steinberg v. DOJ*, No. 93-2409, 1994 WL 193931 (D.D.C. May 4, 1994) .............. 7

*Summers v. DOJ*, 733 F. Supp. 443 (D.D.C. 1990) ..................................... 4, 6, 7, 15

*United States v. Rigmaiden*, 844 F. Supp. 2d 982 (D. Ariz. 2012) ......................... 4

*Williams v. FBI*, No. 99-3378, 2000 WL 1763680 (D.D.C. Nov. 30, 2000) ...... 6, 23

*Williams v. United States*, 932 F. Supp. 354 (D.D.C. 1996) ............................ 7, 23

**Statutes**

The Freedom of Information Act, 5 U.S.C. § 552 ................................................ 1

    5 U.S.C. § 552(a)(6)(A)(i) ............................................................................ 11

    5 U.S.C. § 552(a)(6)(C) ........................................................................... 11, 17

    5 U.S.C. § 552(a)(6)(C)(i) ....................................................................... 11, 12

    5 U.S.C. § 552(a)(6)(C)(ii) ...................................................... 7, 14, 15, 17, 18

The Electronic Freedom of Information Act Amendments of 1996,
    H.R. 3802, 104th Cong. § 2(b)(3) (2d Sess. 1996) .............................................. 7

**Other Authorities**

Brief of Researchers and Experts, *Pro Se*, As *Amici Curiae* in Support of
    Defendant's Motion for Disclosure, *United States v. Rigmaiden*, No. 08-814
    (Jan. 17, 2012) ................................................................................................. 4

Bureau of Labor Statistics, U.S. Dep't of Labor, *What Is Seasonal Adjustment?*
    (last modified Oct. 16, 2001) ........................................................................... 16

*Hearing on FBI Oversight and Authorization Request for Fiscal Year 1989*
    *Before the Subcomm. on Civil and Constitutional Rights of the H. Comm. on the*
    *Judiciary*, 100th Cong. (1988). ........................................................................ 4

*Hearing on Fiscal 2012 Appropriations: FBI Budget Before the Subcomm. on*
    *Commerce, Justice, Science, and Related Agencies of the H. Appropriations*
    *Comm.*, 112th Cong. (2011)
    (Statement of FBI Director Robert S. Mueller, III) ............................................ 5

Office of Legal Educ., Exec. Office for U.S. Attorneys, *Electronic Surveillance*
    *Manual: XV. The Legal Authorities Required to Locate Cellular Telephones* ..... 3

**INTRODUCTION**

Defendant Federal Bureau of Investigation ("FBI") has moved for an order to stay its obligations under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to process Plaintiff Electronic Privacy Information Center's ("EPIC") February 2012 request for records related to the FBI's use of "StingRay" and other cell-site simulator technologies that track cell phones. The FBI does not dispute that EPIC is legally entitled to processing of its request under the FOIA and the agency's regulations. Yet it has been more than six months since the FBI received EPIC's request, and the agency has not released any responsive records. The FBI requests that the Court grant it an additional *twenty-seven months* to do so.

The FBI has failed to make the showing necessary to support such an extensive stay and to delay the processing of EPIC's FOIA request. The Court should deny the FBI's motion because it has failed to establish that it faces the "exceptional circumstances" necessary to support a multi-year delay. The Court should order the FBI to (1) complete processing of all non-classified responsive records within sixty days, (2) identify and account for any classified, responsive records within sixty days, and (3) complete processing of all classified, responsive records in less than six months thereafter (or less depending on the final total). Should the Court grant the FBI a longer period of time to process EPIC's request, EPIC respectfully requests that the Court order the FBI to make interim releases of

responsive material every four (4) weeks, and submit periodic reports to the Court

on the agency's progress toward completion.

## STATEMENT OF FACTS

I.    **EPIC Submitted a FOIA Request to the FBI Seeking Documents Related to the Use of StingRay and Other Cell Phone Tracking Technologies**

On February 10, 2012, EPIC submitted a FOIA request to the FBI, seeking

the release of agency records concerning the use of cell site simulator and similar

cell phone tracking technologies. (Pls. Compl., Dkt. 1, ¶ 2) [hereinafter "EPIC

FOIA Request."] EPIC requested five categories of documents:

1.    All documents concerning technical specifications of the StingRay device or other cell-site simulator technologies; and
2.    All documents concerning procedural requirements or guidelines for the use of StingRay device or other cell-site simulator technologies (e.g. configuration, data retention, data deletion); and
3.    All contracts and statements of work that relate to StingRay device or other cell-site simulator technologies;
4.    All memoranda regarding the legal basis for the use of StingRay device or other cell-site simulator technologies; and
5.    All Privacy Impact Assessments or Reports concerning the use or capabilities of StingRay device or other cell-site simulator technologies.

