IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER | ) |
| Plaintiff, | ) |
| v. | ) No. 1:12-cv-00667-CKK |
| FEDERAL BUREAU OF INVESTIGATION | ) |
| Defendant. | ) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS**

**STATEMENT**

Beginning in early 2012, EPIC sought information from the Federal Bureau of Investigation ("FBI") about the agency's use of cell site simulator technology to directly track the location of mobile devices. On February 10, 2012, EPIC filed a request under the Freedom of Information Act ("FOIA"), 5 U.S.C. §552 (2012), to obtain FBI records about cell site simulator technologies, the agency's legal authority to use such devices, relevant training materials, and contracts with device manufacturers. When the FBI failed to produce responsive records, EPIC filed suit. As a result of the litigation, and in accordance with this Court's orders, the FBI has produced roughly 4,500 pages of records responsive to EPIC's FOIA request. EPIC is eligible and entitled to recover fees and costs pursuant to 5 U.S.C. § 552(a)(4)(E). EPIC has incurred $34,152.50 in attorney fees and costs in this matter, which are supported by the attached affidavits, time records, and receipts.

**FACTUAL BACKGROUND**

On September 22nd, 2011, the Wall Street Journal first reported about the FBI's use of a phone-tracking tool known as a "StingRay." Jennifer Valentino-Devries, *'Stingray' Phone Tracker Fuels Constitutional Clash*, Wall St. J., Sept. 22, 2011, at A1. The story focused on a federal criminal case in the District of Arizona, *United States v. Rigmaiden*, in which the defendant filed a discovery motion seeking additional information about the technique used by investigators to locate his laptop within his apartment. On October 27, 2011, the Government filed a response in *Rigmaiden* addressing the use of cell site simulator technology to covertly locate and track targets. Government's Memorandum Re Motion for Discovery, *United States v. Rigmaiden*, 844 F. Supp. 2d 982 (D. Ariz. 2012), ECF No. 674. The Government's response made clear that the "United States' position continues to be that" use of cell site simulators "is not a search under the Fourth Amendment." *Id*. at 1 n.1.

The important Fourth Amendment implications of the Government's position sparked additional public interest in law enforcement use of StingRays and other tracking technologies. *See* Jennifer Valentino DeVries, *Feds Shift Tracking Defense*, Wall St. J., Nov. 8, 2011, at A3; Kim Zetter, *Feds' Use Fake Cell Tower: Did it Constitute a Search?*, Wired (Nov. 3, 2011);[1] Joseph Parish, *The Stingray: the Cellphone Tracker the Government Won't Talk About*, The Verge (Nov. 4, 2011).[2]

In response to these news reports, EPIC filed a FOIA request on February 10, 2012, seeking FBI records concerning "technical specifications" and "procedural requirements or guidelines for the use of" the StingRay device or other cell site simulator

---

[1] http://www.wired.com/threatlevel/2011/11/feds-fake-cell-phone-tower/.
[2] http://www.theverge.com/2011/11/4/2535697/stingray-cellphone-tracker-government-wont-talk-about.

technologies as well as all "contracts and statements of work," legal basis memoranda, and Privacy Impact Assessments related to the technologies. Compl. at 4-5, ECF No. 1. The FBI acknowledged EPIC's FOIA request with a letter dated February 16, 2012, and stated that EPIC's fee waiver request was being considered, but the agency did not subsequently respond to EPIC's request prior to the initiation of this suit. *Id*. at 5-6. EPIC then filed an administrative appeal on March 20, 2012, challenging the FBI's failure to respond and reiterating EPIC's requests for news media fee status and expedited processing. *Id*. at 6.

EPIC filed this suit against the FBI on April 30, 2012, after the agency failed to respond within the FOIA's statutory deadline and after EPIC exhausted its administrative remedies. The complaint alleged four counts against the FBI: (1) failure to comply with statutory deadlines, (2) failure to make reasonable efforts to search for responsive records, (3) unlawful withholding of agency records, and (4) failure to designate EPIC as a representative of the news media for fee purposes. Compl. at 7-8, ECF No. 1. The FBI subsequently filed its answer on June 13, 2012, after seeking a one-week extension from the Court.

