*EPIC v. FBI*, No. 12-cv-667 (CKK)

# Exhibit 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ELECTRONIC PRIVACY | ) | |
| INFORMATION CENTER | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 12-00667-CKK |
| | ) | |
| FEDERAL BUREAU OF INVESTIGATION | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## FOURTH DECLARATION OF DAVID M. HARDY

I, David M. Hardy, declare as follows:

(1)     I am the Section Chief of the Record/Information Dissemination Section ("RIDS"), Records Management Division ("RMD"), in Winchester, Virginia. I have held this position since August 1, 2002. Prior to my joining the Federal Bureau of Investigation ("FBI"), from May 1, 2001 to July 31, 2002, I was the Assistant Judge Advocate General of the Navy for Civil Law. In that capacity, I had direct oversight of Freedom of Information Act ("FOIA") policy, procedures, appeals, and litigation for the Navy. From October 1, 1980 to April 30, 2001, I served as a Navy Judge Advocate at various commands and routinely worked with FOIA matters. I am also an attorney who has been licensed to practice law in the State of Texas since 1980.

(2)     In my official capacity as Section Chief of RIDS, I supervise approximately 265 employees who staff a total of ten (10) FBIHQ units and two (2) field operational service center units whose collective mission is to effectively plan, develop, direct, and manage responses to

1

requests for access to Federal Bureau of Investigation ("FBI") records and information pursuant

to the FOIA as amended by the OPEN Government Act of 2007 and the OPEN FOIA Act of

2009; the Privacy Act of 1974; Executive Order ("E.O.") 13526, Presidential, Attorney General,

and FBI policies and procedures; judicial decisions; and Presidential and Congressional

directives.  My responsibilities also include the review of FBI information for classification

purposes as mandated by Executive Order 13526, 75 Fed. Reg. 707 (2010), and the preparation

of declarations in support of Exemption 1 claims asserted under the FOIA, 5 U.S.C. § 552(b)(1).

I have been designated by the Attorney General of the United States as an original classification

authority and a declassification authority pursuant to Executive Order 13526, §§ 1.3 and 3.1.

The statements contained in this declaration are based upon my personal knowledge, upon

information provided to me in my official capacity, and upon conclusions and determinations

reached and made in accordance therewith.

     (3)    Due to the nature of my official duties, I am familiar with the procedures followed

by the FBI in responding to requests for information from its files pursuant to the provisions of

the FOIA, 5 U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. § 552a.  Specifically, I am

aware of the treatment which has been afforded plaintiff's February 10, 2012 FOIA request for

information regarding:

> "Agency records concerning cell site simulator and other cell phone tracking
>
> technologies deployed by the Federal Bureau of Investigation to covertly locate,
>
> target, and track targets of interest."

Specifically, plaintiff requested the following agency records:

> a. All documents concerning technical specifications of the StingRay device or

other cell site simulator technologies; and

    b.  All documents concerning procedural requirements or guidelines for the use of

StingRay device or other cell site simulator technologies (e.g. configuration,

data retention, data deletion); and

    c.  All contracts and statements of work that relate to StingRay device or other

cell site simulator technologies; and

    d.  All memorandum regarding the legal basis for the use of StingRay device or

other cell site simulator technologies; and

    e.  All Privacy Impact Assessments or Reports concerning the use or capabilities

of StingRay device or other cell site simulator technologies.

    (4)    This declaration is submitted to plaintiff pursuant to the August 29, 2013 Joint

Status Report in order to potentially resolve this matter prior to summary judgment.  The FBI has

agreed to provide the plaintiff with sufficient information to evaluate the FBI's withholdings

under Exemption b3 and Exemption 7(E) for the 500 page sampling[1] (**Exhibit N**) submitted by

the plaintiff August 30, 2013.[2]  In addition, FBI agreed to conduct an additional review of the

---

[1]  Plaintiff's Vaughn Sample List contained twenty-eight sampling requests concerning parts of the thirteen FOIA releases.  Several discrepancies in their chart were located, and were handled by the FBI in the following way: 1). Plaintiff requested "slide 32" in the fifth sampling request.  This slide was excluded from review as outside the scope of the Plaintiff's FOIA request, and remains excluded.  2). Plaintiff requested the "first 4 pages from the 11 withheld sets" of sampling request twenty-one.  There was only one withheld section, and only one page was withheld in full. 3). Plaintiff requested "Cell/OTD 012494" of sampling request twenty-two.  This is an excluded duplicate, so remains excluded.  4).  Plaintiff requested page 4 from the 8th set (see sampling request twenty-three), but sent a copy of page 8 for reference.  FBI included pages 4 and 8 in the sample.  Plaintiff requested pages 42-43 from the 11th set, but sent copies of pages 41-42 as reference.  FBI included pages 41-43 in the sample.  5). Bates pages FBICELL 335-337 are duplicates of previously processed pages from FOIA release 8, file 1197470-OTD-Policy 7, FDPS pages 140-142.  The final sampling (Exhibit N) consisted of 516 Bates pages.

