**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ELECTRONIC PRIVACY **)** INFORMATION CENTER ) ) Plaintiff, ) v. ) ) FEDERAL BUREAU OF ) INVESTIGATION ) ) Defendant. ) ) | No. 1:12-cv-00667 (CKK) |

## PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND COSTS

Plaintiff Electronic Privacy Information Center ("EPIC") moved the Court for an award of attorneys' fees and costs of $34,152.50 against Defendant Federal Bureau of Investigation ("FBI") in this Freedom of Information Act ("FOIA") action following the release of 4,377 pages of documents that resulted from this litigation concerning a matter of substantial public interest. Pl.'s Mot. Att'ys Fees at 7. The FBI filed a memorandum in opposition stating that the Court should either deny EPIC fees or provide at most $11,180. Def.'s Opp. at 28. EPIC now replies in support of its Motion for Attorneys' Fees and Costs. For the reasons stated below, EPIC's Motion should be granted. Furthermore, EPIC asks the Court to award EPIC an additional $3,469.50 in attorneys' fees incurred in the preparation of this Reply and all other filings subsequent to the filing of the FBI's Memorandum in Opposition. *See* Supplemental Case Billing Record, attached as Ex. 1; Supplemental Bill of Litigation Fees, attached as Ex. 9.

**ARGUMENT**

EPIC is both eligible for and entitled to recover attorneys' fees and costs in this case. Contrary to the government's assertions, the documents that EPIC received contributed to the fund of information that the public is using to make vital political choices, and the government had no reasonable legal basis for withholding those documents. EPIC kept clear, detailed, and contemporaneous billing records, and properly billed for reasonable time spent ensuring that the government complied with the scheduling order and its statutory obligations under the FOIA. Furthermore, EPIC is the "quintessential requestor of government information envisioned by the FOIA." *EPIC v. DHS*, ___ F. Supp. 2d ___, 2013 WL 5620891 (D.D.C. Oct. 15, 2013). EPIC is therefore entitled to fees on fees, including the supplemental fees outlined in Exhibit 1, which details the time spent on this Reply Memorandum. *See also* Sup. Aff. Julia Horwitz, attached as Ex. 6; Sup. Aff. Alan Butler, attached as Ex. 7; Sup. Aff. Marc Rotenberg, attached as Ex. 8; Supplemental Bill of Litigation Fees, attached as Ex. 9.

**I. The Four-Factor Test for Entitlement Weighs in EPIC's Favor**

Contrary to the FBI's assertion, the four-factor test employed by the D.C. Circuit to determine entitlement to recover fees clearly weighs in EPIC's favor. *See Davy v. CIA*, 456 F.3d 162, 163 (D.C. Cir. 2006). *See also Morley v. CIA*, 719 F.3d 689, 690 (D.C. Cir. 2013) (reaffirming the four-factor test outlined in *Davy*). The FBI argues in its opposition that two of the four factors do not favor EPIC: the "public benefit" derived from the case and the reasonableness of the agency's withholding of the requested documents. However, the FBI's objections are not in line with the law of this Circuit and have no basis in fact. The public clearly benefited from the release of these documents and the agency's withholding was unreasonable. The FBI also does not contest that the other two

factors – the "commercial benefit" to the plaintiff and the "nature of the plaintiff's interest" – clearly favor EPIC.

### A. The FBI's Argument Is Based on an Incorrectly Narrow Characterization of the Public Benefit Factor

Courts in the D.C. Circuit have made clear that the "public benefit" factor serves to ensure that dissemination of the information requested is in the public interest. *See Judicial Watch, Inc. v. DOJ*, 774 F. Supp. 2d 225, 230 (D.D.C. 2011). If the Defendant seeks to argue that the information obtained in the FOIA suit was already in the public domain, then the agency bears the burden of establishing that fact. *Id*. "Only material that has met a threshold level of public dissemination will not further 'public understanding' within the meaning of the [FOIA's] fee waiver provisions." *Id*. (citing *Campbell v. DOJ*, 164 F.3d 20, 36 (D.C. Cir. 1998). The FBI has made no such showing here, because the majority of the documents that EPIC obtained and disseminated were not publicly available prior to their release pursuant to this lawsuit.

