*EPIC v. FBI*, No. 12-cv-667 (CKK)

# Exhibit 5

future tense

FUTURE TENSE   THE CITIZEN'S GUIDE TO THE FUTURE

JAN. 10 2013 2:14 PM

# FBI Documents Shine Light on Clandestine Cellphone Tracking Tool

By Ryan Gallagher



What's more dangerous: a real stingray or the FBI's Stingray tool?

Photo by TORSTEN BLACKWOOD/AFP/Getty Images

The FBI calls it a "sensitive investigative technique" that it wants to keep secret. But newly released documents that shed light on the bureau's use of a controversial cellphone tracking technology called the "Stingray" have prompted fresh questions over the legality of the spy tool.

Functioning as a so-called "cell-site simulator," the Stingray is a sophisticated portable surveillance device. The equipment is designed to send out a powerful signal that covertly dupes phones within a specific area into hopping onto a fake network. The feds say they use them to target specific groups or individuals and help track the movements of suspects in real

time, not to intercept communications. But by design Stingrays, sometimes called "IMSI catchers," collaterally gather data from innocent bystanders' phones and can interrupt phone users' service—which critics say violates a federal communications law.

The FBI has maintained that its legal footing here is firm. Now, though, internal documents obtained by the Electronic Privacy Information Center, a civil liberties group, reveal the bureau appears well aware its use of the snooping gear is in dubious territory. Two heavily redacted sets of files released last month show internal Justice Department guidance that relates to the use of the cell tracking equipment, with repeated references to a crucial section of the Communications Act which outlines how "interference" with communication signals is prohibited.

It's a small but significant detail. Why? Because it demonstrates that "there are clearly concerns, even within the agency, that the use of Stingray technology might be inconsistent with current regulations," says EPIC attorney Alan Butler. "I don't know how the DOJ justifies the use of Stingrays given the limitations of the Communications Act prohibition."

The FBI declined a request to comment on specific questions related to the legality of Stingrays, as it says the matter remains in litigation. Spokesman Christopher Allen told me by email that "in general the FBI cautions against drawing conclusions from redacted FOIA documents."

A potential legal conflict, however, is not all the documents draw attention to. They disclose that the feds have procedures in place for loaning electronic surveillance devices (like the Stingray) to state police. This suggests the technology may have been used in cases across the United States, in line with a stellar investigation by *LA Weekly* last year, which reported that state cops in California, Florida, Texas, and Arizona had obtained Stingrays. More still, the trove offers a rare hint at the circumstances in which Stingrays are deployed. "Violent Gang Safe Street Task Forces Legal Issues" is the title of one newly released set of FBI presentation slides related to tracking tactics.

It's likely that in the months ahead, a few more interesting nuggets of information will emerge. The FBI has told EPIC that it holds a mammoth 25,000 pages of documents that relate to Stingray tools, about 6,000 of which are classified. The Feds have been drip-releasing the documents month by month, and so far there have been four batches containing between 27 and 184 pages each. Though most of the contents—even paragraphs showing how the FBI is interpreting the law—have been heavy-handedly redacted, several eyebrow-raising details have made it through the cut. As I reported back in October, a previous release revealed the Feds have an internal manual called "GSM cellphone tracking for dummies."

The release of the documents was first prompted last year after EPIC launched a lawsuit under the Freedom of Information Act. The suit was triggered after it emerged during a court case in 2011 that the feds had used a cell-site simulator in order to track down a suspect, with one agent admitting in an affidavit that the tool collaterally swept up data on "innocent, non-target devices" (*U.S. v. Rigmaiden*). The government has previously argued that tools like the Stingray are permissible without a search warrant—outside the search and seizure protections offered by the Fourth Amendment—because they use them to gather location data, not the content of communications. The Justice Department says cellphone users have no reasonable expectation of privacy over their location data—a claim that has incensed privacy and civil liberties groups.

Slate is published by The Slate Group, a Graham Holdings Company. All contents © 2014 The Slate Group LLC. All rights reserved.