**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| ELECTRONIC PRIVACY INFORMATION CENTER<br>Plaintiff,<br>v.<br>FEDERAL BUREAU OF INVESTIGATION<br>Defendant. | Civil Action No.<br>12-cv-667 (CKK-AK) |
|---|---|

**REPORT AND RECOMMENDATION**

Following the resolution of the substantive issues of the case, Electronic Privacy Information Center ("EPIC" or "Plaintiff") filed its Motion for Attorneys' Fees and Costs ("Motion") [28] under the Freedom of Information Act ("FOIA" or "Statute"). The Federal Bureau of Investigation ("FBI" or "Defendant") filed its Opposition ("Opposition") [31], EPIC filed its Reply ("Reply) [32], and the trial judge referred Plaintiff's Motion for a Report and Recommendation pursuant to Local Rule of Civil Procedure 72.3(a) in an Order [34] and Referral [35].

**BACKGROUND**

In 2011, the Wall Street Journal reported on the FBI's purported use of a telephone tracking technology known as StingRay. Mot. Mem. at 2 [28-1]. EPIC states that this technology is used by investigators to simulate a cellular site and thereby track people who are carrying cell phones. *Id.* Following the Wall Street Journal story and other news reports, EPIC filed a FOIA request on February 10, 2012, seeking five categories of information regarding FBI's use of StingRay or similar technology. Specifically, EPIC's FOIA request sought the following FBI records:

a. All documents concerning technical specifications of the StingRay device or other cell-site simulator technologies; and
b. All documents concerning procedural requirements or guidelines for the use of StingRay device or other cell-site simulator technologies (e.g. configuration, data retention, data deletion); and

> c. All contracts and statements of work that relate to StingRay device or other cellsite simulator technologies; and
> d. All memoranda regarding the legal basis for the use of StingRay device or other cell-site simulator technologies.
> e. All Privacy Impact Assessments or Reports concerning the use or capabilities of StingRay device or other cell-site simulator technologies.

Compl. ¶ 20 [1]. Along with the information itself, EPIC sought a fee waiver on the basis that it is a representative of the news media. *Id.* ¶ 23.

The FBI acknowledged EPIC's FOIA and fee waiver requests in a letter of February 16, 2012. Mot. Mem. at 3. The FBI did not make a statutorily timely determination of EPIC's FOIA request. *See* Compl. ¶ 38; 5 U.S.C. § 552(a)(6)(E)(ii)(I) and 5 U.S.C. § 552(a)(6)(A)(ii). EPIC filed an administrative appeal with the Department of Justice on March 19, 2012. Opp. at 2.[1] Then, EPIC filed its Complaint on April 30, 2012.[2] The Complaint alleged that the FBI failed to comply with statutory deadlines, failed to make reasonable efforts to search for responsive records, unlawfully withheld agency records, and failed to designate EPIC as a representative of the news media for fee purposes. Mot. Mem. at 3; Compl. at 7-8.

The FBI granted EPIC's fee waiver request on June 4, 2012. Opp. at 9. Nevertheless, the parties disagreed on a production schedule, and the trial court found that "The FBI exceeded the statutorily prescribed time frames for responding to EPIC's request over three months ago, and now requests an additional two years and five months to complete its production of responsive documents." Order of July 1, 2012 at 2 [13]. The trial court ordered that the FBI file an *Open America* stay by July 30, 2012, or else the Court would adopt Plaintiff's proposed schedule. *Id.*[3] The FBI filed such a motion and, during the pendency of that motion, began making rolling productions. Opp. at 11.

---

[1] The Motion Memorandum states that the administrative appeal was filed on March 20, 2012, but this difference does not appear to be of any moment. Mot. Mem. at 3.

[2] As to exhaustion of administrative remedies, EPIC states

> Under the Freedom of Information Act, an agency has twenty working days to respond to a request and notify the requester as to its determination of whether to comply. 5 U.S.C. § 552(a)(6)(A)(i). When an agency fails to do so, the requester "shall be deemed to have exhausted his administrative remedies" and may commence an action in district court seeking the prompt production of requested records. 5 U.S.C. § 552(a)(6)(C)(i).