(*Id*. ¶ 20) EPIC also requested expedited processing, news media fee status, *see*

*EPIC v. Dep't of Defense*, 241 F. Supp. 2d 5 (D.D.C. 2003), and a waiver of all

duplication fees because disclosure would contribute significantly to public

understanding of the operations and activities of the Government. (Pls. Compl. ¶¶

21-23)

2

The EPIC FOIA Request followed from growing concern about the use of a particular investigative technique that allows the government to track users of cell phone service without a warrant or subpoena. In 1994, the Department of Justice Office of Enforcement Operations provided guidance that no legal process was necessary to use cell phone tracking devices to locate individuals, so long as those devices "did not capture the numbers dialed or other information 'traditionally' collected using a pen/trap device." *See* Office of Legal Educ., Exec. Office for U.S. Attorneys, *Electronic Surveillance Manual: XV. The Legal Authorities Required to Locate Cellular Telephones* 45 (2005).[1] One type of tracking device used is known as a 'Cell Site Simulator' or 'StingRay' and it "works by mimicking a cellphone tower, getting a phone to connect to it" and sending signals to the phone, which can then be used to locate the device. Jennifer Valentino-Devries, *'Stingray' Phone Tracker Fuels Constitutional Clash*, Wall St. Journal – What They Know (Sept. 21, 2011, 10:30 PM EST).[2] These devices are also capable of intercepting the contents of communications, as well as dialing and identifying information generated by any nearby cell phone. *See* Brief of Researchers and Experts, *Pro Se*, As *Amici Curiae* in Support of Defendant's Motion for Disclosure, *United States v.*

---

[1] *Available at* http://www.justice.gov/criminal/foia/docs/elec-sur-manual.pdf.
[2] *Available at* http://online.wsj.com/article/SB10001424053111904194604576583112723197574.html.

*Rigmaiden*, No. 08-814 at 6 (Jan. 17, 2012).[3] The FBI admits that it has used such devices to track and locate phones. (Def. Answer, Dkt. 11, ¶ 6)

As a group of computer security and privacy experts recently described, cell site simulators "abuse security flaws in the decades-old protocols still used by our wireless phone networks." Brief of Researchers, *supra* at 10. No court has concluded that the use of these tracking devices by the FBI is constitutional, and so far information about the extent and nature of that use remains hidden. *See Rigmaiden*, 844 F. Supp. 2d 982 (D. Ariz. 2012).

### II. The FBI Has Received a Steady Volume of FOIA Requests Over the Last Twenty Years, But It Continues to Demand Exceptional Delays While Its Budget and Staff Have Grown Substantially

In 1990 the FBI requested a stay from this Court under *Open America v. Watergate Special Prosecution Force*, 547 F.2d 605 (D.C. Cir. 1976), arguing that it was "deluged" with a volume of requests "vastly in excess of that anticipated by Congress." *Summers v. DOJ*, 733 F. Supp. 443 (D.D.C. 1990). At that time, the "FBI Headquarters alone received 16,518 FOIA and Privacy Act requests" and had a backlog of "[n]early five thousand requests, involving an estimated 2.7 million pages." *Id*. at 444. The total budget requested by the FBI for Fiscal Year 1989 was $1.5 Billion. *See Hearing on FBI Oversight and Authorization Request for Fiscal Year 1989 Before the Subcomm. on Civil and Constitutional Rights of the H.*

---

[3] *Available at* http://files.cloudprivacy.net/rigmaiden%20amici-final.pdf.

*Comm. on the Judiciary*, 100th Cong. (1988).

In the matter now before this Court, the FBI states that it has received a total of 17,755 FOIA and Privacy Act requests in Fiscal Year 2011. (Def. Mot., Dkt. 14, at 13) The total budget requested by the FBI for Fiscal Year 2012 was $8.1 Billion. *See Hearing on Fiscal 2012 Appropriations: FBI Budget Before the Subcomm. on Commerce, Justice, Science, and Related Agencies of the H. Appropriations Comm.*, 112th Cong. (2011) (Statement of FBI Director Robert S. Mueller, III).[4]

In the years between *Summers* and this case, the overall volume of FOIA requests received by the FBI has not grown substantially, but the agency budget has increased more than fivefold. The FBI noted that its FOIA intake "fell as low as an average of 906 requests per month in FY 2004 and an average of 911 requests per month in FY 2005." (Def. Mot. at 13) However, the FBI failed to mention that it was handling an average volume of 1,300 requests per month in Fiscal Year 2003 and 1,277 per month in Fiscal Year 2006. *See Edmonds v. FBI*, No. 02-1294, 2002 WL 32539613 at *2 (D.D.C. Dec. 3, 2002); *Elec. Frontier Found. v. DOJ*, 517 F. Supp. 2d 111, 118 (D.D.C. 2007).

There have been two significant changes to the FBI's ability to process FOIA requests since *Summers*: (1) a dramatic increase in the agency's budget, and (2) an increase in and restructuring of FOIA processing staff. The growth of the

---

[4] *Available at* http://www.fbi.gov/news/testimony/fbi-budget-for-fiscal-year-2012.