Pursuant to this Court's June 14, 2012 Order the parties filed a Joint Proposed Schedule on June 27, 2012. The parties disagreed as to the schedule for production of documents, and provided competing schedules to the Court, but the FBI did agree to begin processing documents at a rate of 1,000 pages per month beginning on September 30, 2012. Joint Proposed Schedule at 2-4, ECF No. 12. EPIC proposed a deadline of August 27, 2012, for the FBI to complete final production of documents and a *Vaughn* index. *Id*. The FBI proposed a deadline of October 31, 2014, for final production of

3

documents and November 30, 2014, for a Representative Sample *Vaughn* Index. *Id*. The Court subsequently issued a scheduling order and made clear that if an agency "is unable to comply with the request within the statutory time frame, the agency may seek" an *Open America* stay. Order at 1-2, July 1, 2011, ECF No. 13.

The Court found in its initial scheduling order that the FBI had "exceeded the statutorily prescribed time frames for responding to EPIC's request" by more than three months and requesting "an additional two years and five months to complete its production of responsive documents." *Id*. at 2. The Court then ordered the FBI to file a Motion for *Open America* Stay by July 30, 2012, or else adopt EPIC's proposed schedule. *Id*. The FBI filed a Motion to Stay under *Open America* on July 30, 2012, EPIC filed an Opposition, and the FBI filed a Reply. On October 3, 2012, the FBI began producing responsive documents to EPIC on a rolling basis pursuant to the Court's order.

On March 28, 2013, the Court issued its Memorandum Opinion denying the FBI's Motion for an *Open America* Stay. *EPIC v. FBI*, 933 F. Supp. 2d 42 (D.D.C. 2013). Specifically, the Court held that FBI had "failed to show that exceptional circumstances exist in this case." *Id*. at 47. The Court also found that, although the total number of FOIA and Privacy Act requests received by the FBI increased from FY 2011 to FY 2012, "overall the number of requests the FBI receives on a yearly basis has decreased significantly since FY 2008." *Id*. at 49. As a result of its failure to show extraordinary circumstances, the Court ordered the FBI to "produce all responsive, non-exempt records not subject to classification/declassification review on a rolling basis, but in any event by no later than August 1, 2013." *Id*. at 50. The FBI subsequently notified the Court on May 31, 2013, that the agency had completed classification review for all relevant records, and

4

the Court ordered the Parties to file a Joint Status Report by August 30, 2013, after the final production had been completed.

Pursuant to the Court's order, the FBI processed the records on a rolling basis until its final production on July 30, 2013. Then the Parties filed a Joint Status Report on August 29, 2013, advising the Court that the parties were willing to attempt to resolve the matter prior to summary judgment to avoid using judicial resources. Joint Status Report, ECF No. 23. To that end, the FBI agreed to provide EPIC with a sample *Vaughn* index for roughly 500 pages, addressing the withholdings under Exemptions 3 and 7E. *Id*. The FBI also agreed to reprocess those 500 pages to release certain "terms" that the agency had identified as information in the public realm. Ex. 1, Fourth Decl. of David M. Hardy at 9. The FBI subsequently produced the sample *Vaughn* index and reprocessed documents, along with a Fourth Declaration of David M. Hardy explaining the new disclosures. *See* Ex. 1.

The Parties then filed Joint Status Reports on November 1, 2013, and November 12, 2013, advising the Court that they were willing to resolve the remaining legal issues in this case, but that they were unable to reach an agreement regarding fees and costs owed to EPIC. The Court ordered that EPIC's Motion for Attorneys' Fees should be filed no later than December 19, 2013, with the FBI's response due no later than January 9, 2014, and EPIC's reply due no later than January 16, 2014.

## **ARGUMENT**

### A.  EPIC Is Eligible to Recover Fees and Costs in This Matter

The FOIA provides that, "[t]he court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under

5

this section in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i). This attorney fee inquiry is divided into two prongs: fee "eligibility" and fee "entitlement." *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 524 (D.C. Cir. 2011). A complainant who has "substantially prevailed" is eligible to recover fees and costs. *Id*. at 525. A complainant "substantially prevails" by obtaining "relief through either (I) a judicial order, or an enforceable written agreement or consent decree; or (II) a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." 5 U.S.C. § 552(a)(4)(E)(ii).