[2]  Parties agreed that (b)(1), (b)(4), (b)(5), or (b)(7)(C) will not be addressed in this declaration.  The lack of justification of redactions based on the foregoing exemptions is not intended to be, nor should it be construed as, being a waiver of any such justification.  As the sampling attached as Exhibit N shows all these exemptions have also been asserted as a basis for withholding information.

3

sample to determine if additional information could be released based upon a court filing in

Rigmaiden v. FBI Civ A. No. 12-01605.  In that filing, the plaintiff provided sufficient

information for the FBI to reconsider whether it should continue to withhold certain identified

aspects and/or terms relating to contracts with FBI contractor Harris, and certain cell-site

simulator technology information and/or terms that arguably, may now be in the public domain.

## ADMINISTRATIVE HISTORY OF FOIA/PA REQUEST RELEASES TO PLAINTIFF

(5)     Set forth below is a chronology and description of the pertinent correspondence

concerning FBI's releases in response to plaintiff's February 10, 2012 FOIA/PA request.[3]

Copies of this correspondence are attached hereto as **Exhibits A-M**.  Between October 3, 2012

and July 30, 2013, the FBI sent 13 separate sets of documents to the plaintiff, and produced a

total of 4,377 pages in whole or in part.  The FBI reviewed a total of 22,982 pages and withheld

in full 18,605 pages.

(6)     By letter dated October 3, 2012, the FBI advised plaintiff that it had reviewed and

processed 1015 pages of responsive records for this first interim FOIA release, and it was

releasing 39 pages in full, or in part.  The FBI indicated that it withheld information pursuant to

FOIA Exemptions 3, 4, 6, 7(C), and 7(E), 5 U.S.C. §§ 552, (b)(3), (b)(4), (b)(6), (b)(7)(C), and

(b)(7)(E).  In addition, the FBI notified plaintiff of his right to appeal any denials in the release,

and to direct his appeal to the Department of Justice ("DOJ"), Office of Information Policy

("OIP") within 30 days from the day of its letter.  (*See* **Exhibit A.**)

(7)     By letter dated November 15, 2012, the FBI advised plaintiff that it had reviewed

and processed 924 pages of responsive records for this second interim FOIA release, and it was

---

[3]   The Declaration of David M. Hardy dated July 30, 2012 ("First Hardy Declaration") and Exhibits A-G thereto
describe and display the procedural history of plaintiff's February 10, 2012 FOIA request up through July 30, 2012.

releasing zero (0) pages. The FBI indicated that it withheld all the information pursuant to FOIA Exemptions 3, 4, 6, 7(C), and 7(E), 5 U.S.C. §§ 552, (b)(3), (b)(4), (b)(6), (b)(7)(C), and (b)(7)(E). In addition, the FBI notified plaintiff of his right to appeal any denials in the release, and to direct his appeal to the DOJ, OIP within 30 days from the day of its letter. (*See* **Exhibit B.**)

(8)    By letter dated December 7, 2012, the FBI advised plaintiff that it had reviewed and processed 1132 pages of responsive records for this third interim FOIA release, and it was releasing 62 pages in full, or in part. The FBI indicated that it withheld information pursuant to FOIA Exemptions 3, 4, 5, 6, 7(C), and 7(E), 5 U.S.C. §§ 552, (b)(3), (b)(4), (b)(5), (b)(6), (b)(7)(C), and (b)(7)(E). In addition, the FBI notified plaintiff of his right to appeal any denials in the release, and to direct his appeal to the DOJ, OIP within 30 days from the day of its letter. (*See* **Exhibit C.**)

(9)    By letter dated December 31, 2012, the FBI advised plaintiff that it had reviewed and processed 1131 pages of responsive records for this fourth interim FOIA release, and it was releasing 157 pages in full, or in part. The FBI indicated that it withheld information pursuant to FOIA Exemptions 3, 4, 5, 6, 7(C), and 7(E), 5 U.S.C. §§ 552, (b)(3), (b)(4), (b)(5), (b)(6), (b)(7)(C), and (b)(7)(E). In addition, the FBI notified plaintiff of his right to appeal any denials in the release, and to direct his appeal to the DOJ, OIP within 30 days from the day of its letter. (*See* **Exhibit D.**)

(10)    By letter dated February 7, 2013, the FBI advised plaintiff that it had reviewed and processed 611 pages of responsive records for this fifth interim FOIA release, and it was releasing 231 pages in full, or in part. The FBI indicated that it withheld information pursuant to

FOIA Exemptions 1, 3, 4, 5, 6, 7(C), and 7(E), 5 U.S.C. §§ 552, (b)(1), (b)(3), (b)(4), (b)(5), (b)(6), (b)(7)(C), and (b)(7)(E).  In addition, plaintiff was notified that some of the responsive material was sealed court records sealed by an Order from the United States District Court, Southern District of Alabama, which made them ineligible for release under the FOIA. Moreover, the FBI notified plaintiff of his right to appeal any denials in the release, and to direct his appeal to the DOJ, OIP within 30 days from the day of its letter.  (*See* **Exhibit E.**)