As the FBI has noted, "The public-benefit prong 'speaks for an award of [attorney's fees] where the complainant's victory is likely to add to the fund of information that citizens may use in making vital political choices.'" *Cotton v. Heyman*, 63 F.3d 1115, 1120 (D.C. Cir. 1995).  However, the FBI goes on to mischaracterize the D.C. Circuit's analysis in *Cotton v. Heyman*. In *Cotton*, the lower court had ruled that the "public benefit" factor of the entitlement analysis was satisfied because the requester had received records from the Smithsonian Institute, thereby establishing the Smithsonian as an agency subject to the FOIA. The D.C. Circuit overturned this decision as a matter of law, writing that "[t]he court did not evaluate the value of the particular documents released, but focused solely on the precedential value of its holding." *Cotton v. Heyman*,

63 F.3d 1115, 1120 (D.C. Cir. 1995). Further, the documents at issue in Cotton were two records related to a former employee's discrimination lawsuit, which she did not publish or distribute to the public. Therefore, the FBI's reliance on *Cotton* in an attempt to undermine the public value of the documents EPIC obtained in this case is misplaced.

The FBI's also attempts to minimize the importance of the documents EPIC obtained by introducing additional media coverage of the use of cell site simulator technologies. *See* Def.'s Opp. Exs. 3-15. But the evidence of cell site simulator media coverage that the FBI presents actually supports EPIC's showing of a strong public benefit. Clearly there is widespread public attention to the use of the technology, and the documents EPIC obtained have made an important contribution to the fund of public knowledge on this issue. The documents EPIC received were discussed in three separate articles published by Slate, and an article in Business Insider, as well as a front-page article in USA Today. *See* John Kelly, *Cellphone Data Spying: It's Not Just the NSA*, USA Today (Dec. 8, 2013) (Def's Opp. Ex. 12); Ryan Gallagher, *FBI Files Reveal New Info on Clandestine Phone Surveillance Unit*, Slate (Oct. 8, 2013) (attached as Exhibit 2);[1] Ryan Gallagher, *FBI Files Unlock History Behind Clandestine Cellphone Tracking Tool*, Slate (Feb. 15, 2013) (attached as Exhibit 3);[2] Michael Kelley, *FBI Concerned About the Legality of Its Own Portable Surveillance Technology*, Bus. Insider (Jan. 11, 2013) (attached as Exhibit 4);[3] Ryan Gallagher, *FBI Documents Shine Light on*

---

[1] *Available at* http://www.slate.com/blogs/future_tense/2013/10/08/fbi_wireless_intercept_and_tracking_team_files_reveal_new_information_on.single.html?print.

[2] *Available at* http://www.slate.com/blogs/future_tense/2013/02/15/stingray_imsi_catcher_fbi_files_unlock_history_behind_cellphone_tracking.html.

[3] *Available at* http://www.businessinsider.com/fbi-stingray-technology-2013-1.

*Clandestine Cellphone Tracking Tool*, Slate (Jan. 10, 2013) (attached as Exhibit 5).[4] USA

Today has the highest circulation of any daily newspaper in the United States. *USA*

*Today Regains National Circulation Lead*, USA Today (Oct. 31, 2013).[5] The USA Today

article was released in conjunction with a series of video interviews, including an

interview with EPIC's Appellate Advocacy Counsel, Alan Butler, based on the

documents received in this case, which aired on local news stations across the country.

Nadia Pfaum & Russ Ptacek, *DC, Maryland and Virginia Cops Spying on Cell Phone*

*Data*, WUSA, Dec. 9, 2013 (Def's Opp. Ex. 14).