Pl. Mem. in Opp. to Def.'s Mot. for Open America Stay at 15 [15].

[3] Such a stay may be ordered if the Government can show exceptional circumstances and that the agency is exercising due diligence in responding to the FOIA request. *See* 5 U.S.C. 552(a)(6)(C)(i); *Open America v. Watergate Special Prosecution Force*, 547 F.2d 605 (D.C. Cir. 1976).

Ultimately, the trial court denied the FBI's Motion for an *Open America* stay, finding that "the FBI has not demonstrated exceptional circumstances exist so as to warrant the fourteen-month stay of proceedings requested by the FBI." Mem. Op. of March 28, 2013 at 1 [19]. The trial court's denial of the FBI's *Open America* stay was accompanied by a production schedule. *Id.* at 12.

The parties informed the Court they had resolved the substantive legal issues in the case, but that they could not come to an agreement about legal fees. *See* Joint Status Report of Nov. 1, 2013 ¶ 8 [25]; Joint Status Report of Nov. 12, 2013 ¶ 2-3 [27]. Then followed Plaintiff's Motion [28], Defendant's Opposition [31], Plaintiff's Reply [32], and the trial court's Order [34] and Referral for a Report and Recommendation [35].

## LEGAL STANDARD

FOIA states that a "court may assess against the United States reasonable fees and other litigation costs reasonably incurred in any case…in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i). To recover fees and costs, a plaintiff must meet two requirements: eligibility and entitlement. First, eligibility means that the plaintiff must prove that it substantially prevailed. There are two alternative approaches to proving prevailing party status, which are that plaintiff obtain relief through "a judicial order, or an enforceable written agreement or consent decree" or alternatively through "a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." 5 U.S.C. § 552(a)(4)(E)(ii). The denial or reduction of an *Open America* stay may constitute a judicial order for relief that justifies prevailing party status under FOIA. *See Piper v. U.S. Dep't of Justice*, 339 F. Supp. 2d 13, 19 (D.D.C. 2004).

Second, once a plaintiff proves eligibility, it must then prove entitlement. The test for entitlement considers four factors, which are, (1) the benefit to the public, if any, derived from the case; (2) the commercial benefit of the complainant; (3) the nature of the complainant's interest in the records sought; and (4) whether the government's withholding had a reasonable basis in law. *See Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 470 F.3d 363, 369 (D.C. Cir. 2006 (citing *Davy v. CIA*, 456 F.3d 162, 166-67 (D.C. Cir. 2006)). "The sifting of those criteria over the facts of a case is a matter of district court discretion." *Tax Analysts v. U.S. Dep't of Justice*, 965 F.2d 1092, 1094 (D.C. Cir. 1992) (citing *Church of Scientology v. Harris*, 653 F.2d

584, 590 (D.C. Cir. 1981)); *see also McKinley v. Fed. Hous. Fin. Agency*, 739 F.3d 707, 711 (D.C. Cir. 2014) (citing *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 524 (D.C. Cir. 2011)).

If a plaintiff is determined eligible and entitled to fees, the Court may also inquire into whether the fees requested are reasonable. *See* 5 U.S.C. § 552(a)(4)(E) ("The court may assess against the United States *reasonable* attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed.) (emphasis supplied). "'[T]he plaintiff who has proven both eligibility for and entitlement to fees must submit his fee bill to the court for its scrutiny of the reasonableness of (a) the number of hours expended and (b) the hourly fee claimed.'" *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 470 F.3d 363, 369 (D.C. Cir. 2006) (quoting *Long v. IRS*, 932 F.2d 1309, 1313-14 (9th Cir.1991)) (internal marks omitted).

## ANALYSIS

A. Eligibility

Plaintiff argues it is eligible for attorneys' fees and costs under FOIA. *See* Mot. Mem. at 5-8. Plaintiff makes several arguments in support of its claim that it substantially prevailed in the litigation. *Inter alia*, Plaintiff notes the trial court ordered Defendant "to produce all responsive, nonexempt records not subject to classification/declassification review on a rolling basis, but in any event by no later than August 1, 2013." Mem. Op. of March 28, 2013 at 1 [19]. This resulted in the release of thousands of pages of documents. Opp. at 13 [31].[4]

Defendant does not oppose this point in its Opposition. While reciting the legal standard on eligibility, the FBI makes no argument as to eligibility.