FBI FOIA program requires particular attention in this case. The FBI Record/Information Dissemination Section ("RIDS") currently employs 274 personnel, (Decl. of David M. Hardy ("Hardy Decl."), Dkt. 14 Ex. 1, ¶ 14), compared to the "116 Miscellaneous Documents Examiners" assigned to process requests in 1989. *See Summers*, 733 F. Supp. at 444. The FBI even established a special RIDS unit to handle its FOIA/Privacy Act litigation. (*Id.* ¶ 22) The FBI also adopted an electronic FOIA Data Processing System ("FDPS"), (*Id.* ¶ 13), and established a FBI Central Records Complex back in 2006 in an effort "that it [expected would] eventually reduce its processing times for FOIA/Privacy Act requests by 40%." *Elec. Frontier Found.*, 517 F. Supp. 2d at 115. All of these changes should have had the effect of reducing, not increasing FBI FOIA processing times in 2012.

While many aspects of the FBI's FOIA processing efforts have changed over the past twenty years, one thing remains the same: the FBI consistently demands exceptional treatment from this Court. Of the more than forty opinions written by this Court applying the *Open America* standard across the federal government, the FBI requested an exceptional stay in more than twenty cases.[5] While the FBI's

---

[5] *See, e.g.*, *Elec. Frontier Found. v. DOJ*, 563 F. Supp. 2d 188 (D.D.C. 2008); *Elec. Frontier Found.*, 517 F. Supp. 2d 111 (D.D.C. 2007); *EPIC v. DOJ*, No. 02-0063, 2005 U.S. Dist. LEXIS 18876 (Aug. 31, 2005); *Edmonds v. FBI*, 2002 WL 32539613 (D.D.C. Dec. 3, 2002); *Williams v. FBI*, No. 99-3378, 2000 WL 1763680 (D.D.C. Nov. 30, 2000); *Piper v. DOJ*, 339 F. Supp. 2d 13 (D.D.C. 1999); *Bricker v. FBI*, 54 F. Supp. 2d 1 (D.D.C. 1998); *Guzzino v. FBI*, No. 95-1780, 1997 WL 22886 (D.D.C. Jan. 10, 1997); *Williams v. United States*, 932 F. Supp. 354 (D.D.C.

FOIA backlog has spiked at various points, most notably in 1996, the overall volume of requests has remained relatively stable. In fact, Congress has taken steps to increase the FBI's resources to ensure compliance with the agency's statutory FOIA deadlines. (*See* Hardy Decl. ¶ 22)

Congress appropriated funds for 129 additional employees in its 1997 fiscal budget, and funds for 239 additional employees in its 1998 fiscal budget. (*Id.*) The year before it approved these FBI budget expansions, Congress passed the Electronic Freedom of Information Act Amendments of 1996 ("E-FOIA Act") to "ensure agency compliance with statutory time limits." H.R. 3802, 104th Cong. § 2(b)(3) (2d Sess. 1996). The E-FOIA Act made clear that the term "exceptional circumstances does not include a delay that results from a predictable agency workload of requests under this section, unless the agency demonstrates reasonable progress in reducing its backlog of pending requests." 5 U.S.C. § 552(a)(6)(C)(ii).

---

1996); *Hunter v. Christopher*, 923 F. Supp. 5 (D.D.C. 1996); *Ohaegbu v. FBI*, 936 F. Supp. 7 (DDC 1996); *Jimenez v. FBI*, 938 F. Supp 21 (D.D.C. 1996); *Aguilera v. FBI*, 941 F. Supp. 144 (D.D.C. 1996); *Nuzzo v. FBI*, No. 95-1708, 1996 WL 741587 (D.D.C. Oct. 8, 1996); *Haddon v. Freeh*, 31 F. Supp. 2d 16 (D.D.C. 1996); *Joyce v. FBI*, 152 F. Supp. 2d 32 (D.D.C. 1996); *EPIC v. FBI*, 865 F. Supp. 1 (D.D.C. 1994); *Steinberg v. DOJ*, No. 93-2409, 1994 WL 193931 (D.D.C. May 4, 1994); *Hunsberger v. DOJ*, No. 92-2587, 1993 WL 455445 (D.D.C. Oct. 29, 1993); *Dacosta v. DOJ*, 782 F. Supp. 147 (D.D.C. 1992); *Avitia v. DEA*, No. 90-0894, 1990 WL 1018680 (D.D.C. Nov. 8, 1990); *Linsee v. CIA*, 741 F. Supp. 988 (D.D.C. 1990); *Summers v. DOJ*, 733 F. Supp. 443 (D.D.C. 1990).