The Court's denial of a defendant's Motion for Open America Stay, and the resulting order to disclose documents, is a judicial order sufficient to establish that a plaintiff has substantially prevailed. Other courts in the D.C. Circuit have recognized that even a reduction in the length of defendant's requested *Open America* stay imposes an obligation and changes the agency's conduct sufficiently to establish that the plaintiff has substantially prevailed. *See Piper v. DOJ*, 339 F. Supp. 2d 13, 18-20 (D.D.C. 2004).

Furthermore, a proposed scheduling order adopted by the court that results in the production of agency documents also qualifies as a "judicial order, or an enforceable written agreement or consent decree" under the FOIA. *Judicial Watch, Inc. v. DOJ*, 774 F. Supp. 2d 225, 228 (D.D.C. 2011). Where a FOIA plaintiff obtains documents pursuant to the court's adoption of a joint stipulation, the plaintiff prevails, since "the parties had stipulated that the defendant agency would produce the requested records by a date certain and the trial court approved the parties' joint stipulation." *Id*. *See also Davy v. CIA*, 456 F.3d 162, 166 (D.C. Cir. 2006) (holding that the plaintiff prevailed when he received documents pursuant to a court-adopted scheduling order, since the agency "was

not under any judicial direction to produce documents by specific dates; the . . . order changed that by requiring the Agency to produce all 'responsive documents' by the specified dates").

EPIC has "substantially prevailed" in this case where the FBI produced 4,377 pages pursuant to the Court's orders of July 1, 2012, March 28, 2013, and May 31, 2013. Prior to the litigation, the FBI did not provide any documents responsive to EPIC's request. Moreover, the Court found that the FBI "exceeded the statutorily prescribed time frames for responding to EPIC's request." Order at 2, July 1, 2012, ECF No. 13. It was pursuant to the Court's July 1, 2012 Order that the FBI produced the first sets of documents beginning in October 2012. Then, pursuant to the Court's Memorandum Opinion and Order denying the FBI's Motion for an *Open America* Stay, the FBI was required to accelerate processing and produce all responsive records by August 1, 2013. Subsequent to that "final production," the FBI agreed to reprocess a 500-page sample of records and release additional "terms" relevant to EPIC's request. *See* Ex. 1.

EPIC clearly obtained relief under the FOIA through the Court's Order denying FBI's motion for delay and requiring production of records by August 1, 2013. EPIC also obtained relief through the "enforceable written agreements" – the joint briefing schedules – that were subsequently adopted in this Court's orders. As in *Judicial Watch* and *Davy*, the Court's adoption of the Proposed Joint Scheduling Order compelled the agency to disclose responsive documents according to a set timeline. EPIC therefore "substantially prevailed."

In addition, the FBI's reprocessing and disclosure of additional key "terms," which had been previously redacted within the 500-page sample, plainly constitutes a

"voluntary or unilateral change in position by the agency" caused by this litigation. *See Judicial Watch, Inc. v. DOJ*, 878 F. Supp. 2d 225, 233 (D.D.C. 2012). Thus EPIC "substantially prevailed" as to the additional FBI disclosures on October 1, 2013 under 5 U.S.C. § 552(a)(4)(E)(ii)(II).

### B. EPIC Is Entitled to Recover Fees and Costs Under the Four Factor Test

If a court finds that a plaintiff is eligible to recover fees and costs under the FOIA, the court must then determine whether the plaintiff is entitled to fees and costs. *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 524 (D.C. Cir. 2011). This Circuit employs a four-factor balancing test to determine a plaintiff's entitlement to attorney's fees. *Judicial Watch, Inc. v. U.S. Dep't of Commerce,* 470 F.3d 363, 369 (D.C. Cir. 2006). The four factors are: 1) "the benefit to the public, if any, deriving from the case;" 2) "the commercial benefit of the complainant;" 3) "the nature of [the complainant's] interest in the records sought"; and 4) "whether the government's withholding of the records sought had a reasonable basis in law." *Id.* (citing *Davy v. CIA*, 456 F.3d 162, 166 (D.C. Cir. 2006)).