(11)    By letter dated February 22, 2013, the FBI advised plaintiff that it had reviewed and processed 443 pages of responsive records for this sixth interim FOIA release, and it was releasing 116 pages in full, or in part.  The FBI indicated that it withheld information pursuant to FOIA Exemptions 3, 4, 5, 6, 7(C), and 7(E), 5 U.S.C. §§ 552, (b)(3), (b)(4), (b)(5), (b)(6), (b)(7)(C), and (b)(7)(E).  In addition, the FBI notified plaintiff of his right to appeal any denials in the release, and to direct his appeal to the DOJ, OIP within 30 days from the day of its letter. (*See* **Exhibit F.**)

(12)    By letter dated February 28, 2013, the FBI advised plaintiff that it had reviewed and processed 1086 pages of responsive records for this seventh interim FOIA release, and it was releasing zero (0) pages.  The FBI indicated that it withheld all the information pursuant to FOIA Exemptions 3, 4, and 7(E), 5 U.S.C. §§ 552, (b)(3), (b)(4), and (b)(7)(E).  In addition, the FBI notified plaintiff of his right to appeal any denials in the release, and to direct his appeal to the DOJ, OIP within 30 days from the day of its letter.  (*See* **Exhibit G.**)

(13)    On March 28, 2013, the Court ordered the FBI to complete its releases to plaintiff by August 1, 2013.[4]

---

[4]   The FBI completed its release of all responsive non-exempt records on July 30, 2013.

(14)    By letter dated March 29, 2013, the FBI advised plaintiff that it had reviewed and processed 876 pages of responsive records for this eighth interim FOIA release, and it was releasing 90 pages in full, or in part.  The FBI indicated that it withheld information pursuant to FOIA Exemptions 1, 3, 4, 5, 6, 7(C), and 7(E), 5 U.S.C. §§ 552, (b)(1), (b)(3), (b)(4), (b)(5), (b)(6), (b)(7)(C), and (b)(7)(E).  In addition, the FBI notified plaintiff of his right to appeal any denials in the release, and to direct his appeal to the DOJ, OIP within 30 days from the day of its letter.  (*See* **Exhibit H.**)

(15)    By letter dated April 30, 2013, the FBI advised plaintiff that it had reviewed and processed 1290 pages of responsive records for this ninth interim FOIA release, and it was releasing 420 pages in full, or in part.  The FBI indicated that it withheld information pursuant to FOIA Exemptions 1, 3, 4, 5, 6, 7(C), and 7(E), 5 U.S.C. §§ 552, (b)(1), (b)(3), (b)(4), (b)(5), (b)(6), (b)(7)(C), and (b)(7)(E).  In addition, the FBI notified plaintiff of his right to appeal any denials in the release, and to direct his appeal to the DOJ, OIP within 30 days from the day of its letter.  (*See* **Exhibit I.**)

(16)    By letter dated May 31, 2013, the FBI advised plaintiff that it had reviewed and processed 2646 pages of responsive records for this tenth interim FOIA release, and it was releasing 217 pages in full, or in part.  The FBI indicated that it withheld information pursuant to FOIA Exemptions 1, 3, 4, 5, 6, 7(C), and 7(E), 5 U.S.C. §§ 552, (b)(1), (b)(3), (b)(4), (b)(5), (b)(6), (b)(7)(C), and (b)(7)(E).  In addition, the FBI notified plaintiff of his right to appeal any denials in the release, and to direct his appeal to the DOJ, OIP within 30 days from the day of its letter.  (*See* **Exhibit J.**)

(17)    By letter dated June 28, 2013, the FBI advised plaintiff that it had reviewed and

7

processed 5678 pages of responsive records for this eleventh interim FOIA release, and it was releasing 1212 pages in full, or in part. The FBI indicated that it withheld information pursuant to FOIA Exemptions 1, 3, 4, 5, 6, 7(C), and 7(E), 5 U.S.C. §§ 552, (b)(1), (b)(3), (b)(4), (b)(5), (b)(6), (b)(7)(C), and (b)(7)(E). In addition, the FBI notified plaintiff of his right to appeal any denials in the release, and to direct his appeal to the DOJ, OIP within 30 days from the day of its letter. (*See* **Exhibit K.**)