    The FBI also improperly dismisses the impact of EPIC's broad dissemination of

these documents to the public on its website and through its newsletter. The EPIC Alert, a

publication that has enjoyed a readership of thousands for twenty years, is not merely "a

single email blast on a wide-variety of topics to a general audience." EPIC has also

published all of the documents in this case on its StingRay webpage, available at

http://epic.org/foia/fbi/stingray/, and linked to them in stories on its home page. Sup. Aff.

Julia Horwitz, attached as Ex. 6 ¶ 11.  EPIC's webpages are requested 30,000 times a day

on average. *Id*. ¶ 10. EPIC's FOIA pages (including its StingRay page) make up roughly

12% of this traffic. *Id*. ¶ 12. As these statistics show, EPIC's website provides an

effective means to distribute information for the public benefit.

---

[4] *Available at*
http://www.slate.com/blogs/future_tense/2013/01/10/stingray_imsi_catcher_fbi_documents_shine_light_on
_controversial_cellphone.single.html?print.
[5] *Available at* http://www.usatoday.com/story/money/business/2013/10/31/aam-newspaper-
circulation/3323743/.

**B. The FBI Did Not Have a Reasonable Legal Basis for Withholding the Records**

The FBI's arguments under the fourth factor of the "entitlement" test are similarly unavailing. The fourth factor analyzes whether the agency had a "reasonable legal basis" for withholding records. The FBI does not contest that it violated the FOIA's statutory deadlines in this case. As a matter of law, not only did the FBI fail to produce the documents in a timely fashion, but it also failed to provide a timely determination. "The statute requires that, within the relevant time period, an agency must determine whether to comply with a request . . . . It is not enough that, within the relevant time period, the agency simply decide to later decide. Therefore, within the relevant time period, the agency must at least inform the requester of the scope of the documents that the agency will produce, as well as the scope of the documents that the agency plans to withhold under any FOIA exemptions." *CREW v. FEC*, 711 F.3d 180, 186 (D.C. Cir. 2013).

Given the FBI's withholding of documents, "[t]o avoid an award of costs and fees under the final factor, 'the government need only show that its position had a colorable basis in law.'" *United Am. Fin., Inc., v. Potter*, 770 F. Supp. 2d 252, 257 (D.D.C. 2011) (*quoting Nat'l Sec. Archive v. DOD*, 530 F. Supp. 2d 198, 205 (D.D.C. 2008)). The FBI has failed cite any legal basis for its delay in this case. Instead, the FBI suggests that upgrades to its FOIA processing system and resource constraints provide a "reasonable basis" (as opposed to a "reasonable legal basis") for its delay in satisfying its statutory obligations. No case law supports such factors as a "reasonable basis" for withholding records. And this Court has already explicitly rejected the request for long-term delay in the FBI's motion for an *Open America* stay.

The cases that the FBI cites analyzing the "reasonable basis" factor do not provide support for the broad argument made by the agency. The courts in both cases had already found that factors one through three weighted against the plaintiffs. In *Simon v. United States*, the court found that, "while an agency's failure to meet deadlines is not to be condoned, it does not warrant an award of fees *in and of itself*." 587 F. Supp. 1029, 1032 (D.D.C. 1984) (emphasis added). In *Simon*, the court had analyzed factors one through three and found that none of them favored the plaintiff. In analyzing the fourth factor, the court did not find any basis (legal or otherwise) for the defendant's delay but stated that mere agency delay is not a strong enough factor by itself to warrant awarding fees. *See id.* Similarly, in *United America Financial, Inc. v. Potter*, the court found that factors one through three did not favor the plaintiff. Unlike in *Simon*, the court found that the fourth factor also weighed in favor of the defendant because the agency had a reasonable legal basis for delay based on its assertion of Exemption 7(C). 770 F. Supp. 2d at 258.