The undersigned recommends finding EPIC eligible and entitled to fees and costs under FOIA, though a reasonable sum would be somewhat less than EPIC requests, as detailed *supra*.

[4] "In total, the FBI reviewed and processed 22,982 pages of responsive material and released, in full or part, 4,377 pages. Of the 4,377 pages released, nearly sixteen percent (695 pages) were reviewed and released prior to the Court's Order on the FBI's request for an *Open America* stay, while eighty-four percent (3,682 pages) were reviewed and released after the Court's Order." *Id.* (internal citations omitted).

B. Entitlement

Plaintiff argues that all four factors in the test for entitlement weigh in its favor. Defendant disputes two of those factors, specifically whether the disclosed records benefited the public and whether the FBI had a reasonable basis in law for withholding documents.

(1) The benefit to the public, if any, derived from the case

"The first factor considers the significance of the contribution that the released information makes to the fund of public knowledge." *McKinley v. Fed. Hous. Fin. Agency*, 739 F.3d 707, 711 (D.C. Cir. 2014). The key question is whether the information EPIC obtained from the FBI "is likely to add to the fund of information that citizens may use in making vital political choices." *Cotton v. Heyman*, 63 F.3d 1115, 1120 (D.C. Cir. 1995).

EPIC argues that its FOIA suit provided substantial benefit to the public because EPIC disseminated information and contributed to the public dialogue through various mechanisms. Mot. Mem. at 9-10. EPIC maintains two privacy oriented websites, where it shares results of its FOIA requests; it disseminates agency records via a bi-weekly newsletter; it contributes to the public debate by providing underlying information that appears in prominent publications; and it contributes to academic conferences discussing relevant issues. *Id.* Not only does EPIC argue that it generally engages in such activities, but it provides a set of exhibits to indicate how this particular FOIA suit has resulted in a significant contribution to the fund of public knowledge. *Id.* Finally, EPIC bolsters its argument that the question of electronic surveillance, and the use of StingRay and related technologies, are matters of public importance, by citing examples of public coverage and dialogue on related subjects that predate the FOIA matter here. *Id.* at 10.

The FBI takes the opposite view of the facts, stating, "None of the arguments offered by EPIC demonstrate a public benefit." Opp. at 10. Defendant cites news articles and public debate predating the FOIA disclosures to show that "much of what Plaintiff claims to have disseminated was already in the public domain or did not arise from documents produced following the Court's Order." *Id.* The FBI argues that because Plaintiff acknowledges there is a long-running public debate over this topic, EPIC "must make a compelling showing that newly released documents substantially broadened or aided that debate." *Id.* Finally, as to EPIC's newsletter, the FBI argues that EPIC produced no evidence that EPIC actually "contained a substantive discussion of any of the documents released in this case following the Court's *Open America* Order." *Id.*

EPIC convincingly argues that electronic surveillance by the FBI is a matter of public importance. The FBI moves to co-opt that argument in order to show that public forums had already taken account of the information EPIC claims to have contributed by disseminating information from its FOIA requests. EPIC states, "The documents EPIC received were discussed in…a front-page article in USA Today." Reply at 4 [32]. That discussion appears to be that the article quotes an EPIC attorney and refers to the FOIA litigation: "'Any idea of having adequate oversight of the use of these devices is hampered by secrecy,' says Butler, who sued the FBI for records about its Stingray systems. Under court order, the FBI released thousands of pages, though most of the text is blacked out." John Kelly, *Cellphone Data Spying: It's Not Just the NSA* (Dec. 8, 2013), Opp. Ex. 12. While the USA Today story might be the highest profile reference to the FOIA disclosures, other media sources discuss the documents obtained by EPIC more specifically. For example, the Slate site called Future Tense published multiple posts or articles, e.g., one from October 8, 2013, entitled *FBI Files Reveal New Info on Clandestine Phone Surveillance Unit,* by Ryan Gallagher. Reply, Ex. 2 at 2 [32-4]. That article reads, in part,