### III.   The FBI Has Allowed Its FOIA Backlog to Grow Substantially Over The Past Five Years

The FBI's increased FOIA budget approval and many of its motions for stay with this Court can be attributed to its large backlog in 1996-1998. In 1996, the FBI's backlog "jumped to a high of over 16,000 requests." *Elec. Frontier Found.,* 517 F. Supp. 2d at 119. By the end of Fiscal Year 1998, the FBI had 10,816 requests pending. (Hardy Decl. ¶ 22) The agency was able to substantially reduce this backlog to 1,672 by the end of 2006, which this Court acknowledged when it granted the FBI a one-year stay in 2007. *Elec. Frontier Found.*, 517 F. Supp. 2d at 119. In that case, the FBI argued that it should be granted exceptional relief because it had "undertaken two efforts that it expects will eventually reduce its processing times for FOIA/Privacy Act requests by 40%." *Id*. at 115.

Rather than reduce its backlog over the last six years, the FBI has allowed its number of pending requests to rise to 3,718 – or approximately 2.6 million pages.[6] (Hardy Decl. ¶ 24) Thus the current backlog is nearly the same size as it was when this Court ruled in *Summers* in 1990, but the FBI FOIA staff has more than doubled, the FBI budget has more than quintupled, and the FBI has implemented a variety of 'efficiency improvements' over the last 15 years that it told this Court would significantly reduce its backlog.

---

[6] The FBI noted in its declaration that at the end of Fiscal Year 2011 there were 1,179 requests pending, so it is possible that these numbers fluctuate substantially during the course of the year.

### IV.   EPIC's FOIA Request, Administrative Appeal, Lawsuit and the FBI's Responses

EPIC submitted its FOIA request to the FBI on February 10, 2012. (Decl. of Ginger P. McCall ("McCall Decl."), attached as Ex. 1, ¶ 3) The FBI acknowledged receipt of EPIC's request on February 16, 2012 and indicated that it was searching for responsive records. (*Id*.) On March 20, 2012, after the FBI failed to respond to EPIC's request within the statutory time limit, EPIC submitted an administrative appeal to the Department of Justice ("DOJ") Appellate Division. (*Id*. ¶ 4) EPIC appealed the FBI's failure to disclose responsive records and renewed EPIC's requests for news media fee status and expedited processing. (*Id*. ¶¶ 32-35) The FBI stated that the Department of Justice sent a letter to EPIC regarding the administrative appeal on April 5, 2012, (Hardy Decl. ¶ 22; Def. Mot. Ex. D) but EPIC did not receive this letter. (*See* McCall Decl ¶ 5)

EPIC filed this FOIA suit on April 26, 2012 after receiving no response to its administrative appeal. On May 22, 2012, the DOJ Office of Information Policy sent a letter confirming EPIC's administrative appeal, and closing that appeal in response to this lawsuit. (Def. Mot. Ex. E) The FBI sent two letters on June 4, 2012; the first letter granted EPIC's fee waiver request, (Def. Mot. Ex. F), and the second letter denied EPIC's request for expedited processing. (Def. Mot. Ex. G)

After this Court's June 14, 2012 Order for the parties to file a joint proposed schedule, EPIC contacted counsel for the FBI on June 25, 2012. (McCall Decl. ¶ 7)

During the call, counsel for the FBI informed EPIC for the first time that the agency's search had identified approximately 25,000 pages of responsive records, that the agency had classified a majority of the records, and that the FBI estimated it would take more than two years to process the records. (*Id*. ¶ 8) The FBI proposed that it process documents at a rate of 1,000 pages per month and release these records over a two-and-a-half-year period. (*Id*.) The FBI later revised its estimate of classified material to 25% of potentially responsive records. (*Id*. ¶ 9)

EPIC offered to narrow the scope of its request when, relying on the agency's representation, it learned that the search had produced approximately 25,000 pages of responsive documents. (*Id*. ¶ 10) The FBI proposed that EPIC narrow the request by eliminating two entire categories of documents: (1) all documents containing classified material and (2) all operating manuals. (*Id*. ¶ 9) In response, EPIC offered to exclude all records related to active investigations, but counsel for the FBI stated that she was not aware whether that would substantially reduce processing time. (*Id*. ¶ 10) The parties submitted their Joint Proposed Schedule on June 27, 2012 with different proposals for the Court regarding the processing of documents.

## **ARGUMENT**

The issue raised by the FBI's motion is simple: should the agency be granted twenty-seven additional months to process a FOIA request when it has failed to

show the "exceptional circumstances" that would justify such delay. Given the FBI's current FOIA docket and the history of similar requests filed with this Court, it is clear that the agency's current workload is predictable and does not constitute "exceptional circumstances." 5 U.S.C. § 552(a)(6)(C). Furthermore, the FBI's generalized plans to update its document processing system and implement a "cradle to the grave" organization structure are not sufficient to establish "reasonable progress in reducing its backlog of pending requests." The agency's only potentially valid claim for delay, the classification/declassification review of responsive documents, applies only to a fraction of responsive records and cannot justify the multi-year delay requested by the agency. The FBI's failure to process and release documents responsive to EPIC's FOIA request is contrary to the statutory deadlines, this Court's view of reasonable FOIA processing times, and will continue to limit the ability of EPIC (and the public) to examine the agency's use of controversial electronic eavesdropping tools.