The "public benefit" prong of the four-factor test easily weighs in EPIC's favor. EPIC sought these documents for public purposes and is therefore the "quintessential requestor of government information envisioned by the FOIA." *EPIC v. DHS*, ___ F. Supp. 2d ___, 2013 WL 5620891 at *4 (D.D.C. Oct. 15, 2013). "Public benefit" can be demonstrated by a "newsman who seeks information to be used in a publication or the public interest group seeking information to further a project benefitting the general public." *Davy*, 550 F.3d at 1158. The "public benefit" factor supports an award where the complainant's victory is "likely to add to the fund of information that citizens may use in

making vital political choices." *Cotton v. Heyman*, 63 F.3d 1115, 1120 (D.C. Cir. 1995) (citations omitted). *See also Davy*, 550 F.3d at 1164 (reaffirming the "public benefit" analysis in *Cotton*). This Court has found that news media coverage is relevant for determining "public benefit." *EPIC v DHS,* 811 F. Supp. 2d 216, 233-34 (D.D.C. 2011).

      EPIC's FOIA suit provided substantial benefit to the public. EPIC maintains two of the most popular websites in the world - epic.org and privacy.org - for searches on the term "privacy." EPIC disseminated the agency records it received on its epic.org web site and to the approximately 8,000 recipients of its bi-weekly newsletter. *See EPIC v. FBI – Stingray / Cell Site Simulator*, http://epic.org/foia/fbi/stingray/ (last visited Dec. 19, 2013). The public debate over the use of these devices has since benefited from the documents that EPIC has obtained in this litigation. EPIC's FOIA work in this matter was featured in a recent front-page story in *USA Today* as well as several other publications. *See* John Kelly, *Cellphone Data Spying: It's Not Just the NSA*, USA Today, Dec. 9, 2013, at 1A; Nadia Pflaum & Russ Ptacek, *DC, Maryland and Virginia Cops Spying on Cell Phone Data*, WUSA 9 (Dec. 9, 2013);[3] Ryan Gallagher, *FBI Files Reveal New Info on Clandestine Phone Surveillance Unit*, Slate – Future Tense (Oct. 8, 2013);[4] Ryan Gallagher, *FBI Documents Shine Light on Clandestine Cellphone Tracking Tool*, Slate – Future Tense (Jan. 10, 2013);[5] Ryan Gallagher, *FBI Accused of Dragging Feet on Release of Info About "Stingray" Surveillance Technology*, Slate – Future Tense (Oct. 19, 2012).[6]

---

[3] http://www.wusa9.com/news/local/story.aspx?storyid=285084.
[4] http://www.slate.com/blogs/future_tense/2013/10/08/fbi_wireless_intercept_and_tracking_team_files_reveal_new_information_on.html.
[5] http://www.slate.com/blogs/future_tense/2013/01/10/stingray_imsi_catcher_fbi_documents_shine_light_on_controversial_cellphone.html.
[6] http://www.slate.com/blogs/future_tense/2012/10/19/stingray_imsi_fbi_accused_by_epic_of_dragging_feet_on_releasing_documents.html.

The use of cell phone tracking technologies has been the subject of intense public debate for several years. *See* John Kass, *What's the Human Cost of GPS, Gadgets?*, Chi. Trib., Apr. 14, 2006, at 2; Andy Greenberg, *Congress to Debate Cellphone Tracking*, Forbes, Jun. 23, 2010; Eric Lichtblau, *Police Are Using Phone Tracking as a Routine Tool*, N.Y. Times, Mar. 13, 2012, at A1. And this issue has become even more important in light of recent disclosures about surveillance by the National Security Agency. Barton Gellman & Ashkan Soltani, *NSA Tracking Cellphone Locations Worldwide, Snowden Documents Show*, Wash. Post (Dec. 4, 2013);[7] Kimberly Dozier & Stephen Braun, *NSA Chief Admits Testing Cellphone Tracking*, AP (Oct. 3, 2013).[8] EPIC's FOIA work in this case also provided the background for EPIC's contributions to recent academic conferences discussing location privacy. Alan Butler, Allie Bohm, J. Beckwith Burr, & Christopher Soghoian, *Computers, Freedom, and Privacy 2013: Location Tracking* (Jun. 25, 2013); Alan Butler, Hon. Judge Brian Owsley, & Christopher Soghoian, *Location Tracking and Biometrics Conference, Panel 3: Cellular Phones and Mobile Privacy: Direct Government Surveillance (StingRays)*, Yale Info. Soc'y Project (Mar. 3, 2013).[9]