(18)    By letter dated July 12, 2013, the FBI advised plaintiff that it had reviewed and processed 5224 pages of responsive records for this twelfth interim FOIA release, and it was releasing 1329 pages in full, or in part. The FBI indicated that it withheld information pursuant to FOIA Exemptions 1, 3, 4, 5, 6, 7(C), and 7(E), 5 U.S.C. §§ 552, (b)(1), (b)(3), (b)(4), (b)(5), (b)(6), (b)(7)(C), and (b)(7)(E). In addition, plaintiff was notified that some of the responsive material was sealed court records, which made them ineligible for release under the FOIA. Moreover, the FBI notified plaintiff of his right to appeal any denials in the release, and to direct his appeal to the DOJ, OIP within 30 days from the day of its letter. (*See* **Exhibit L.**)

(19)    By letter dated July 30, 2013, the FBI advised plaintiff that it had reviewed and processed 926 pages of responsive records for this thirteenth and final interim FOIA release, and it was releasing 504 pages in full, or in part. The FBI indicated that it withheld information pursuant to FOIA Exemptions 3, 4, 5, 6, 7(C) and 7(E), 5 U.S.C. §§ 552, (b)(3), (b)(4), (b)(5), (b)(6), (b)(7)(C) and (b)(7)(E). In addition, the FBI notified plaintiff of his right to appeal any denials in the release, and to direct his appeal to the DOJ, OIP within 30 days from the day of its letter. (*See* **Exhibit M.**)

**RELEASE OF MATERIAL TO PLAINTIFF AND**
**JUSTIFICATION FOR REDACTED INFORMATION UNDER THE FOIA**

(20)     The FBI reviewed and processed a total of 22,982 pages of responsive material, of
which, 4,377 pages were released in full or in part, and 18,605 pages were withheld in full.  As
grounds for non-disclosure for portions of the documents and/or documents in full,  the FBI
withheld information pursuant to FOIA Exemptions 1, 3, 4, 5, 6, 7(C), and 7(E), 5 U.S.C. §§
552, (b)(1), (b)(3), (b)(4), (b)(5), (b)(6), (b)(7)(C), and (b)(7)(E).

(21)     Pursuant to the August 29, 2013 Joint Status Report and Order, the FBI herein
provides  plaintiff with detailed information to evaluate the FBI's withholdings under Exemption
b3 and Exemption 7(E) for a 500 page sampling (Exhibit N) as provided by the plaintiff August
30, 2013.[5]  In addition, a review for reasonable segregability was performed for the pages within
this 500 page sampling to ascertain if additional information could be segregated for release
concerning FBI contracts with the Harris Corporation, and certain cell-site simulator technology
that may be publically known.[6]

(22)     All information in the sample was processed to achieve maximum disclosure
consistent with the access provisions of the FOIA.  Every effort was made to provide plaintiff
with all reasonably segregable portions of material that is responsive to the request and subject to
the FOIA.  No reasonably segregable, non-exempt portions of documents subject to the FOIA
were withheld from plaintiff.  To further describe the information withheld could identify the
material sought to be protected.  Copies of the re-reviewed and/or reprocessed sample pages are
attached hereto as **Exhibit N**.[7]

---

[5]   See footnote two supra.
[6]   The FBI has identified a limited number of terms relating to cell-site simulator technology that have been
identified as information which may be in the public realm.  These terms include "stingray," "Harris Corporation,"
"Triggerfish," "Loggerhead," and "Wireless Intercept & Tracking Team (WITT)."
[7]   To the extent that the terms or variations thereof identified in footnote 6 could reasonably be segregated from
exempt material for release, these terms or references have been released in the sample on the following Bates pages

## EXPLANATION OF WITHHELD MATERIAL:
## JUSTIFICATION FOR NON-DISCLOSURE UNDER FOIA

(23)    Paragraphs 24- 36 infra, explain the FBI's rationale for withholding information

under Exemption 3 and Exemption 7(E) as described below.

## EXEMPTION (b)(3)
## INFORMATION PROTECTED BY STATUTE

(24)    5 U.S.C. § 552 (b)(3) exempts from disclosure information which is:

> specifically exempted from disclosure by statute . . . if that statute
> (A)(i) requires that the matters be withheld from the public in such a manner
> as to leave no discretion on the issue; or (A)(ii) establishes particular criteria
> from withholding or refers to particular types of matters to be withheld; and
> (B) if enacted after the date of enactment of the Open FOIA Act of 2009,
> specifically cites to this paragraph.

### National Security Act of 1947 [50 U.S.C. § 3024-1(i)(1)]

(25)    Exemption (b)(3) is being asserted, at times in conjunction with (b)(1),[8]

(b)(7)(E),[9] and Exemption (b)(7)(E) with underlying Exemption (b)(4),[10] to withhold information

---

of Exhibit N: FBICELL-49, 51, 55, 58-60, 67, 71, 74-78, 97, 99, 102-103, 105-109, 126, 129-136, 143-153, 155-158, 160-163, 165-169, 171-177, 179-180, 182-193, 195, 198-200, 202-211, 214-218, 220-222, 224, 226, 229-231, 290, 294, 296, 299, 354, 357, 361-362, 369, 372, 375-381, 390, 406, 408-410, 413, 420, 439, 448, 454-457, 461-462, 489, and 491-492.