In the present case, the FBI does not contest that EPIC derives no commercial benefit from the documents produced or that the nature of EPIC's interest in the records favors an award of attorneys' fees. EPIC's work distributing the documents resulted in a consistently high level of interest among EPIC's 8,000 newsletter subscribers, its website visitors, and the millions of readers of USA Today and Slate. The government's attempt to undermine the significance of the media attention that EPIC's documents received is unavailing, and the "public benefit" factor clearly supports EPIC. The fourth factor also favors EPIC. But even if the fourth factor were neutral, EPIC would still be entitled to recover fees. Given that the FBI had no legal basis for withholding these records and that

factors one through three clearly weigh in favor of EPIC, the court should grant EPIC's motion for costs and fees in this matter.

## II. EPIC'S BILL OF $37,622 IN FEES AND COSTS IS REASONABLE

"The D.C. Circuit 'has been very explicit about what documentation is necessary to recover attorneys fees.'" *Weisberg v. Webster*, 749 F.2d 864, 872 (D.C. Cir. 1984). To obtain a fee award, the movant must provide "contemporaneous, complete, and standardized time records which accurately reflect the work done by each attorney." *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1327 (D.C. Cir. 1982). As EPIC has previously stated in its Motion for Attorneys Fees and Costs, EPIC kept accurate, complete, contemporaneous, and detailed records. Furthermore, the hours that EPIC billed were reasonable and supported by its records.

### A. The Hours Spent Preparing the Complaint Were Reasonable

In its Opposition, the FBI argues that EPIC billed more hours than reasonable in preparing the Complaint and Proposed Scheduling Order. Def.'s Opp. at 27-28. But the same argument was recently rejected by another court. In that case, the Department of Homeland Security contested the hours billed for "a 9-page boilerplate complaint for this simple, straightforward FOIA case." *EPIC v. DHS*, CV 11-2261 (JDB), 2013 WL 6047561 at *9 (D.D.C. Nov. 15, 2013). The court responded, "If FOIA's statutory requirements as applied to this case were so 'simple' and 'straightforward,' DHS might have been better served by complying with them – rather than by ignoring statutory deadlines and meeting their legal obligations only upon being served with a complaint in federal court." *Id*.

The instant case mirrors this situation exactly. EPIC filed a complaint with this Court because the FBI failed to comply with the law. EPIC is uniquely qualified to

interpret and explain technical data related to cell site simulators, but EPIC could not

access that information in a timely fashion without filing this lawsuit. In order to pursue

its mission fully, EPIC must litigate when the FBI fails to comply with the FOIA. *See id*.

The FBI now asks this Court to conduct the type of line-by-line review of EPIC's

billing records that previous courts have found inappropriate. The FBI acknowledges the

number of hours EPIC spent preparing legal documents in this matter, but then presents

an arbitrary number of hours that EPIC *should* have billed instead. However, the FBI

does not dispute the contemporaneousness, the detail, or the accuracy of EPIC's billing

records. These "broader concerns" are the issues that courts have addressed in past fee

disputes. *See e.g., CREW v. DOJ*, 825 F. Supp. 2d 226, 229 (D.D.C. 2011). Courts have

ruled on the sufficiency of billing records that include non-contemporaneous

timekeeping, billing by the hour rather than the tenth of an hour, and failure to itemize the

activities performed by individual attorneys. *Id.* However, courts have routinely declined

"to engage in the kind of 'nitpicking' invited by DOJ's smaller-scale objections." *Id*. at

229-230 (citing *Baker v. D.C. Public Schools*, 815 F. Supp. 2d 102, 109, 2011 WL

4507251 at *4 (D.D.C. 2011)); *Alfonso v. District of Columbia*, 464 F. Supp. 2d 1, 5-6

(D.D.C. 2011) (rejecting "defendants' invitation to 'conduct a minute evaluation of each

phase or category of counsel's work'"). The Court should not accept FBI's invitation to

engage in that kind of "nitpicking," which other courts have disfavored.