> As part of an ongoing Freedom of Information Act suit launched by civil liberties group the Electronic Privacy Information Center, the FBI is turning over information on its use of cellphone surveillance technology variously known as "Stingrays," "Cell Site Simulators," "IMSI Catchers," or "Digital Analyzers." These devices function as portable surveillance transceivers that are designed to trick phones over a targeted area into hopping onto a fake network. The FBI says it uses the tools to track the locations of individual suspects. But the technology is controversial because, by design, it collects data on innocent bystanders' phones, and it also interferes with cellphone signals in a way that may be prohibited under a section of the federal Communications Act.
>
> Over the past year, the FBI has been drip-releasing redacted portions of a trove of documents that it holds related to the use of the Stingray technology. And late last week, the bureau turned over a batch of 500 pages featuring newly declassified portions that offer fresh insights into its spy tools, as well as shining a light on a little-known internal surveillance unit that has built up within the bureau over the past decade.
>
> The documents show that the FBI established a specialist cellphone surveillance group called the "Wireless Intercept and Tracking Team" as far back as 2003 or 2004. The Witt is apparently made up of surveillance technology experts who maintain the FBI's line of spy tools.
>
> …
>
> In addition, the newly released files reveal that it is not just the Stingray tool that the FBI has used to track down cellphones. In previous years, it has also

> deployed devices known as the "Loggerhead" and the "Triggerfish" – both made by Florida-based Harris Corp., the same company that manufactures the Stingray tool.
>
> …
>
> The disclosures build on documents previously turned over to EPIC by the FBI, which have shown how the bureau has been deploying Stingray-style technology for about two decades and is well aware that its use of the cellphone surveillance equipment is in a contentious legal area.

*Id.*

This article, among others cited by EPIC, indicates that the disclosures EPIC procured via its FOIA efforts contributed to the public debate, even if some of the facts it discovered were already in the public domain. Moreover, EPIC states that it makes the documents themselves available on its webpage. Reply at 5 [32]. Under the FBI's approach to FOIA attorneys' fees, when a plaintiff argues that its FOIA demands pertain to an issue that is already part of the public debate, that plaintiff "must make a *compelling* showing that newly released documents *substantially broadened* or aided that debate." *Id.* (emphasis added). Although some FOIA litigation seeks duplicative information that does not contribute to the public debate, the FBI's approach raises the bar exceedingly high. The public derived some benefit from these FOIA disclosures, and this factor weighs for EPIC.

(2) The commercial benefit of the complainant

EPIC treats factors two and three together because the two inquiries are interrelated. Mot. Mem. at 10-11 (citing *Tax Analysts v. U.S. Dep't of Justice*, 965 F.2d 1092, 1095 (D.C. Cir. 1992). The commercial benefit question is whether a complainant sought the information to advance private, self-interested, pecuniary, or commercial interests; if so, there will seldom be an award of attorneys' fees. *See Fenster v. Brown*, 617 F.2d 740, 743 (D.C. Cir. 1979). FOIA's fees provision supports efforts to identify and bring to light information for "public informational purposes." *Davy v. C.I.A.*, 550 F.3d 1155, 1160 (D.C. Cir. 2008). In this case, EPIC, a 501(c)(3) not-for-profit organization, did not seek the requested information out of commercial motives. Whether EPIC accomplished a public benefit by securing the FOIA disclosures is a separate question, but it is clear and uncontradicted by the FBI that EPIC did not file the FOIA request and the instant suit for commercial benefit. Therefore, this factor weighs for EPIC.

(3) The nature of the complainant's interest in the records sought

As indicated *infra* Section (B)(2), EPIC's interest in the records sought were public, not private. EPIC sought to inform the public about the operations of the FBI. Under the same analysis as the second factor, the third factor weighs for EPIC.