Under the Freedom of Information Act, an agency has twenty working days to respond to a request and notify the requester as to its determination of whether to comply. 5 U.S.C. § 552(a)(6)(A)(i). When an agency fails to do so, the requester "shall be deemed to have exhausted his administrative remedies" and may commence an action in district court seeking the prompt production of requested records. 5 U.S.C. § 552(a)(6)(C)(i). Congress has indicated that a court may grant

limited relief, in the form of a temporary stay, where the agency "can show exceptional circumstances exist and that [it] is exercising due diligence in responding to the request." *Id. See Buc v. FDA*, 762 F. Supp. 2d 62, 66 (D.D.C. 2011); *Open America v. Watergate Special Prosecution Force*, 547 F.2d 605, 616 (1976). Thus to support its request for an *Open America* stay the FBI must prove two elements: (1) exceptional circumstances and (2) due diligence. *Id.*

For the reasons discussed herein, this Court should order the FBI to: (1) process and release all responsive, non-classified records within sixty days, (2) identify and account for any classified, responsive records within sixty days, and (3) complete processing of all classified, responsive records in less than six months thereafter (or less depending on the final total). Should the Court grant the FBI a longer period of time to process EPIC's request, EPIC respectfully requests that the Court order the FBI to make interim releases of responsive material every four weeks, and submit periodic reports to the Court on the agency's progress toward completion.

**I.    The FBI Has Not Established That It Faces "Exceptional Circumstances" Necessary to Require a Stay for Nearly Two and a Half Years**

The FBI argued that it is currently facing exceptional circumstances that warrant judicial supervision and delay. In support of this argument, the agency cites fragmented statistics and provides a confusing picture of its FOIA workload

over the last seven years. Such a limited and selective presentation is insufficient to establish that the current volume of requests is unanticipated or beyond the level that the agency is capable of processing promptly. The fact that the FBI estimates 25% of the responsive pages in this case contain classified material, and that the agency's has a current backlog of 82 large-queue requests, is also insufficient to support a delay of nearly two and a half years. The FBI has also not provided sufficient information about conflicting litigation obligations to warrant such a long stay. Finally, EPIC's decision to reject the FBI's proposal to exclude all records containing classified information as well as all technical materials is insufficient to establish exceptional circumstances, especially given EPIC's willingness to otherwise narrow the scope of its request. (*See* McCall Decl. ¶¶ 10-12)

In order to establish exceptional circumstances, an agency "must show both (a) that it is deluged with a volume of requests ... vastly in excess of that anticipated by Congress, and (b) that existing resources are inadequate to deal with the volume of such requests within the [statutorily prescribed] time limits." *Buc,* 762 F. at 66. A variety of circumstances may be relevant to the court's determination, including (1) efforts to reduce the number of pending requests, (2) amount of classified material, (3) size and complexity of other requests, (4) resources devoted to declassification of public interest material, and (5) the number

of requests by courts and tribunals. *Id*. However, the FOIA makes clear that exceptional circumstances do not include "delay[s] that result[] from a predictable agency workload of requests." 5 U.S.C. § 552(a)(6)(C)(ii). If an agency cannot show more than a predictable workload, then the agency must further demonstrate "reasonable progress in reducing its backlog of pending requests." *Id*.

The FBI argued in its Motion for Open America Stay that it currently faces "exceptional circumstances" based on (1) a marked increase in the number of FOIA requests from 2004 to 2011, (2) the number and complexity of pending requests, (3) the potential amount of classified material in this, (4) the number of cases in litigation and (5) the fact that plaintiff rejected two opportunities to narrow the request. (Def. Mot. at 19-22)

## A. The FBI Has Failed to Establish That Its Current FOIA Volume Is Outside the Range of a Predictable Agency Workload

The FBI cited a recent "marked increase in the number of FOIA requests," (Def. Mot. at 19), in an attempt to establish that it "is overwhelmed with a volume of requests … vastly in excess of that anticipated by Congress." *Buc*, 762 F. Supp. 2d at 67. The FBI cannot establish that it is so overwhelmed even though its "RIDS handles over 17,000 FOIA/Privacy Act requests annually" (Hardy Decl. ¶ 17) That volume is not significantly larger than what the agency faced in 1988. *See Summers v. DOJ*, 733 F. Supp. 443, 444 (D.D.C. 1990) ("[F]or the calendar year 1988, the FBI Headquarters alone received 16,518 FOIA and Privacy Act

14

requests.").