The "nature of the [complainant's] interest" factor is "closely related [to] and often considered together with the commercial benefit criterion." *Tax Analysts v. DOJ*, 965 F.2d 1092, 1095 (D.C. Cir. 1992). "The second factor considers the commercial benefit to the plaintiff, while the third factor considers the plaintiff's interest in the records." *EPIC v. DHS*, CV 11-2261(JDB), 2013 WL 6047561 (D.D.C. Nov. 15, 2013). Favored interests are "scholarly, journalistic or public-interest oriented." *See Long v. IRS*,

---

[7] http://www.washingtonpost.com/world/national-security/nsa-tracking-cellphone-locations-worldwide-snowden-documents-show/2013/12/04/5492873a-5cf2-11e3-bc56-c6ca94801fac_story.html.
[8] http://bigstory.ap.org/article/clapper-shutdown-harms-spies-mission.
[9] http://www.youtube.com/watch?v=g3nM0dnBmkU.

932 F.2d 1309, 1316 (9th Cir. 1991) (holding that a lower court's ruling that the plaintiff's scholarly interest weighed against her recovery of fees was "wrong as a matter of law and an abuse of discretion"). EPIC is a 501(c)(3) non-profit public interest research center. *EPIC,* 241 F. Supp. 2d at 5. EPIC derived no commercial benefit from its FOIA request or lawsuit. The sole benefit was to the public, which benefited from the disclosure of the documents released in this case. Thus, EPIC's interest in this matter is squarely within the "scholarly, journalistic or public interest oriented" interests favored by the statute. *See, e.g., EPIC v. DHS,* 760 F. Supp. 2d 4, 44 (D.D.C. 2011) ("[EPIC's] aims, which include dissemination of information regarding privacy issues to the public, . . . fall within the scholarly and public-interest oriented goals promoted by FOIA").

The FBI did not have a "reasonable legal basis" for failing to disclose records to EPIC. The Bureau's delay in replying to EPIC's requests plainly violated the FOIA's statutory deadlines. *See* 5 U.S.C. § 552(a)(6)(A). As described in EPIC's Complaint, the FBI violated statutory deadlines by failing to make a timely determination concerning EPIC's administrative requests.

The FBI has cited no legal basis in opposition to EPIC's claims regarding the untimeliness of the agency's response, and the Court specifically denied the agency's request for an *Open America* stay, finding no exceptional circumstances. EPIC was forced to sue the FBI in order to obtain critical information concerning the use of cell site simulator technologies. The FBI had no reason or legal basis to withhold these records. As a result, the agency must reimburse EPIC for its costs and fees.

## II. EPIC's Attorneys' Fees and Costs are Reasonable

### A. EPIC Requests $34,152.50 in Costs and Fees

EPIC's fees and costs incurred in this matter are set forth in detail in Exhibits 7-12. EPIC moves the Court to award EPIC a total of $34,152.50 – $33,802.50 in attorneys' fees and $350 in costs. EPIC's request for attorneys' fees is supported by contemporaneously-recorded time records kept by EPIC's attorneys. *See* Exhibits 7-12. EPIC's request is further supported by Affidavits from each attorney. Ex. 3, Butler Aff.; Ex. 5, McCall Aff.; Ex. 4, Horwitz Aff.; Ex. 2, Rotenberg Aff. EPIC's request for costs is supported by evidence on the case docket – the clerk of this Court assigned receipt number 0090-2911667 to EPIC's payment of the filing fee in this matter. As set forth below, EPIC's fees and costs in this matter are reasonable.

### B. The Laffey Matrix Provides a Reasonable Minimum Basis for Calculating EPIC's Fees

To determine whether fees are reasonable, courts focus on two questions: (1) whether the attorneys charged a reasonable hourly rate and (2) whether the time attorneys logged on the case was reasonable - *i.e.,* did the attorneys waste or otherwise unnecessarily spend time on the matter. *Judicial Watch, Inc. v. DOJ*, 774 F. Supp. 2d 225, 232 (D.D.C. 2011) (*Judicial Watch II*) (quoting *Bd. of Trs. Of Hotel & Rest. Emps. Local 25 v. JPR, Inc.*, 136 F.3d 794, 801 (D.C. Cir. 1998)).