[8]  Exemption (b)(3) was asserted, in conjunction with Exemptions (b)(1) (E.O. 13525, Sect. 1.4(c, and/or g)) and (b)(7)(E), as a basis for withholding information on the following Bates pages of Exhibit N: FBICELL-129, 259-260, 271-273, 275-277, 279-281, 283-285, 287-289, 296, 312, 370, 378, 392, 440-445, 448-450, 455, and 460-461. Exemption (b)(3) was asserted, in conjunction with Exemption (b)(1) (E.O. 13525, Sect. 1.4 (c, and g)), as a basis for withholding information on the following Bates pages of Exhibit N: 342-345, and 461. The information withheld was so intermingled that no non-exempt material was segregable for release.

[9]  Exemption (b)(3) was asserted, in conjunction with Exemption (b)(7)(E), as a basis for withholding information on the following Bates pages of Exhibit N: FBICELL-2, 5-14, 96, 109-121, 123-127, 148, 160-163, 168, 172-177, 185-192, 195-198, 202, 206-207, 209-210, 217, 227-231, 247-250, 252-253, 258, 269-278, 282, 286, 293, 298-299, 301, 303-305, 307-308, 310-311, 322-325, 350-373, 379-387, 389, 391, 394-406, 408-412, 414-440, 444, 447-448, 451-453, 456, 458, 464-487, 491, 507-510, and 516.  The information withheld was so intermingled that no non-exempt material was segregable for release.  In addition, Exemption (b)(3) was asserted, in conjunction with Exemption (b)(7)(E), with underlying Exemption (b)(5), as a basis for withholding information on the following Bates pages of Exhibit N: FBICELL 98-102, 293-295, 309, 388, 393, 454-455, 457, 459, and 515.  The information withheld was so intermingled that no non-exempt material was segregable for release.  Finally, the large block in the middle of Bates page FBICELL-95 was previously withheld from disclosure by asserting Exemptions (b)(3), (b)(7)(E), and underlying Exemption (b)(5).  After additional review only Exemption (b)(7)(E) and underlying Exemption (b)(5) are being asserted to withhold the information.

10

pursuant to Section 102A(i)(1) of the National Security Act of 1947 ("NSA"), as amended by the

Intelligence Reform and Terrorism Prevention Act of 2004 ("IRTPA"), 50 U.S.C. § 3024-1(i)(1),

which provides that the Director of National Intelligence ("DNI") "shall protect from

unauthorized disclosure intelligence sources and methods." As relevant to U.S.C. § 552

(b)(3)(B), the National Security Act of 1947 was enacted before the date of enactment of the

OPEN FOIA Act of 2009.[11]  On its face, this federal statute leaves no discretion to agencies

about withholding from the public information about intelligence sources and methods. Thus,

the protection afforded to intelligence sources and methods by 50 U.S.C. § 3024-1(i)(1) is

absolute. See CIA v. Sims, 471 U.S. 159 (1985).

(26)    In order to fulfill its obligation of protecting intelligence sources and methods, the

DNI is authorized to establish and implement guidelines for the Intelligence Community ("IC")

for the classification of information under applicable laws, Executive Orders, or other

Presidential Directives, and for access to and dissemination of intelligence.  50 U.S.C. §§ 3024-

1(i)(2)(A), (B).  The FBI is one of 17 member agencies comprising the IC, and as such must

protect intelligence sources and methods.  As relevant here, the Office of the DNI on behalf of

the DNI reviewed the information at issue here and approved the FBI's assertion of this

---

[10]  Exemption (b)(3) was asserted, in conjunction with Exemption (b)(7)(E) and underlying Exemption (b)(4), as a basis for withholding information on the following Bates pages of Exhibit N: FBICELL 15-18, 21, 24-29, 34-40, 45-48, 83-93, 135, 152, 234, 236-242, 244-245, 254-257, 313-316, 318-321, 326-333, 338-341, 346-349, 411, 496-506. The information withheld was so intermingled that no non-exempt material was segregable for release. If fact, the Harris Corporation Operator manual pages and/or training slides pertaining to Harris products come with the following statement, "This manual contains Harris Corporation proprietary information, which is exempt from disclosure under the Freedom of Information Act (5 USC 522) (See FAR 22-202). No part of this manual may be reproduced or transmitted in any form or by any means, electronic or mechanical, including photocopying, recording, or information recording and retrieval systems, for any purpose, without written consent of Harris Corporation." In addition, the same exemptions were asserted to withhold several corporation catalog pages, newsletter excerpts, and email responses (FBICELL 30-33, 41-44, 251, 362, 493-495, and 511-514) produced for, or in response to, intelligence agency clients in order to explain the products capabilities, and technical specifics. Furthermore, Bates pages FBICELL 19-20, 22-23, and 346 were previously withheld from disclosure in full by asserting Exemptions (b)(3), (b)(7)(E), and underlying Exemption (b)(4). After additional review only Exemption (b)(4) is being asserted to withhold the information in full. Finally, Bates page FBICELL-82 was previously withheld from disclosure in full by asserting Exemptions (b)(3), (b)(7)(E), and underlying Exemption (b)(4). After additional review only Exemptions (b)(4) and (b)(7)(E) are being asserted to withhold the information in full. The information withheld was so intermingled that no non-exempt material was segregable for release.
[11]  The OPEN FOIA Act of 2009 was enacted October 28, 2009, Pub.L. 111-83, 123 Stat. 2142, 2184; 5 U.S.C. §552(b)(3)(B).