### B. EPIC Can Recover Fees For Reviewing FBI's Document Production

The FBI's argument that EPIC cannot bill for any time spent on litigation

following this Court's Order on the *Open America* Stay Request is incorrect as a matter

of law. Courts have held that review of FOIA documents is properly billable when it is

part of the litigation process. The FBI contends that EPIC can "only obtain fees insofar as

such fees relate to an agency's withholding of documents" Def.'s Opp. at 29. But the category of work "relating to an agency's withholding of document" must include the work done verifying the adequacy of the agency's document production. Without such review, the plaintiff would not be able to contest the sufficiency of a search, the assertion of exemptions, or the segregability of documents disclosed. The decision of whether to challenge such withholdings must be made by a FOIA attorney in the discharge of his or her professional obligations.  In this case, EPIC properly billed for a reasonable amount of time spent reviewing the documents to determine whether to pursue additional relief from the Court.

Judge Bates recently granted EPIC attorneys' fees for time spent reviewing documents in connection with litigation. As Judge Bates noted, "It would seem critical to the prosecution of a FOIA lawsuit for a plaintiff to review an agency's disclosure for sufficiency and proper withholding during the course of its FOIA litigation." *EPIC v. DHS*, ___ F. Supp. 2d ___, 2013 WL 6047561 at *9 (D.D.C. Nov. 15, 2013).  Similarly in this case, EPIC is seeking fees for time spent reviewing of documents to assess the sufficiency of the disclosures. The FBI "'has failed to produce any evidence that this time billed by Plaintiff's attorneys was not spent for the purpose of litigating this case.'" *Id.* (citing *Rosenfeld v. DOJ*, 904 F. Supp. 2d 988, 1005 (N.D. Cal. 2012)).

### C. The Laffey Matrix Cannot Reasonably Be Interpreted to Exclude Lawyers In Their First Year of Practice

The FBI argues in its Opposition that attorneys who have been practicing for less than a year are not accounted for in the Laffey Matrix. Def.'s Opp. at 30. The confusion arises from a row in the Laffey Matrix concerning experience designated "1-3 years." The Laffey Matrix is intended to provide a standard rate for legal services based on years

of experience. The straightforward interpretation of the "1-3 years" designation is that it includes attorneys who have recently passed the bar and have been practicing for a year or less. In further support of this interpretation is the designation of the adjoining row, "Paralegals and Law Clerks." As a person recently admitted to practice law would necessarily be excluded from this category, they should be included in the lowest fee recovery standard provided, which is "1-3 years." If the Department of Justice decides to change the Laffey Matrix and provide a different fee level for first year attorneys, then a different outcome would result. But until that time, first year attorneys are properly entitled to bill at $245 per hour under the Laffey Matrix.

### A. There Are No Anomalies in EPIC's Detailed, Contemporaneous Billing Records

In its Opposition, the FBI highlights three entries in EPIC's billing records that it believes are "anomalies": a conference billed by Alan Butler on August 27, 2013, the same conference billed by Julia Horwitz, and a conference billed by several EPIC attorneys on August 30, 2013. Def.'s Opp. at 25. These billing records were contemporaneously recorded by EPIC's attorneys, and accurately represent the time spent on this matter. *See* Pl.'s Mot. Att'ys Fees Exs. 1-14. The FBI's argument is based on a mistaken reading of EPIC's records. The "conference" billed on August 27, 2013 was internal, and does not conflict with the FBI attorney's records from that day. The conference billed on August 30, 2013 was not abnormal, since EPIC was obligated under the Joint Status Report and Court's Order to provide the FBI with a 500-page sample of documents for the *Vaughn* index on that day. *See* Joint Status Report, Aug. 29, 2013, ECF No. 23; Order, Aug. 29, 2013, ECF No. 24.

## **CONCLUSION**

EPIC is eligible for and entitled to recover its fees and costs from the FBI in this matter. EPIC's fees are reasonable and supported by the proper documentation. The Court should award EPIC a total of $37,622 in fees and costs, as documented in the Exhibits attached to EPIC's Motion for Fees and Exhibits attached to this motion.