(4) Whether the government's withholding had a reasonable basis in law

The final factor "'considers whether the agency's opposition to disclosure had a reasonable basis in law' and 'whether the agency had not been recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior.'" *McKinley v. Fed. Hous. Fin. Agency*, 739 F.3d 707, 712 (D.C. Cir. 2014) (quoting *Davy*, 550 F.3d at 1162 (citation and internal quotation marks omitted)). In another recent case, Judge Bates noted,

> True, the Court held that DHS violated its statutory responsibilities in responding to EPIC's FOIA request—but that will be true in any FOIA case in which the plaintiff obtains court-ordered relief. DHS also produced a revised *Vaughn* index upon receiving plaintiff's objections, obviating the need for a judicial determination on that issue. DHS's conduct—while no doubt falling short of FOIA's requirements—was not egregiously unreasonable. Hence, the fourth factor is more or less neutral in this analysis.

*EPIC v. DHS*, No. 11-2261 (JDB), 2013 WL 6047561, at *4 (D.D.C. Nov. 15, 2013).

In this case, the FBI failed to comply with the statutory deadlines, and sought further extensions of time by way of an *Open America* stay. But the FBI has not been "recalcitrant or obdurate," *McKinley*, 739 F.3d at 713, and this fourth factor weighs neither for Plaintiff nor for Defendant.

In sum, the first three factors weigh for EPIC and the final factor is neutral. Therefore the undersigned recommends finding that EPIC is entitled to FOIA attorneys' fees and costs.

C. <u>Reasonableness</u>

Having found EPIC eligible and entitled to fees, the inquiry turns to "(a) the number of hours expended and (b) the hourly fee claimed.'" *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 470 F.3d 363, 369 (D.C. Cir. 2006) (quoting *Long v. IRS,* 932 F.2d 1309, 1313-14 (9th Cir.1991)) (internal marks omitted). EPIC provides records of the fees and costs it requests.

*See* Mot. Mem. at 12-14 and exhibits referenced therein. EPIC seeks a total of $34,152.50 in fees, of which $350 is costs, not hourly fees. *Id.* at 12.[5]

The only costs EPIC seeks are reasonable – the $350 filing fee noted in the Docket entry accompanying the Complaint [1]. The undersigned recommends **no reduction in the $350 litigation costs sought by Plaintiff**.

The FBI contests six aspects of EPIC's requested fees as unreasonable. *See* Opp. at 18-26. The FBI also requests that the Court divide any award into fees incurred until and after November 13, 2013, the date it served an offer of judgment on Plaintiff.

(1) First, the FBI objects that the hours EPIC spent preparing the Complaint are unreasonable. Opp. at 19-20. The FBI does not claim EPIC is misreporting the number of hours spent, but rather that the EPIC spent an unreasonably long amount of time on "a simple complaint describing the FOIA requests, listing EPIC's correspondence with the FBI regarding the requests, and asserting boilerplate claims regarding the FBI's untimely response." *Id.* at 19. Three lawyers billed hours for the Complaint. Mot. Mem. Ex. 8 at 1-2 [28-9]. The FBI points to EPIC's "status as a sophisticated, repeat FOIA litigant," and to "EPIC's breadth of experience in filing FOIA actions, including many against the FBI," to support its contention that it is unreasonable for EPIC to spend 18.4 hours preparing the Complaint. *Id.* at 19-20.

EPIC responds that the amount of time spent is reasonable, and that the FBI would be better served by timely responding to FOIA requests than contesting the number of hours spent in drafting a complaint. While it is fair to put the onus on the FBI to provide timely responses, the FBI's delay does not justify needless billing. The undersigned is inclined to agree with the FBI, because 18.4 hours spread across three people is an excessive amount of time to draft this Complaint. The FBI proposes, "At most, EPIC should be entitled to 8 hours – six at Mr. Butler's rate and two at Mr. Rotenburg's – for drafting what should have been a simple and straightforward FOIA complaint of the sort EPIC has filed many times before." Opp. at 27 [31]. The undersigned recommends adopting that request, and thereby reducing EPIC's fees by 3.4 hours of Butler's rate (3.4 x $240), 1.5 hours of Mr. Rotenberg's rate (1.5 x $495), and 5.5 hours of Ms. McCall's rate (5.5 x $240), for a **reduction of $2,878.50 in preparing the Complaint**.