The FBI cannot establish "exceptional circumstances" under the FOIA based on a "predictable agency workload" as described in 5 U.S.C. § 552(a)(6)(C)(ii). The FBI argued that its current workload is unpredictable because its "[i]ntake fell as low as an average of 906 requests per month in FY 2004 and an average of 911 requests per month in FY 2005." (Hardy Decl. ¶ 22) During 2011, the FBI received an "average of 1,480 requests per month." (*Id*.) The contrast between the exceptionally low volumes of 2004/2005 requests with the current workload does not show that the current workload is unpredictable. In fact, the 2004/2005 request volumes were the outliers. In 2006 the request volume was already back up to 1,277 per month. *See Elec. Frontier Found. v. DOJ*, 517 F. Supp. 2d 111, 118 (D.D.C. 2007). In 2003, this Court noted that the FBI was handling an average volume of 1,300 requests per month. See *Edmonds v. FBI*, No. 02-1294, 2002 WL 32539613 at *2 (D.D.C. Dec. 3, 2002). The FBI admitted in this case that there was a "steady decline in the number of [requests] received by the FBI from FY 2001 through FY 2005." (Hardy Decl. ¶22) The FBI states that since 2005 "the number of requests … has steadily risen," but a steady rise indicates stability and predictability rather than unpredictability. (Def. Mot. at 13)

For more than twenty years, the average number of FOIA requests to the FBI per year has remained relatively stable and predictable. When the agency

faced a substantial backlog in 1996, Congress responded by increasing the agency's budget and staff allocation. (Hardy Decl. ¶ 31) The FBI's focus on the 'spike' of requests in Fiscal Year 2012 is premature since these incomplete numbers are not measured on the same scale as the other years for comparison.[7]

The FBI also argued that the "number and complexity of requests currently awaiting processing" constitutes an exceptional circumstance. (Def. Mot. at 20) However, this increased "complexity" is the "result of new DOJ FOIA guidelines" implemented in 2009. (*Id*. at 13) The effect of these guidelines is irrelevant to the exceptional circumstances claim for several reasons: (1) the agency voluntarily adopted these procedures, (2) the increased "volume" of pages does not actually effect that "complexity" of the process, and (3) the changes occurred almost three years ago and the new system is now part of the FBI's predictable agency workload. In addition, the "FBI was able to fund 35 contract employees to assist the FOIA program." (*Id*.) In *Government Accountability Project v. Department of Health and Human Services*, this Court made clear that extraordinary circumstances may not exist where an agency's workload is matched by an increase in staff size. 568 F. Supp. 2d 55, 62 (D.D.C. 2008). In *Buc v. FDA*, this Court found that even where an agency was required "to exercise particular care"

---

[7] This is problematic for several reasons, including the standard "seasonal adjustment" problem that many other economic and time-limited statistical samples suffer from. *See*, *e.g.*, Bureau of Labor Statistics, U.S. Dep't of Labor, *What Is Seasonal Adjustment?* (last modified Oct. 16, 2001), http://www.bls.gov/cps/seasfaq.htm.

in reviewing certain records, it is not sufficient to establish exceptional circumstances where the "state of affairs is hardly unexpected or unusual." 762 F. Supp. 2d 68 n.7.

The current volume and complexity of the FBI's FOIA workload, alone, is not sufficient to support the agency's motion for a stay under *Open America* and 5 U.S.C. § 552(a)(6)(C).

### B. The FBI Has Failed to Demonstrate Reasonable Progress in Reducing Its Backlog of Pending Requests

In order to support its motion for stay and to establish that it faces exceptional circumstances resulting from a "predictable agency workload," the FBI must "demonstrate reasonable progress in reducing its backlog of pending requests." 5 U.S.C. § 552(a)(6)(C)(ii). This Court should not grant the agency's motion for an *Open America* stay here because the FBI has failed to demonstrate such reasonable progress. Furthermore, the agency no longer faces the same staff shortages and complications related to its office transition to Virginia, which was the basis of this Court's decision to grant its motion for stay in *Electronic Frontier Foundation v. Department of Justice*, 517 F. Supp. 2d 111 (D.D.C. 2007). These changes, which the Court found compelling in 2007, have since been completed and the agency previously stated that they would have the effect of *reducing* the FOIA backlog and enabling more efficient processing. *See id*. at 115.

The FBI stated that its current backlog of pending requests has reached

3,718 (approximately 2.6 million pages). (Hardy Decl. ¶ 24) This is a significant increase from the agency's backlog of 1,672 requests by the end of 2006. The FBI has outlined two current efforts to reduce this backlog: (1) the assignment of "cradle to grave" responsibility for requests in three of its units, and (2) an upgrade to its document processing software. (Def. Mot. at 14; Hardy Decl. ¶¶ 25-26) These two changes, alone, are insufficient to establish exceptional circumstances given the increased backlog.

This Court previously made clear that the FBI's "significant and unexpected decrease in the staff available" along with the "relocation of certain RIDS sections to interim locations" was necessary to establishing its "exceptional circumstances" in 2007. *Elec. Frontier Found.*, 517 F. Supp. 2d at 119. Here, the agency does not face similar challenges. The FBI's staff has recently been supplemented to facilitate the implementation of new DOJ guidelines. (Def. Mot. at 13; Hardy Decl. ¶ 23) The new facility and document processing system, which was cause for delay in 2007, should enable the agency to process more records in less time now. In addition, the agency's budget has been increasing exponentially over the last twenty years. *See*, *supra*, pages 4-5.