Attorneys' fees are calculated based on the "lodestar," which is the number of hours the lawyers reasonably spent on the case multiplied by the lawyers' hourly rates. *Id*. A lawyer's hourly rate is measured by its fair market value, "regardless of whether plaintiff is represented by private or non-profit counsel." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). "The District of Columbia Circuit has concluded that the second prong of the

equation for calculating a fee award -- the reasonableness of hourly rates awarded under fee-shifting statutes -- consists of 'at least three elements: the attorneys' billing practices; the attorneys' skill, experience, and reputation; and the prevailing market rates in the relevant community.'" *American Lands Alliance v. Norton*, 525 F. Supp. 2d 135 (D.D.C. 2007) *citing Covington v. District of Columbia*, 57 F.3d 1101, 1107 (D.C. Cir. 1995). "For public-interest or government lawyers who do not have customary billing rates, courts in this circuit have frequently employed the 'Laffey Matrix,' a schedule of fees based on years of attorney experience." *Judicial Watch II*, 774 F. Supp. 2d at 232; *see also Covington v. District of Columbia*, 57 F.3d 1101, 1105-12 (D.C. Cir. 1995) (affirming a fee award calculated using the Laffey matrix). EPIC billed time for this matter using the Laffey Matrix as the basis for its calculations. The Laffey Matrix is published by the Department of Justice at: http://www.justice.gov/usao/dc/Divisions/Civil_Division/Laffey_Matrix_8.html and is attached as Exhibit 6.

Further, the D.C. Circuit "has been very explicit about what documentation is necessary to recover attorney's fees." *Weisberg v. Webster*, 749 F. 2d 864, 872 (D.C. Cir. 1984). To recover, the movant must provide "contemporaneous, complete, and standardized time records which accurately reflect the work done by each attorney." *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1327 (D.C. Cir. 1982). *See also EPIC v. DHS*, CV 11-2261(JDB), 2013 WL 6047561 (D.D.C. Nov. 15, 2013) (awarding $29,841.67 to EPIC in a FOIA fee dispute). EPIC has provided complete, detailed billing records, which were contemporaneously recorded and accurately reflect the work done by each attorney. The records reflect the date, time, and nature of each

activity, and often include details about the specific work performed. Each entry is clearly labeled with the name of the attorney performing the work, the attorney's rate, the hours of work performed on the activity, and the total amount charged for the activity. EPIC has therefore satisfied the D.C. Circuit's documentation requirements for fee recovery.

### III. EPIC is Entitled to Recover "Fees on Fees"

EPIC is entitled to recover fees on fees for the time spent litigating the fee issue against the FBI. "It is settled in this circuit that hours reasonably devoted to a request for fees are compensable." *Judicial Watch II*, 878 F. Supp. 2d at 240 (citations omitted). *See also EPIC v. DHS,* 811 F. Supp. 2d 216, 237 (D.D.C. 2011) ("It is a common practice in this jurisdiction to award fees on fees in FOIA cases"); *Nat'l Veterans Legal Servs. Program v. U.S. Dep't of Veteran Affairs,* 1999 WL 33740260, at *2 (D.D.C. Apr. 13, 1999) (court awards fees on fees following a determination that "the hours spent by the plaintiff on these tasks were reasonably expended and do not constitute a 'windfall' for the attorneys.") Further, this Court has found that EPIC specifically may recover "fees on fees" in FOIA litigation. *EPIC v. DHS*, CV 11-2261(JDB), 2013 WL 6047561 (D.D.C. Nov. 15, 2013) (holding that "there is no reason to treat FOIA's fee-shifting provision differently than those for which the D.C. Circuit has approved awards of 'fees on fees.' [] Hence, EPIC is entitled to a reasonable award of attorney's fees for litigating this motion").

### CONCLUSION

As discussed above, EPIC substantially prevailed in this lawsuit, thereby triggering the FOIA's fee-shifting provision. EPIC is eligible for and entitled to recover

its fees and costs from the FBI in this matter. EPIC's fees are reasonable and supported by the attached affidavits and time records. EPIC moves the Court to award EPIC $34,152.50 in fees and costs. A proposed Order is attached.

        Respectfully submitted,

         /s/ Marc Rotenberg
        MARC ROTENBERG (DC Bar # 422825)
        ALAN BUTLER (DC Bar #1012128)
        Electronic Privacy Information Center
        1718 Connecticut Ave. NW
        Suite 200
        Washington, DC 20009
        202-483-1140
        *Counsel for Plaintiff*

Dated: December 19, 2013