statutory authority to withhold intelligence sources and method information under Exemption (b)(3), both in conjunction Exemption (b)(1) and Exemption (b)(7)(E) where applicable.

(27)     As described above, Congress enacted the NSA, as amended by the IRTPA, to protect the IC's sources and methods of gathering intelligence. Disclosure of such information presents the potential for individuals to develop and implement countermeasures, which would result in the loss of significant intelligence information, relied upon by national policymakers and the IC. Moreover, § 3024-1(i)(1) makes no distinction between source and method information that is classified under Executive Order 13526 and source and method information that is unclassified; the statute plainly prescribes that the DNI "shall protect intelligence sources and methods from disclosure." Given that Congress specifically prohibited the disclosure of information pertaining to "intelligence sources and methods" used by the IC as a whole, I have determined that the FBI's intelligence sources and methods would be revealed if any of the withheld information is disclosed to plaintiffs, and thus, the FBI is prohibited from disclosing the information under 50 U.S.C. § 3024-1(i)(1). Thus, this information was properly withheld pursuant to Exemption 3, based on 50 U.S.C. § 403-1(i)(1), and at times in conjunction with Exemption 1, and Exemption 7(E).

## EXEMPTION (b)(7) THRESHOLD

(28)     Exemption (b)(7) of the FOIA protects from mandatory disclosure records or information compiled for law enforcement purposes, but only to the extent that disclosure could reasonably be expected to cause one of the harms enumerated in the subpart of the exemption. See 5 U.S.C. § 552 (b)(7). In this case, the harm that could reasonably be expected to result from disclosure concerns the release of techniques and procedures which could reasonably be expected to risk circumvention of the law.

(29)     Before an agency can invoke any of the harms enumerated in Exemption (b)(7), it must first demonstrate that the records or information at issue were compiled for law

enforcement purposes.  Law enforcement agencies such as the FBI must demonstrate that the

records at issue are related to the enforcement of federal laws and that the enforcement activity is

within the law enforcement duty of that agency.  Pursuant to 28 USC §§ 533, 534, and Executive

Order 12,333 as implemented by the Attorney General's Guidelines for Domestic FBI

Operations (AGG-DOM) and 28 CFR§ 0.85, the FBI is the primary investigative agency of the

federal government with authority and responsibility to investigate all violations of federal law

not exclusively assigned to another agency, to conduct investigations and activities to protect the

United States and its people from terrorism and threats to national security, and further the

foreign intelligence objectives of the United States.  The records at issue in this case were

compiled and/or created in furtherance of FBI's law enforcement, national security, and

intelligence missions.  To accomplish these missions, inherent tasks and operational functions

are required, to include the identification of, development, and implementation of law

enforcement and intelligence gathering methods, techniques, and procedures.   Specifically, the

development of cell-site simulator technology as a method and technique has enabled the FBI  to

perform its core law enforcement and national security missions.  Accordingly, the information

readily meets the threshold requirement of Exemption (b)(7).  The remaining inquiry is whether

disclosure of certain information pertaining to FBI techniques and procedures could reasonably

be expected to risk circumvention of the law.

### EXEMPTION (b)(7)(E)
### INVESTIGATIVE TECHNIQUES AND PROCEDURES

(30)     5 U.S.C. § 552 (b)(7)(E) provides for the withholding of:

> records or information compiled for law enforcement purposes, but
> only to the extent that  the production of such law enforcement

> records or information . . . (E) would disclose techniques and
> procedures for law enforcement investigations or prosecutions, or
> would disclose guidelines for law enforcement investigations or
> prosecutions if such disclosure could reasonably be expected to
> risk circumvention of the law.

In order for this exemption to apply, the specifics and use of the technique or procedure at issue must not be well-known to the public.