[5] EPIC also seeks to recover fees-on-fees. *See* Mot. Mem. at 14; Reply at 1. The undersigned recommends resolving the question of attorneys' fees in the first instance, and only then considering the question of fees-on-fees. Therefore the hours billed for fees-on-fees would be reduced. *See supra* Section (C)(6).

(2) Second, the FBI contends the hours spent preparing a proposed scheduling order are unreasonable and should be reduced. Opp. at 27. EPIC does not address this argument in its Reply [31]. A review of the Joint Proposed Schedule [12] confirms that most of the document is copied from previous filings, and that the original paragraph is a straightforward recitation of previous proposals and rulings in FOIA scheduling matters. EPIC bills 11.1 hours among three attorneys for this, and the undersigned recommends reducing this amount to what the FBI recommends – three hours at Mr. Butler's rate. *See* Opp. at 28. This constitutes reducing the total billed $3,494.50 to three hours at Mr. Butler's rate, which is $240. Therefore the undersigned recommends a **reduction of $2,774.50 in preparing the Joint Proposed Schedule**.

(3) Third, the FBI argues "EPIC is not entitled to reimbursement for its work performed reviewing documents received pursuant to the FOIA request and for work following the FBI's production of documents in accordance with the Court's *Open America* Order." Opp. at 28. On this score, the FBI argues the government's waiver of sovereign immunity should be read narrowly, because waiver must be unequivocally expressed by statute, and because "FOIA only provides courts with jurisdiction to 'enjoin [an] agency from withholding agency records and to order the production of any agency records improperly withheld,' 5 U.S.C. § 552(a)(4)(B)." *Id.* Consequently, the FBI argues, "a party may only obtain fees insofar as such fees relate to an agency's withholding of documents" *Id.* (citing *Uhuru v. U.S. Parole Comm'n*, 734 F. Supp. 2d 8, 13). In *Uhuru*, the court denied attorneys' fees because, *inter alia*, the fees would have amounted to a sanction for delay, and "plaintiff is not entitled to costs as a remedy for the USPC's untimeliness." *Uhuru*, 734 F. Supp. 2d at 13.

The case for EPIC here is that it seeks fees not as a sanction, but for work performed to determine whether, in EPIC's view, the FBI had complied with the Statute and the court's order. How should EPIC know whether to file further motions or to settle the case without reviewing the documents? This was essentially the approach adopted in *EPIC v. DHS*, No. 11-2261 (JDB), 2013 WL 6047561, at *9 (D.D.C. Nov. 15, 2013). In that case, Judge Bates found that even though fees are not awardable for hours spent *using* the documents, hours are reimbursable for hours spent *evaluating* the documents to determine whether they constituted an adequate FOIA response.

> EPIC is only seeking fees for review of documents produced during this litigation, and DHS "has failed to provide any evidence that this time billed by Plaintiff's attorneys was not spent for the purpose of litigating this case." *Rosenfeld v. DOJ*,

> 904 F.Supp.2d 988, 1005 (N.D.Cal.2012). Accordingly, the Court finds that EPIC is entitled to fees generated during this work.

*Id.* at *9.

However, as to the hours EPIC spent reviewing the documents, the undersigned finds more persuasive the logic of *CREW v. DOJ,* 825 F. Supp. 2d 226 (D.D.C. 2011). In *CREW*, the Department of Justice argued that the complainant (CREW) should not recover fees for reviewing documents produced in response to its FOIA request. DOJ raised the same arguments that the FBI raises here, namely that (a) document review following the scheduling order is not related to an issue on which Plaintiff prevailed, and (b) awarding fees for reviewing produced documents would constitute an impermissibly broad reading of the limited waiver of sovereign immunity in FOIA's fee provision. *See CREW v. DOJ,* 825 F. Supp. 2d 226, 231 (D.D.C. 2011). Judge Boasberg adopted this view, finding that "CREW received the relief it sought when the documents were produced, and the time Plaintiff expended reviewing the documents was a post-relief activity, separate from the litigation." *Id.* (internal marks omitted). In that case and in the instant case, the Plaintiffs would have had to review the documents regardless of the litigation. As the District Court put it in *CREW*, "the cost of reviewing documents produced in response to a FOIA request is simply the price of making such a request." *Id.*