The FBI has established that it faces an increased backlog of requests, but it has not demonstrated reasonable progress in reducing that backlog given the predictable nature of its workload over the last twenty years. As a result, the FBI

cannot establish that it faces exceptional circumstances under the FOIA. *See* 5 U.S.C. § 552(a)(6)(C)(ii).

### C. The FBI Has Failed to Establish That Classified Material and Competing Agency Deadlines Are Sufficient to Justify Two and a Half Years of Delay

The FBI argued that the amount of classified material in this case and competing litigation deadlines provide exceptional circumstances necessary to support its motion for stay. (Def. Mot. at 20-21) However the amount of classified material is uncertain, and the FBI has not provided any information to establish that it is outside the range of the agency's predictable workload. EPIC is willing to allow time for classification review once the FBI provides definite numbers and releases all other responsive records. The agency has not provided enough information about its upcoming litigation deadlines to show that they constitute an exceptional circumstance under the FOIA.

The amount of classified material in this case has yet to be determined, and likely the precise number of classified documents or pages will not be known until the FBI finishes processing the responsive documents. The FBI has stated that this case "potentially involves" as much as 25% classified material. (Def. Mot. at 20) However, the agency has already revised its estimate once and it would be idle to guess how much classified material exists before the agency finishes processing all potentially responsive pages.

The three litigation deadlines discussed by the agency are indeed approaching, but the FBI has not established that these deadlines will disrupt processing timelines by several years, only that they "require a significant devotion of RIDS resources." (*Id.* at 21) Many of these deadlines have likely been in place for some time and the FBI does not provide any point of comparison to show that these deadlines are outside the range of normal agency activity. Similar vague examples were not enough to convince this Court that exceptional circumstances existed in *Buc v. FDA* and they are insufficient here. 762 F. Supp. 2d at 79.

### D. The Fact That EPIC Declined the FBI's Proposal to Exclude Critical Documents from its FOIA Request Is Insufficient to Support a Finding of Exceptional Circumstances

The FBI argued that it is facing exceptional circumstances under the FOIA because EPIC "rejected two opportunities to narrow the request." (Def. Mot. at 21) This Court has noted that, "[p]ursuant to the 1996 Amendments to the FOIA, '[r]efusal by a person to reasonably modify the scope of a request or arrange an alternative time frame for processing a request (or a modified request) … after being given an opportunity to do so by the agency to whom the person made the request shall be considered as a factor in determining whether exceptional circumstances exist…'" *Elec. Frontier Found.,* 517 F. Supp. 2d at 117.

EPIC's decision not to exclude broad categories of documents, including "all classified material" (which the agency at one point represented constituted the

majority of documents sought) and "all operations manuals," was not a refusal to "reasonably modify" the scope of its request. In fact, EPIC, in response to the agency's proposal, did offer to modify the scope of its request by excluding all documents related to active investigations, but the FBI was unable to confirm whether EPIC's proposal would significantly reduce processing time. (McCall Decl. ¶ 10) The FBI's proposal was unacceptable to EPIC because the agency did not provide enough information to make an informed decision. As this Court previously noted, a requester's refusal to accept an agency offer to narrow a request, "in and of itself, would not justify the granting of an *Open America* stay" where the agency did not provide sufficient information to allow an informed decision. *Elec. Frontier Found.*, 517 F. Supp. 2d at 117-118.

The FBI first "estimated" that a majority of the responsive records were classified, then it submitted an updated estimate that 25% of responsive records included classified material. (McCall Decl. ¶ 9) The FBI did not make clear whether only "classified" information would be excluded, or whether all pages *containing* classified material would be excluded (even if those pages also contain responsive, reasonably segregable, non-classified material). (*Id*.) EPIC could not agree to exclude an indefinite category of documents that might include a substantial volume of responsive, segregable, non-classified records. The FBI also proposed that EPIC could exclude "operations manuals" which it estimated at

21

about 5,000 pages, but the agency did not make clear why processing such manuals

would take six months or whether those records included duplicates that would be

eliminated upon processing. (*Id*. ¶ 10)

## II.    This Court Routinely Orders Agencies to Meet Reasonable Processing Deadlines, and FBI's Requested Stay Is Unreasonably Long

The FBI argued that courts have "frequently" granted stays "of several years

in length … under exceptional circumstances." (Def. Mot. at 18-19) However, the

examples that the FBI sites are unpersuasive and do not bind the Court in this case.

In a similar FOIA matter, a federal District Court in Washington, DC granted a

motion for preliminary injunction and ordered the DOJ to complete the processing

of the FOIA requests and produce or identify all responsive records within 20 days.