### Investigative Techniques and Procedures

(31)     The FBI has asserted Exemption (b)(7)(E),[12] and at times in conjunction with b1,[13] b3,[14] and b4,[15] to withhold information which affords "categorical" protection for techniques and procedures used in law enforcement investigations or prosecutions.  It should be noted at this juncture that this exemption is cited to protect information both for National Security investigations where it is asserted in conjunction with Exemption b3 as well as for criminal investigations where it may be cited with other exemptions.  To describe this information in further detail on the public record would identify that very information which the FBI seeks to protect pursuant to this Exemption.  While the protection of Exemption 7(E) is generally limited to techniques and procedures that are not well known to the public, even

---

[12]  Exemption (b)(7)(E) alone is cited as a basis for withholding information on the following Bates pages of Exhibit N: FBICELL 1-4, 49-50, 52, 54, 55, 59, 61, 66, 70, 72-73, 94, 96-97, 108, 122, 125-126, 128-141, 143, 146-147, 150-161, 163, 165-167, 169, 171, 179, 180, 182-184, 188, 193-195, 199, 200-203, 206-211, 214-218, 220-226, 229-230, 232-233, 259-268, 290-292, 296-302, 334, 374, 376, 390, 393, 407, 446-447, 454, 457, 461-463, and 489-490.  In addition, Exemption (b)(7)(E), in conjunction with Exemption (b)(5), are cited as a basis for withholding information on the following Bates pages of Exhibit N: FBICELL-51, 53, 56-57, 60, 62, 67-69, 81, 95, and 104. Finally, Exemption (b)(7)(E), in conjunction with Exemptions (b)(4) and/or (b)(5), are cited as a basis for withholding information on the following Bates pages of Exhibit N: FBICELL 63-65, 82, 224 and 226.
[13]  See footnote 8 <u>Supra</u>. The information withheld was so intermingled that no non-exempt material was segregable for release.
[14]  See footnote 9 <u>Supra</u>. The information withheld was so intermingled that no non-exempt material was segregable for release.
[15]  See footnote 10 <u>Supra</u>. The information withheld was so intermingled that no non-exempt material was segregable for release.

commonly known procedures may be protected from disclosure if the disclosure of details about the commonly known procedure could reduce or nullify their effectiveness.

(32)   The revelation of these details could enable the targets of these techniques to avoid detection or develop countermeasures to circumvent the ability of the FBI to effectively use this important law enforcement technique, therefore allowing circumvention of the law.  The FBI properly withheld this information pursuant to Exemption (b)(7)(E), and at times in conjunction with b1, b3, and b4.

### Justification of Specific Redactions of Investigative Techniques and Procedures

(33)   Below are more specific justifications for the information withheld under Exemption (b)(7)(E), with as much information as the FBI can provide about the redacted material without potentially increasing the risk that these FBI techniques or procedures will be circumvented or potential lawbreakers will be encouraged to engage in illegal activities.

(34)  Cell-site simulator technology.  Exemption (b)(7)(E) has been asserted to protect detailed information related to the application of cell-site simulator technology as a law enforcement technique and its associated procedures.  The withheld information about this technology is multi-faceted and includes: (a) the development of this technology as a law enforcement tool; (b) the facts and circumstances relating to the employment or contemplated use of this technique; (c) procedural matters associated with the use of this technique; (d) technical specifications; (e) specific types of products that are utilized, or may be utilized in the future; (f) sensitive terms and definitions specific to the FBI relating to the application of these devices in collecting data in current and/or potential future investigations; and (g) information that would expose the scope, direction, level of cooperation, and expertise related to the cell-site

15

technology techniques and procedures.  While the existence of cell-site technology as a general

law enforcement technique is publically known, detailed information about its application and

use is not publically known.  The release of this detailed information, as identified above,

significantly risks circumvention of the law and would trigger immeasurable harm to law

enforcement and national security operations.  Internet bloggers are already outlining ways to try

to circumvent the governments cellular locating and identifying capabilities.  Releasing further

details pertaining to this technique would thwart law enforcement responsibilities. [16]  Simply put,

disclosure would provide a virtual playbook for criminal elements and terrorists on how to

identify, avoid, or evade detection efforts related to the use of this technology.  As a practical

matter, disclosure would enable potential targets to carefully plan their illicit activities and

execute them in a manner that avoids detection, thereby effectively neutralizing the FBI's ability

to use the technique.  Moreover, given the multi-faceted, technical nature of this information,

release of even small pieces of information enhances the risk of circumvention as portions of

information-- in mosaic fashion--could be combined with information generally known about the

technique to assemble a more detailed picture of how the technique is employed.  As such, the

FBI properly withheld this information pursuant to Exemption (b)(7)(E). [17]

      (35)   <u>Secure FBI E-mail Addresses, Faxes, Telephone Numbers and Building/Office</u>

---

[16]  In his Motion for Partial Summary Judgment and Supporting Memorandum filed September 4, 2013 (copy attached as Exhibit O), the plaintiff in <u>Rigmaiden v. FBI</u> op cit provides in paragraph E 1. support for this rationale. By identifying the technique that is being used or can be used, the FBI would provide the specific gateway to its circumvention.