The undersigned would draw a distinction between hours spent evaluating the documents as opposed to hours spent engaging in various legal work pursuant to the litigation. For example, the attorneys conducted research, held internal discussions about the productions, held discussions with opposing counsel about the productions, drafted filings for the Court, and worked internally and with opposing counsel on settlement. Pl. Mot. Ex. 8 [28-9]. The undersigned would allow recovery for these fees, because they are closely tied to the litigation. Unlike reviewing the documents, the other legal work is more intertwined with the litigation posture of the case, rather than a question of evaluating the adequacy of the production.

The recommendation of the undersigned is that EPIC should not recover for the document review, but should recover for the other legal work following the *Open America* Order. Working from Exhibit 8 of Plaintiff's Motion [28-9], the Court calculates that EPIC billed

$3,763 for document review, **therefore the undersigned recommends a reduction of $3,763 for post-release document review.**[6]

(4) Fourth, the FBI seeks reductions in the fees awarded to new lawyers employed by EPIC. The FBI observes that the Laffey Matrix[7] includes no line for attorneys with under one year of experience, and argues that a lawyer who is newly admitted to the bar "would not qualify for the Laffey matrix rate for attorneys with 1-3 years of experience until he had reached the one-year anniversary of his bar admission on December 12, 2012. Opp. at 31. In the view of the undersigned, this argument conflates two issues.

The first issue is that the Laffey Matrix skips from the line for paralegals and law clerks straight to the line for attorneys with between one and three years of experience. It is not reasonable to think that the drafters of the Laffey Matrix meant to exclude lawyers with under one year of experience. It is more reasonable to think the Matrix itself is sloppily drafted, and the line that says "1-3 years" is attempting to capture attorneys with under three year of experience. This is but an assumption, though an assumption buttressed by viewing the Matrix as a whole. The line above "1-3" years of experience is "4-7 years." It is reasonable to infer that the entire first year of being a lawyer is encompassed in the "1," and the entire third year of being a lawyer is captured in the "4." Therefore, the undersigned recommends no reduction on the theory that attorneys practicing for under one year are compensable only as paralegals or law clerks under the Laffey Matrix.

The second issue is that law school graduates who have not been admitted to a state bar should not be allowed to bill hours at the attorney rate. Two of the attorneys who billed hours in this case, Butler and Horwitz, were relatively recent law school graduates. Mr. Butler is a 2011 law school graduate, admitted to the bar on December 15, 2011. Butler Decl., Pl.'s Mot. Ex. 3 ¶¶ 3, 7 [28-4]. Mr. Butler did not bill any hours in this case prior to his bar admission and indeed the first billing entry by any attorney in this case was months after Mr. Butler was admitted to

[6] For the benefit of the trial court, the undersigned notes that the hours billed for post-release work *other than* fees-for-fees and document review total $7,827. The undersigned does not recommend reducing the fee recovery in this category.

[7] *Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354 371–72. (D.D.C. 1983), rev'd on other grounds, 746 F.2d 4 (D.C. Cir. 1984). The *Laffey Matrix* is updated by the U.S. Attorney's Office for the District of Columbia, and is available at http://www.justice.gov/usao/dc/divisions/civil.html. Though Defendant contends Plaintiff should not be compensated for legal fees whatsoever, Defendant does not appear to contest that, if the Court orders that fees be awarded, Laffey provides the appropriate hourly rates. *See CREW v. DOJ*, 825 F. Supp. 2d 226, 231 (D.D.C. 2011).

the bar. Mot. Ex. 8 [28-9], Ex. 9 [28-10], Ex. 10 [28-11], Ex. 11 [28-12], and Ex. 12 [28-13]. Therefore, the undersigned will not recommend any reductions on this score.[8]