*EPIC v. DOJ*, 416 F. Supp. 2d 30 (2006). Even in cases where this Court has found

exceptional circumstances under *Open America*, the multi-year delay requested by

the FBI is rarely granted. The majority of cases decided under the new E-FOIA

exceptional circumstances standard grant agency stays measured in days or months

rather than years.[8]

In support of its motion, the FBI cites *Judicial Watch v. National Archives &*

---

[8] *See, e.g.*, *Elec. Frontier Found. v. DOJ*, 563 F. Supp. 2d 188 (D.D.C. 2007) (stay granted for 32 days); *Elec. Frontier Found. v. DOJ I*, 517 F. Supp. 2d 111 (D.D.C. 2007) (stay granted for 1 year when the agency was understaffed by more than 100 and was moving its RIDS 90 miles away to Virginia); *Edmonds v. FBI*, No. 02-1294, 2002 WL 32539613 (D.D.C. Dec. 3, 2002) (court found exceptional circumstances but required processing in 59 days due to plaintiff's exceptional need); *Williams v. United States*, 932 F. Supp. 354 (D.D.C. 1996) (stay granted for 59 days).

*Records Admin.*, No. 07-1987 (D.D.C.), a FOIA case where the parties have submitted a number of *joint motions* for stay. There has been no ruling on "exceptional circumstances" in that case, so it is inapplicable. The FBI also cites *Williams v. FBI*, No. 99-3378, 2000 WL 1763680 (D.D.C. Nov. 30, 2000), a case with minimal analysis where the court granted a stay from November 30, 2000 until May 2, 2001 (153 days). The FBI also cites *Judicial Watch of Fla., Inc v. DOJ*, 102 F. Supp. 2d 6, 9 n1 (D.D.C. 2000), a case where the FBI was initially granted a stay of less than two years and *Piper v. U.S. Department of Justice*, 339 F. Supp. 2d 13, 16 (D.D.C. 2004), a case where the FBI requested a *four year delay* at a time when the agency had a backlog of more than 10,000 requests, and the Court granted a two year stay as partial relief. None of these cases support the length of stay that the FBI has requested in this case, where the agency has ample resources and a predictable workload of requests.

The FBI places a strong emphasis on the volume of pages it has identified as "potentially responsive" to EPIC's request. The agency initially indicated that it would not be possible to process the records within the statutory timetable provided in EPIC's schedule. (McCall Decl. ¶ 8) However, the FBI has been ordered or agreed to process larger volumes of records in the past when the agency had fewer resources and before it created a "special unit" to deal with FOIA litigation. *See, e.g.*, *Allen v. FBI*, 716 F. Supp. 667 (D.D.C. 1988) (FBI agreed to

process responsive records at a rate of 5,000 pages per month); *Meeropol v. Meese*, 790 F.2d 942 (D.C. Cir. 1986) (FBI ordered by the district court below to "search, process [sic] documents at the rate of 40,000 pages per month…"). Even in *Open America,* the DC Circuit noted that a federal district court had ordered the FBI to review a minimum of 4,000 pages per month until plaintiff's request was processed. *547 F.2d at 613* n.15.

This Court found that the FBI demonstrated exceptional circumstances in 2007 based on its staff shortage and backlog resulting from the transition of its entire FOIA processing center to a new location 90 miles outside of Washington, D.C.  *See Elec. Frontier Found.*, 517 F. Supp. 2d at 115-116. Given that no such situation exists now, and that the agency has an increased budget, staff, and new "efficient" processes adopted in 2007, the Court should not grant the unreasonably extended delay that the agency proposes here.[9]

## **CONCLUSION**

For the foregoing reasons, the Court should deny the FBI's motion for an *Open America* stay and require the agency to: (1) process and produce all responsive, non-classified records within sixty days, (2) identify and account for all classified, responsive records within sixty days, and (3) complete processing of all

---

[9] If the Court feels that the combination of circumstances described by the agency warrant some amount of delay in processing EPIC's request, EPIC asks that the Court order the FBI to make interim releases and submit reports to the Court every four weeks. The FBI has already indicated that its willingness to process at least 1,000 pages of potentially responsive records per month. (Def. Mot. at 12; Hardy Decl. ¶ 31)

classified, responsive records less than six months thereafter. Should the Court grant a longer period of time to process the request, EPIC respectfully asks the Court to order the FBI to make interim releases of responsive documents every four weeks and to submit periodic reports to the Court on the agency's progress toward completing the processing of EPIC's request.

Respectfully submitted,

By:   _/s/ Ginger P. McCall_____
Marc Rotenberg (DC Bar # 422825)
Ginger P. McCall (DC Bar #1001104)
Alan Butler[*]
ELECTRONIC PRIVACY
INFORMATION CENTER
1718 Connecticut Avenue, N.W.
Suite 200
Washington, D.C. 20009
(202) 483-1140 (telephone)
(202) 483-1248 (facsimile)

Dated:  August 20, 2012

---

[*] Mr. Butler has applied for admission to the District of Columbia bar, which is pending. He is a member in good standing of the California bar.