[17]  Exemption (b)(7)(E) has been asserted to protect detailed information related to the application of cell-site simulator technology as a law enforcement technique and its associated procedures on the following Bates pages of Exhibit N: FBICELL 1-18, 21, 24-57, 59-72, 81-102, 104, 108-133, 135-141, 144-152, 155-157, 160-163, 165-169, 171-177, 180, 182-203, 206-211, 214-218, 220-234, 236-242, 244-245, 247-266, 268-296, 298-301, 303-305, 307-316, 318-334, 338-341, 346-373, 376, 378-397, 399-412, 414-487, 489-491, and 493-516.

Locations. Exemption (b)(7)(E) has been asserted to protect secure internal e-mail addresses, faxes, telephone numbers and building/office locations where the devices are developed and tested. Internal e-mail addresses, faxes, phone numbers, and sensitive building/office locations can clearly relate to the internal practices of the FBI in that they are utilized by FBI personnel during the performance of their jobs. Disclosure of this type of information could subject these individuals to hackers and unauthorized users, who could disrupt official business (including by impeding the ability of Special Agents to conduct and conclude law enforcement investigations in a timely manner) and compromise the effectiveness of the FBI's internal computer system by devising ways in which to access – and tamper with –the system without detection. Routine internal administrative information such as e-mail addresses, faxes, phone numbers, and building/office locations referenced above serve no public benefit, and there is no indication that there is a genuine public interest in the disclosure of this information. Armed with e-mail addresses, the subjects of an investigation could exploit the FBI's Technology system to gain unauthorized access to, view and manipulate data, or otherwise interfere with the intranet protocols and e-mail accounts, thereby avoiding detection and allowing circumvention of the law. Circumvention could take the form of hacking into the FBI systems using e-mail IP addresses, reading e-mails, learning the focus and direction of an investigation, altering behavior to evade detection, and mimicking of e-mail addresses to send false e-mails that could alter the direction and focus of an investigation. Accordingly, because these e-mail addresses, faxes, telephone numbers, and building/office locations are related to the FBI's internal practices and disclosure would impede the FBI's effectivness, the FBI has properly withheld this information

17

pursuant to Exemption (b)(7)(E).[18]

## CONCLUSION

(36)    The FBI conducted a reasonable and adequate search for records responsive to plaintiff's FOIA request.  The FBI has processed and released all segregable information from the documents responsive to plaintiff's request.  The remaining information has been properly withheld pursuant to FOIA Exemptions 1, 3, 4, 5, 6, 7(C), and 7(E), 5 U.S.C. §§ 552 (b)(1), (b)(3), (b)(4), (b)(5), (b)(6), (b)(7)(C), and (b)(7)(E).

(37)    Pursuant to an agreement as outlined in the August 29, 2013 Joint Status Report, the FBI has now provided the plaintiff with sufficient information to evaluate the FBI's withholdings under Exemption b3 and Exemption 7(E) for the 500 page sampling (**Exhibit N**) submitted by the plaintiff August 30, 2013.[19]  In addition, an additional contextual review of the 500 page sample was conducted focusing on certain identified aspects and/or terms relating to contracts with FBI contractor Harris, and certain cell-site simulator technology information and/or terms that are now in the public domain.  The review determined that further segregability was advisable and further release of information was made on identified sample pages.[20]

(38)    The FBI has carefully examined the responsive documents and has determined that the information withheld from plaintiff, if disclosed, could reasonably be expected to: reveal

---

[18]   Exemption (b)(7)(E) has been asserted to protect secure internal e-mail addresses, faxes, telephone numbers and building/office locations where the devices are developed and tested on the following Bates pages of Exhibit N: FBICELL 1-3, 10, 56, 69-70, 95-96, 102, 108, 122, 125-126, 128-130, 134, 136-141, 143-144, 150, 153, 155-158, 160, 165, 167, 169, 171, 179, 182, 192, 195, 198, 202, 206-207, 209-210, 214-216, 220, 223-232, 251, 259, 267, 271, 275, 279, 283, 287-288, 293-294, 296-302, 308-310, 312, 322-324, 334, 350-354, 356-361, 369-370, 372-374, 381-383, 393, 406-412, 424-425, 437, 446-447, 453-354, 456-457, 459-461, 484-485, 507-510, and 515.

[19]   Parties agreed that (b)(1), (b)(4), (b)(5), or (b)(7)(C) will not be addressed in this declaration.  The lack of justification of redactions based on the foregoing exemptions is not intended to be, nor should it be construed as, being a waiver of any such justification.  As the sampling attached as Exhibit N shows all these exemptions have also been asserted as a basis for withholding information.

[20]   See footnote seven Supra.

18

information protected by statute, cause serious damage to national security and reveal investigative techniques and procedures, which if disclosed could reasonably be expected to risk circumvention of the law.  Accordingly, all reasonably segregable, non-exempt information has been released to plaintiff.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct, and that Exhibits A through N attached hereto are true and correct copies.

Executed this _1st_ day of October, 2013.

DAVID M. HARDY
Section Chief
Record/Information Dissemination
Section
Records Management Division
Federal Bureau of Investigation
Winchester, Virginia