Ms. Horwitz is a 2011 law school graduate, Horwitz Decl., Pl. Mot. Ex. 4 ¶ 4 [28-5], admitted to the bar on December 12, 2011, Md. State Bar Ass'n Member Directory, Opp. Ex. 17 [31-17]. The Court notes that Defendant itself provided the date of bar admission, and Ms. Horwitz's Affidavit does not include this information. Even taking the FBI's account of Ms. Horwitz's bar admission date as true, the 2012 bar admission still predates any of Ms. Horwitz's billing in this case. Her earliest hours were billed in August 2013. Mot. Ex. 8 at 12 [28-9]. Therefore, because Ms. Horwitz did not bill any hours in this case prior to the date the FBI says she was admitted to the bar, the undersigned will not recommend any reductions on this basis.

In sum, the undersigned recommends **no reduction based on the FBI's Laffey Matrix analysis**.

(5) Fifth, the FBI cites to billing anomalies with respect to a Joint Status Report on August 29, 2013, and calls related to that Report, and the FBI seeks reductions accordingly. Opp. at 31. The problems the FBI points out are that EPIC appears to have billed for two telephone calls with opposing counsel when there was only one such call on the relevant date; EPIC appears to have billed for attorneys who were not announced on the call; and that EPIC held a call about the Joint Status Report *after* the Report was filed. *Id.* EPIC provides innocent explanations for each complaint. Of the two telephone calls that were billed, one was with opposing counsel and one was internal, which explains the first two complaints; and the discussion of the Joint Status Report after its filing had to do with followup work regarding a Vaughn index to be filed pursuant to the Joint Status Report. Reply at 11. These are understandable and innocent confusions in the billing records, and **the undersigned does not recommend a reduction on this basis**.

(6) Finally, the FBI argues that EPIC's recovery of fees-on-fees, if any, should be adjusted downward to the extent its fees petition is unsuccessful. The undersigned recommends deferring on a decision with respect to fees-on-fees until the trial court's final determination of

[8] The FBI's theory – that an attorney can only bill as an attorney once he or she has been in practice a full year – was rejected in the preceding paragraph.

fees, and an accounting of the hours spent in litigating fees. Therefore the undersigned recommends no fees-on-fees be awarded at this time, and **therefore recommends a reduction of $3,587.50, the amount EPIC billed for fees-on-fees in the current submission**.

D. Recommendation

For the foregoing reasons, the undersigned recommends finding EPIC is eligible for and entitled to attorneys' fees and costs under FOIA, but reducing EPIC's fees by the amounts noted in the following list. The FBI requests that the Court divide any award into fees incurred until and after November 13, 2013, the date it served an offer of judgment on Plaintiff. The undersigned therefore notes that none of the recommended reductions pertain to hours accrued before or after November 13, 2013.

- no reduction in the $350 litigation costs sought by Plaintiff
- reduction of $2,878.50 in preparing the Complaint;
- reduction of $2,774.50 in preparing the Joint Proposed Schedule;
- reduction of $3,763 for work reviewing documents received pursuant to the FOIA request;
- no reduction for other work (i.e., work other than document review) following the FBI's production of documents in accordance with the Court's *Open America* Order;
- no reduction based on the FBI's Laffey Matrix analysis; and
- no reduction on the basis of billing anomalies

Furthermore, the undersigned recommends:

- reduction of $3,587.50, because the request for fees-on-fees is premature

Working from Plaintiff's requested sum of $34,152.50, and reducing this figure by the amounts listed in the bulleted list above, the undersigned recommends awarding attorneys' fees and costs in the total amount of $20,799.

E. Objections

Pursuant to Local Rule 72.3(b), the Court notes that failure to file timely objections to the findings and recommendations set forth in this report may waive your right of appeal from an order of the District Court adopting such findings and recommendations. See Thomas v. Arn, 474 U.S. 140 (1985).

DATE: September 19, 2014

/s/

ALAN KAY
UNITED STATES MAGISTRATE JUDGE