# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER,<br><br>      Plaintiff,<br><br>           v.<br><br>FEDERAL BUREAU OF INVESTIGATION,<br><br>      Defendant. | **Civil Action No. 12-667 (CKK)** |

## MEMORANDUN OPINION
(February 20, 2015)

Plaintiff, Electronic Privacy Information Center ("EPIC"), filed a Motion for Attorney's Fees which the Court referred to Magistrate Judge Alan Kay. *See* Order (Feb. 4, 2014), ECF No. [34]. Magistrate Judge Kay submitted a Report and Recommendation to the Court, recommending that Defendant, the Federal Bureau of Investigation ("FBI"), pay $20,799 in attorney's fees and $350 in costs to EPIC.[1]  Report & Recomm. ("R&R"), ECF No. [38]. Presently before the Court are the parties' Objections to the Report and Recommendation. Upon consideration of the pleadings,[2] the relevant legal authorities, and the record as a whole, the

---

[1] The Report and Recommendation actually recommends "awarding attorney's fees *and costs* in the *total amount* of $20,799." R&R at 14 (emphasis added). However, after independently calculating the attorney's fees and costs award based on the reductions recommended by Magistrate Judge Kay, the Court believes the Magistrate Judge Kay mistakenly subtracted the $350 costs award from the amount cited as the *total* fees and *costs* award in the Report and Recommendation.

[2] While the Court's decision is based on the record as a whole, the Court's analysis focuses on the following documents: Pl.'s Mot. Atty. Fees ("Pl.'s Mot."), ECF No. [28]; Def.'s Opp'n to Pl.'s Mot. Atty. Fees ("Def.'s Opp'n"), EFC No. [31]; Pl.'s Reply to Mot. Atty. Fees ("Pl.'s Reply"), ECF No. [32]; Report & Recomm. ("R&R"), ECF No. [42]; Pl.'s Objs. to R&R

Court finds that, although the majority of Magistrate Judge Kay's recommendations are based on sound reasoning and shall be adopted, EPIC's objections to certain of Magistrate Judge Kay's reductions in the attorney's fees award have merit. Accordingly, Magistrate Judge Kay's Report and Recommendation is ADOPTED as modified in this Memorandum Opinion. Additionally, the Court has determined that the FBI shall pay EPIC $9,175.50 for attorney's fees expended by EPIC in preparing its initial motion for attorney's fees and its Objections to the Report and Recommendation. In total, the Court shall award EPIC $29,635 in attorney's fees and costs.

## I. BACKGROUND

According to its Complaint, EPIC is a "public interest research organization incorporated as a not-for profit corporation in Washington, D.C. EPIC[] conducts oversight of Government activities and policies and analyzes their impact on civil liberties and privacy interests." Compl., ¶ 4. On February 10, 2012, EPIC submitted a FOIA request to the FBI requesting agency records regarding cell-site simulator or "StingRay" technology, which EPIC asserts is used by the FBI and other federal agencies to track and locate cellular telephones and other wireless devices. *See id.* ¶¶ 6, 19. The request specifically sought:

   i.  "All documents concerning technical specifications of the StingRay device or other cell-site simulator technologies";

  ii.  "All documents concerning procedural requirements or guidelines for the use of StingRay device or other cell-site simulator technologies (e.g. configuration, data retention, data deletion)";

 iii.  "All contracts and statements of work that relate to StingRay device or other cellsite simulator technologies";

---

("Pl.'s Objs."), ECF No. [41]; Def.'s Objs. to R&R ("Def.'s Objs."), ECF No. [42]; Pl.'s Resp. to Def.'s Objs. ("Pl.'s Resp."), ECF No. [43]; Def.'s Resp. to Pl.'s Objs. ("Def.'s Resp."), ECF No. [44]; Def.'s Reply to Pl.'s Resp. ("Def.'s Reply"), ECF No. [45]; Pl.'s Reply to Def.'s Resp. ("Pl.'s Reply"), ECF No. [46].

iv.   "All memoranda regarding the legal basis for the use of StingRay device or other cell-site simulator technologies"; and

v.    "All Privacy Impact Assessments or Reports concerning the use or capabilities of StingRay device or other cell-site simulator technologies."

*Id.* ¶ 20.   EPIC asked the FBI to expedite its response to the request, grant EPIC "News Media" fee status, and waive all duplication fees.  *Id.* ¶¶ 21-23.

The FBI acknowledged receipt of EPIC's request on February 16, 2012.  *Id.* ¶ 25.   On March 20, 2012, having received no further correspondence from the FBI regarding its request, EPIC filed an administrative appeal with the Office of Information Policy, part of the Department of Justice.  *Id*. ¶¶ 30-31.   According to EPIC, the Department of Justice failed to respond to EPIC's appeal within the twenty-day deadline set by the FOIA.  *Id.* ¶ 35.   EPIC filed suit in this Court on April 26, 2012, alleging that the FBI failed to comply with statutory deadlines, failed to make reasonable efforts to search for responsive records, unlawfully withheld agency records, and failed to designate EPIC as a representative of the news media for fee purposes.  *Id*. ¶¶ 37-54.

On June 4, 2012, the FBI granted EPIC a fee waiver, but denied expedited processing of EPIC's request for agency records.  Def.'s Opp'n at 2.   The parties disagreed on a production schedule.   In a July 1, 2012, Scheduling Order, the Court found that "[t]he FBI exceeded the statutorily prescribed time frames for responding to EPIC's request over three months ago, and now requests an additional two years and five months to complete its production of responsive documents."  Order (July 1, 2012), ECF No. [13], at 2.   Accordingly, the Court ordered the FBI to file an *Open America* stay by July 30, 2012, or else the Court would adopt Plaintiff's proposed schedule.  *Id.*  The FBI filed a Motion for an *Open America* Stay and, during the pendency of that Motion, began making rolling productions.  Def.'s Opp'n at 4.   On March 28, 2013, the

Court denied the FBI's Motion for an *Open America* Stay finding that the FBI had "not demonstrated exceptional circumstances exist so as to warrant the fourteen-month stay of proceedings requested by the FBI."  Mem. Op. (Mar. 28, 2013), ECF No. [19], at 1.  The Court ordered the FBI to produce all responsive, non-exempt documents by no later than August 1, 2013.  *Id.* at 12.

The parties filed a Joint Status Report on August 29, 2013, and proposed a schedule for the production of a *Vaughn* index by the FBI to accompany a 500-page sample of released documents selected by EPIC.  *See* Joint Status Report (Aug. 29, 2013), ECF No. [23], ¶ 10.  EPIC requested the *Vaughn* index to assist it in evaluating the FBI's withholdings under Exemption 3 and Exemption 7(E) and in determining how to proceed in this matter.  *Id.*  Pursuant to its preparation of the *Vaughn* index, the FBI "voluntarily agreed to review the 500 pages to determine if there were additional terms that could be released."  Joint Status Report (Nov. 1, 2013), ECF No. [25], ¶ 6.  On October 1, 2013, the FBI produced the sample *Vaughn* index as well as the reprocessed sample pages which included terms that had originally been redacted.  *Id.* ¶ 7.

On November 1, 2013, the parties filed a Joint Status Report indicating that the FBI had produced documents on a rolling basis through July 30, 2013, and had completed its production and that EPIC was willing to resolve the remaining legal issues in this case—attorney's fees and costs—through settlement.  *Id.* ¶¶ 5, 8.  The parties, however, were unable to come to an agreement about attorney's fees and costs.  *See* Joint Status Report (Nov. 12, 2013), ECF No. [27], ¶¶ 2-3.  Accordingly, EPIC filed a Motion for Attorney's Fees on December 19, 2013, requesting a total of $33,802.00 in attorney's fees and $350 in costs.  Pl.'s Mot. at 12.  The FBI subsequently filed an Opposition and EPIC filed a Reply.

The Court referred EPIC's Motion to Magistrate Judge Kay for a Report and Recommendation.  Magistrate Judge Kay issued his Report and Recommendation on September 19, 2014, recommending that the Court award EPIC $20,799 in attorney's fees and $350 in costs. R&R at 14.  Magistrate Judge Kay awarded attorney's fees and costs in an amount lower than that requested by EPIC on the basis that EPIC billed an excessive amount of time for drafting the Complaint and preparing the Joint Proposed Schedule.  *Id.* at 9-10.  Magistrate Judge Kay also reduced the amount of attorney's fees after finding that EPIC should not recover for time spent reviewing documents received following the Court's *Open America* Order.  *Id.* at 10-12. Magistrate Judge Kay abstained from evaluating EPIC's request for fees-on-fees until the issue of attorney's fees for litigating the merits was decided by the Court.  *Id.* at 13-14.  Accordingly, Magistrate Judge Kay further reduced the requested amount of attorney's fees by the amount that he determined was associated with the fees-on-fees request.  *Id.*  Magistrate Judge Kay rejected all other bases on which the FBI argued that the requested amount of attorney's fees and costs was unreasonable.  *Id.* at 14.

Both parties filed objections to Magistrate Judge Kay's Report and Recommendation. The FBI claims that EPIC is not entitled to attorney's fees for the reasons previously argued in the FBI's opposition to EPIC's Motion for Attorney's Fees.  The FBI also claims that Magistrate Judge Kay misattributed the amount of attorney's fees associated with EPIC's fees-on-fees request as opposed to EPIC's fees request for litigating the underlying FOIA action.  The FBI also contends that EPIC's total fees-on-fees request is excessive and should be reduced.

EPIC objects to Magistrate Judge Kay's reduction of attorney's fees for the time EPIC spent preparing the Complaint and reviewing documents in this case.  EPIC also objects to Magistrate Judge Kay's decision to abstain from resolving the fees-on-fees request.

## II. LEGAL STANDARD

Under Local Civil Rule 72.3(b), "[a]ny party may file for consideration by the district judge written objections to the magistrate judge's proposed findings and recommendations issued under [Local Civil Rule 72.3(a)] within 14 days[.]" Local Civ. R. 72.3(b). Local Civil Rule 72.3(b) further provides that "[t]he objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for the objection." *Id.* Pursuant to Local Civil Rule 72.3(c), "a district judge shall make a de novo determination of those portions of a magistrate judge's findings and recommendations to which objection is made . . . ." *See also Means v. District of Columbia*, 999 F.Supp.2d 128, 132 (D.D.C. 2013) ("District courts must apply a *de novo* standard of review when considering objections to, or adoption of, a magistrate judge's Report and Recommendation."). The district judge "may accept, reject, or modify, in whole or in part, the findings and recommendations of the magistrate judge, or may recommit the matter to the magistrate judge with instructions." Local Civ. R. 72.3(c).

## III. DISCUSSION

### A. EPIC'S Eligibility and Entitlement to Attorney's Fees

Pursuant to 5 U.S.C. § 552(a)(4)(E)(i), the court may award reasonable attorney fees and other litigation costs reasonably incurred by a plaintiff who substantially prevails in an action against the government for the fulfillment of a FOIA request. In this Circuit, the attorney-fee inquiry is divided into two prongs, the fee "eligibility" and the fee "entitlement" prongs. *Brayton v. Office of the United States Trade Representative*, 641 F.3d 521, 524 (D.C. Cir. 2011). Under the eligibility prong, the Court must determine whether a plaintiff has substantially prevailed and, as a result, *may* receive attorney fees. *Id.* A plaintiff has substantially prevailed if he or she has obtained relief either

through a judicial order, enforceable written agreement, consent decree or, alternatively, through a voluntary or unilateral change in position by the agency, if the plaintiff's claim is not insubstantial.  5 U.S.C. § 552(a)(4)(E)(ii)(I)-(II).

If the eligibility prong is satisfied, the Court next considers the entitlement prong to determine whether a plaintiff *should* receive fees.  *Brayton*, 641 F.3d at 524.  Under the entitlement prong, the Court must weigh four factors: "(1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of the agency's withholding."  *Judicial Watch, Inc. v. FBI*, 522 F.3d 364, 371 (D.C. Cir. 2008) (quoting *Tax Analysts v. Dep't of Justice*, 965 F.2d 1092, 1093 (D.C. Cir. 1992)).  While no one factor is dispositive, *Davy v. CIA*, 550 F.3d 1155, 1159 (D.C. Cir. 2008), "[t]he sifting of those criteria over the facts of a case is a matter of district court discretion . . . ," *Tax Analysts*, 965 F.2d at 1094.

In its Opposition to EPIC's initial Motion for Attorney's Fees, the FBI did not dispute EPIC's argument that it is *eligible* for attorney's fees.  The FBI also does not presently object to Magistrate Judge Kay's finding in his Report and Recommendation that EPIC is eligible for attorney's fees and costs under FOIA.  The Court finds the reasoning in the Report and Recommendation on the issue of eligibility to be sound and, accordingly, adopts the recommendation.

As for EPIC's *entitlement* to attorney's fees and costs, the FBI simply incorporates into its present Objections the arguments it made in its Opposition to EPIC's Motion for Attorney's Fees.  The FBI does not make any new arguments regarding EPIC's entitlement to attorney's fees.  The FBI initially opposed the Court finding EPIC entitled to attorney's fees and costs on the basis that (1) the disclosed records did not benefit the public and, (2) the FBI had a reasonable basis for its actions.  Def.'s Opp'n at 10-16.  The Court has reviewed the FBI's arguments in its Opposition to Plaintiff's Motion for Attorney's Fees, the case law and exhibits cited by the parties, and the Report and

7

Recommendation as to the issue of entitlement, and agrees with the reasoning of the Report and Recommendation as to this issue.  Accordingly, the Court adopts the reasoning of the Report and Recommendation that the first three entitlement factors weigh in favor of EPIC and the final factor is neutral and finds that EPIC is entitled to attorney's fees and costs.

### B. Reasonableness of EPIC's Attorney's Fees

As the Court adopts the finding in the Report and Recommendation that EPIC is both eligible and entitled to attorney's fees, the Court next must determine the reasonableness of the fee award by exercising its "traditional equitable discretion." *Fenster v. Brown*, 617 F.2d 740, 742 (D.C. Cir. 1979). "D.C. courts recognize that the 'usual method of calculating reasonable attorney's fees is to multiply the hours reasonably expended in the litigation by a reasonable hourly fee, producing the 'lodestar' amount." *Judicial Watch, Inc. v. BLM*, 562 F.Supp.2d 159, 175 (D.D.C. 2008), *rev'd on other grounds*, 610 F.3d 747 (D.C. Cir. 2010) (quoting *Bd. of Trs. of the Hotel & Rest. Emples. Local 25 v. JPR, Inc.*, 136 F.3d 794, 801 (D.C. Cir. 1998)).  When, as here, the plaintiff is represented by an attorney who charges discounted rates for "public-spirited reasons," the plaintiff may nevertheless recover an award based on market rates.  *Id.*  Courts apply the *Laffey* matrix, "a schedule of charges based on years of experience," to determine reasonable hourly rates in order to compute the "lodestar" amount.  *Id.*  EPIC requested $33,802 in attorney's fees and $350 in costs.[3]  The Report and Recommendation found that EPIC should be awarded $20,799 in attorney's fees and $350 in costs for litigating the merits of this FOIA action.

---

[3] This amount represents the amount EPIC requested in its initial Motion for Attorney's Fees and includes fees for preparing that initial Motion for Attorney's Fees.  EPIC subsequently requested fees for preparing the reply in support of its Motion for Attorney's Fees, as well as fees related to the briefing of the parties' Objections to the Report and Recommendation.  Magistrate Judge Kay did not address any of these subsequent fee requests in his Report and Recommendation.  The Court addresses these fee requests, as well as the portion of EPIC's initial fee request attributable to the preparation of its Motion for Attorney's Fees, in Part III.C of this Memorandum Opinion.

EPIC, as the party seeking fees, bears the burden of establishing the reasonableness of its request.  *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 970 (D.C. Cir. 2004).  In the FBI's Opposition to Plaintiff's Motion for Attorney's Fees, the FBI contested as unreasonable five aspects of EPIC's requested fees for litigating the merits of their Complaint: (1) time spent preparing the Complaint; (2) time spent preparing the Joint Proposed Schedule; (3) time spent reviewing released documents; (4) the fees requested for new lawyers; and (5) the fees requested despite "billing anomalies."  Def.'s Opp'n at 18-25. Magistrate Judge Kay made recommendations with respect to each of the FBI's challenges.  Specifically, Magistrate Judge Kay recommended:

- no reduction in the $350 litigation costs sought by EPIC;
- reduction of $2,878.50 in preparing the Complaint;
- reduction of $2,774.50 in preparing the Joint Proposed Schedule;
- reduction of $3,763 for work reviewing documents received pursuant to the FOIA request, but no reduction for other work (i.e., work other than document review) following the FBI's production of documents in accordance with the Court's *Open America* Order;
- no reduction based on the FBI's Laffey Matrix analysis for new lawyers; and
- no reduction on the basis of billing anomalies.

*See* R&R at 14.

In its present Objections, the FBI does not object to Magistrate Judge Kay's recommendations as to any of its five challenges previously raised in its original motion.  EPIC, on the other hand, objects to Magistrate Judge Kay's recommendation to reduce the fees award for (1) time spent preparing the Complaint, and (2) time spent reviewing documents.  *See* Pl.'s Objs. at 3-11.  As such, the Court shall only address herein the two recommendations objected to by EPIC.  As to the aspects of Magistrate Judge Kay's recommendations to which neither party objects, the Court finds Magistrate Judge Kay's recommendations to be well-reasoned and thorough.  Accordingly, the Court adopts these recommendations.[4]

---

[4] To be clear, the Court adopts the following recommendations from the Report and

### i.      Time Spent Preparing the Complaint

EPIC requested $5,308.50 in attorney's fees for the time EPIC attorneys spent preparing the Complaint in this matter.  In his Report and Recommendation, Magistrate Judge Kay reduced by $2,878.50 EPIC's requested fee award, finding that "18.4 hours spread across three people is an excessive amount of time to draft th[e] Complaint."  R&R at 9.  Magistrate Judge Kay adopted the FBI's proposal that EPIC be entitled to only "8 hours—six at Mr. Butler's rate and two at Mr. Rotenburg's"—for drafting the Complaint.  *Id.*  EPIC objects to this reduction in its attorney's fees award on the basis that this Court should not engage in such "nitpicking."  Pl.'s Objs. at 5.

Having reviewed the hours EPIC spent preparing and filing the Complaint as set forth in EPIC's case billing record, *see* Pl.'s Ex. 8, ECF No. [28-9], the Court agrees it is appropriate to reduce the fee award attributable to the preparation and filing of the Complaint.  The Complaint drafted by EPIC is a straightforward, nine-page FOIA complaint, similar to the complaints that EPIC frequently files in FOIA litigation in this Circuit.  Although the Court recognizes the comprehensive nature of EPIC's Complaint, the Court nevertheless finds it unreasonable for EPIC to bill 18.4 hours—more than two full days of work—over three different attorneys for the preparation and filing of this Complaint.  A review of the case billing record reveals inefficiencies and redundancies that makes EPIC's fee request for the Complaint unreasonable.  For example, two senior EPIC attorneys spent nearly twice as much time editing the Complaint

---

Recommendation:
- no reduction in the $350 litigation costs sought by Plaintiff;
- reduction of $2,774.50 in preparing the Joint Proposed Schedule;
- no reduction for other work (i.e., work other than document review) following the FBI's production of documents in accordance with the Court's *Open America* Order;
- no reduction based on the FBI's Laffey Matrix analysis; and
- no reduction on the basis of billing anomalies.

*See* R&R at 14.

as was spent initially drafting the Complaint. *See* Pl.'s Ex. 8 at 1-2.  Accordingly, the Court shall

reduce the requested attorney's fee award attributable to the time spent preparing the Complaint.

The Court finds it more reasonable to award EPIC fees for 6 hours preparing and filing the

Complaint at Mr. Butler's rate, 2.5 hours at Ms. McCall's rate, and 1 hour at Mr. Rotenberg's

rate, for a total of $2,535. This adjusted award for the preparing and filing of the Complaint

represents a $2,773.50 reduction in EPIC's requested attorney's fees award.

### ii.    Time Spent Reviewing Documents

Magistrate Judge Kay also reduced EPIC's fee award by an additional $3,763, the value of

the time EPIC attorneys spent reviewing documents EPIC received following the Court's *Open*

*America* Order, reasoning that EPIC "would have had to review the documents regardless of the

litigation."   R&R at 10-12.   EPIC objects to this recommendation and argues that Magistrate

Judge Kay "failed to recognize that EPIC only billed for time spent reviewing documents as

necessary to perform the 'legal work pursuant to this litigation.' "  Pl.'s Objs. at 8.   EPIC also

argues that Magistrate Judge Kay incorrectly calculated the amount EPIC billed for time spent

reviewing documents as $3,763, when the actual amount was $3,699.50.   After reviewing the

case billing record provided by EPIC, *see* Pl.'s Ex. 8, the Court agrees that the proper amount to

be attributed to the review of documents released by the FBI pursuant to this litigation is

$3,699.50.[5]

The Court also agrees that the time EPIC attorneys spent reviewing documents released

by the FBI in response to this FOIA litigation should be included in EPIC's attorney's fees

award. The Report and Recommendation is correct that, to the extent an attorney spends time

---

[5] The FBI does not object to EPIC's calculation of the attorney's fees attributable to the
review of released documents. The difference between the amount calculated by Magistrate
Judge Kay in his Report and Recommendation and the amount calculated by EPIC appears to be
no more than a simple calculation error.

reviewing released documents for a purpose unrelated to the FOIA litigation, for example, to report on the released documents to the media or to assimilate the information contained in the documents and use that information to facilitate a non-litigation related mission, fees should not be awarded for that time. *See EPIC v. DHS*, 999 F.Supp.2d 61, 75 (D.D.C. 2013) ("Nor should fees be awarded for time expended in using documents produced."); *CREW v. DOJ*, 825 F.Supp.2d 226, 231 (D.D.C. 2011) ("FOIA provides that a plaintiff may recover 'attorney fees and other *litigation* costs reasonably incurred in any case." (emphasis in original)).  However, to the extent that the released documents are being reviewed to evaluate the sufficiency of the release or the propriety of a specific withholding so that the attorney can then challenge the release or withholding, such document review time is properly included in a FOIA attorney's fees award. *See EPIC v. DHS*, 811 F.Supp.2d 216, 239-70 (D.D.C. 2011) (awarding fees for reviewing documents released by DHS during the course of litigation, reasoning that "it would seem critical to the prosecution of a FOIA lawsuit for a plaintiff to review an agency's disclosure for sufficiency and proper withholding during the course of its FOIA litigation"); *EPIC*, 999 F.Supp.2d at 75 (awarding fees for time spent reviewing documents because "EPIC [was] only seeking fees for review of documents produced during this litigation, and DHS '[had] failed to provide any evidence that this time billed by Plaintiff's attorneys was not spent for the purpose of litigating this case.' "); *CREW*, 825 F.Supp.2d at 231 (not awarding attorney's fees for time spent reviewing documents released following court's order where plaintiff did not challenge any of the agency's withholdings); *but see EPIC v. FBI*, ---F.Supp.3d---, 2014 WL 5713859, *9 (D.D.C. Nov. 5, 2014) (awarding fees for reviewing released documents even when plaintiff did not subsequently challenge the agency's redactions because "EPIC's counsel reviewed the 2,462 pages of documents the FBI produced during this case to ensure the agency's compliance with

12

FOIA and the Court's . . . Order" and to make the decision whether to challenge the agency's redactions).

Here, the facts as laid out by the parties in their August 2013 and November 2013 Joint Status Reports reveal that the time EPIC billed for reviewing documents released by the FBI was integral to the ongoing litigation as it was spent evaluating the FBI's disclosure for "sufficiency and proper withholding" in order to challenge the FBI's withholdings.  The FBI began drip releasing the requested documents in October 2012 and, following the Court's March 28, 2013, Order denying the *Open America* stay, finished releasing the documents on July 30, 2013. Throughout this period EPIC attorneys reviewed the released documents.  *See* Pl.'s Ex. 8 at 8-13. EPIC states that the only document review time it included in its case billing report from this period involved reviewing documents for the purpose of determining the sufficiency of the FBI's document release and the propriety of their withholdings.  Pl.'s Objs. at 7.  In the parties' August 29, 2013, Joint Status Report, the parties averred that while EPIC accepted certain of the FBI's withholdings of documents in part or in their entirety pursuant to several FOIA exemptions, EPIC attorneys did "not have sufficient information to evaluate the Defendant's withholdings under Exemptions 3 and 7(E)" and to "determine whether Defendant [had] produced all non-exempt records."  Joint Status Report (Aug. 29, 2013), ¶ 9.  Accordingly, the parties agreed that the FBI would produce a *Vaughn* index for a 500-page sample of released documents that would be selected by EPIC attorneys. *Id.* ¶ 10. EPIC attorneys included in their case billing record time spent reviewing the released documents in order to compile the 500-page sample for the FBI's *Vaughn* index. Pl.'s Objs. at 10; Pl.'s Ex. 8 at 12-13.  In responding to EPIC's request that the FBI prepare a *Vaughn* index to support its withholding of certain documents pursuant to FOIA Exemptions 3 and 7(E), the FBI "voluntarily agreed to review the 500 pages to determine if there

were additional terms that could be released."   Joint Status Report (Nov. 1, 2013), ¶ 6. Ultimately, the FBI "reprocessed the sample pages" and released "additional terms that had been redacted in Defendant's original production." *Id.* ¶ 7.

Accordingly, the Court finds that EPIC attorneys' review of released documents was directly related to the ongoing FOIA litigation, specifically, challenging the sufficiency of the FBI's document release and the propriety of the FBI's withholdings.  This is not a case where a plaintiff filed a complaint for documents under FOIA, the agency released the documents, and the plaintiff then requested attorney's fees for its time reviewing the released documents. *See CREW*, 825 F.Supp.2d at 231. EPIC did not accept all of the FBI's withholdings and secured the release of additional responsive documents after requiring the FBI to justify their invocation of certain FOIA Exemptions in the documents EPIC had reviewed. The time EPIC attorneys spent reviewing the released documents  was an integral part of this FOIA litigation and crucial to EPIC's success in the litigation. Accordingly, the Court finds that EPIC should be awarded attorney's fees for the time it has billed for the review of released documents.

In sum, EPIC shall be awarded its requested attorney's fees and costs for litigating the merits of this FOIA action with only a reduction in the fees request attributable to time spent preparing and filing the Complaint and the Joint Proposed Schedule.

### C.  EPIC's Request for Attorney's Fees for Litigating the Attorney's Fees Award

Turning to the final issue, EPIC additionally requests that the Court award it attorney's fees incurred in petitioning for attorney's fees, objecting to the Report and Recommendation, and in responding to the FBI's objections to the Report and Recommendation.  Such an award is commonly referred to as a "fees-on-fees" award.  Specifically, EPIC requests $3,587.50 in fees for preparing its initial attorney's fees motion; $3,469.50 for preparing its Reply in support of its fee motion; $5,254

for preparing its Objections to the Report and Recommendation; $3,420 for preparing its Opposition to Defendant's Objections; and approximately $1,376 for preparing its Reply in support of its Objections to the Report and Recommendation.[6]  In his Report and Recommendation, Magistrate Judge Kay abstained from determining any fees-on-fees award until "the trial court's final determination of fees, and an accounting of the hours spent in litigating fees."  R&R at 13-14. Accordingly, Magistrate Judge Kay reduced EPIC's requested overall attorney's fees award by $3,587.50, "the amount EPIC billed for fees-on-fees in the current submission."  *Id.* at 14.  As the Court has determined the amount of attorney's fees and costs to which EPIC is entitled for its work litigating the *merits* of this case, the Court may now consider EPIC's fees-on-fees request.

     As an initial matter, both parties dispute the amount of requested fees Magistrate Judge Kay should have attributed to the fee litigation.  EPIC argues that in the briefing of its Motion for Attorney's Fees, it requested a total of $7,057 in fees-on-fees[7]—$3,587.50 for the initial motion and $3,469.50 for the reply— not $3,587.50 as the Report and Recommendation suggests.  After reviewing the Report and Recommendation, it appears that Magistrate Judge Kay only considered the amount of fees-on-fees requested in EPIC's initial Motion for Attorney's Fees and not the additional request for fees-on-fees that EPIC made in its Reply in support of its Motion for Attorney's Fees. However, as Magistrate Judge Kay entirely abstained from making a recommendation as to the fees-

_____

     [6] EPIC does not provide a billing record for the hours and rates attributable to the preparation of its Reply in support of its Objections to the Report and Recommendation. In its Reply, EPIC only includes a footnote detailing the number of hours each attorney spent on the Reply and stating that "[a]ll attorneys listed swear that these hours are true and correct."  Pl.'s Reply at 3 n.1.  As the Court does not find it reasonable to award attorney's fees for EPIC's preparation of a reply in support of its Objections to the Report and Recommendation, the Court need not address whether Plaintiff has provided sufficient evidence to support this specific attorney's fees request.

     [7] EPIC actually states that it requested $7,054 for its work on its initial Motion for Attorney's Fees and Reply.  Pl.'s Objs. at 12.  The difference between the Court's total and the total EPIC is claiming it requested in its present Objections appears to be attributable to a simple $3 calculation error.

on-fees award, this omission is of no moment.

The FBI also argues that the Report and Recommendation misstated the amount of requested fees attributable to the fee litigation, but for a far different reason.  Specifically, the FBI argues that Magistrate Judge Kay should have treated all of the hours EPIC attorneys billed after October 2, 2013—the last time, the FBI alleges, EPIC performed any legal work in connection with the underlying FOIA dispute—as part of the requested fees-on-fees award.  Def.'s Objs. at 5.  The FBI contends that after October 2, 2013, "every single billing entry relates to fees—whether an attempt to settle the fee dispute, preparation of a status report concerning the fee dispute, researching concerning fee law, or preparation and filing of the fee motion."  *Id.* at 5-6.  Accordingly, the FBI argues, EPIC's initial fees-on-fee request actually totaled $8,145 and Magistrate Judge Kay should have reduced EPIC's overall attorney's fees award by that amount when he declined to award fees-on-fees in the Report and Recommendation.  Instead, Magistrate Judge Kay reduced EPIC's overall attorney's fee award by $3,587.50, which only represents the amount directly attributable to EPIC's drafting and editing of the initial motion for attorney's fees.  Magistrate Judge Kay recommended allowing recovery of fees for EPIC's other work related to attorney's fees, but not related to the drafting of the actual motion for attorney's fees, explaining that such work is "closely tied to the litigation."   R&R at 11 (explaining that fees should be allowed for EPIC attorneys' work "conduct[ing] research, h[olding] internal discussions about the productions, h[olding] discussions with opposing counsel about the productions, draft[ing] filings for the Court, and *work[ing] internally and with opposing counsel on settlement*." (emphasis added)).

The Court agrees with the FBI that all of the hours EPIC billed after October 2, 2013, directly related to EPIC's efforts to obtain attorney's fees for this FOIA litigation and are thus

most appropriately treated as part of EPIC's requested fees-on-fees award.[8] Accordingly, the Court calculates that EPIC has requested $21,664.50 in fees-on-fees: $4,557.50 for time spent on settlement negotiations related to attorney's fees; $3,587.50 for preparing the initial motion for attorney's fees; $3,469.50 for preparing EPIC's reply in support of their motion for attorney's fees; $5,254 for preparing their Objections to the Report and Recommendation on EPIC's motion for attorney's fees; $3,420 for preparing their Opposition to the FBI's Objections to the Report and Recommendation; and approximately $1,376 for their reply in support of their Objections.

The FBI argues that such a fees-on-fees award is exorbitant. The FBI urges the Court to not award fees for EPIC's preparation of its Opposition to the FBI's Objections to the Report and Recommendation. Def.'s Reply at 4. The FBI also urges the Court to order a fees-on-fees award no greater than 15% of the attorney's fees awarded for litigating the merits of this action. *Id.* at 2. While it "is settled in this circuit" that "[h]ours reasonably devoted to a request for fees are compensable," *Noxell Corp. v. Firehouse No. 1 Bar–B–Que Rest.,* 771 F.2d 521, 528 (D.C. Cir. 1985), " 'fees on fees must be reasonable, and not excessive,' " *Boehner v. McDermott,* 541 F.Supp.2d 310, 325 (D.D.C. 2008) (citation omitted). "Courts, therefore, 'have an obligation to scrutinize the hours spent preparing the fee petitions to insure that the total is reasonable and that it does not represent a windfall for the attorneys.' " *Id.* (citation omitted). In *Commissioner, INS v. Jean,* 496 U.S. 154 (1990), the Supreme Court has explained that

> [b]ecause . . . the district court [must] consider the relationship between the amount of the fee awarded and the results obtained, fees for fee litigation should be excluded to the extent that the applicant ultimately fails to prevail in such litigation.

---

[8] Because the Court has determined that these fees are to be treated as part of EPIC's fees-on-fees request, the Court, in contrast with Magistrate Judge Kay's Report and Recommendation, did not include these fees as part of the attorney's fees it is awarding for EPIC's litigation of the underlying FOIA action.

*Id.* at 163 n.10.  The Court agrees with the FBI that EPIC's fees-on-fees request, which is over $1,000 greater than the $20,459.50 in attorney's fees and costs the Court is awarding EPIC for litigating the underlying FOIA action, is excessive.  First, the Court finds that awarding EPIC attorney's fees for preparing its Opposition to the FBI's Objections to the Report and Recommendation would effectively be a "fees-on-fees-on-fees" award because EPIC's Opposition only addresses its request for a fees-on-fees award.  Such a "fees-on-fees-on-fees" award is too attenuated from original adjudication to be compensable.  *See Means*, 999 F.Supp.2d at 136 n.7 ("fees on fees on fees, as may be pursued by the plaintiff for the successful adjudication of the current claim, may be too removed to be compensable"); *Kaseman v. District of Columbia,* 444 F.3d 637, 640 (D.C. Cir. 2006) ("our general rule is that the court may award additional fees for 'time reasonably devoted to obtaining *attorneys fees*' " (emphasis added) (citation omitted)).  Accordingly, the Court reduces EPIC's requested fees-on-fees award by $3,420—the amount EPIC billed for preparing its Opposition to the FBI's Objections.

The Court does find it generally appropriate to award EPIC for its work attempting to settle the attorney's fees matter, preparing the initial motion for attorney's fees and its reply in support of its motion, and in preparing the Objections presently before the Court.  However, the Court is mindful that the amount billed by EPIC for these activities totals $18,244.50, nearly 90% of the amount the Court is awarding EPIC in attorney's fees for litigating the merits of their FOIA action.  As previously explained, the Court has "an obligation to scrutinize the hours spent preparing the fee petitions to insure that the total is reasonable and that it does not represent a windfall for the attorneys." *Boehner,* 541 F.Supp.2d at 325.  The Court finds that such a fees-on-fees award would be excessive especially in light of the straightforward, short-term merits

litigation and the equally straightforward fees litigation in this case. After reviewing the case billing records related to the fees litigation, the Court finds that EPIC has submitted several redundant fee requests. Most notably, EPIC makes many of the same arguments in its Objections to the Report and Recommendation and its Reply in support of its Objections as it made in its Reply in support of its initial Motion for Attorney's Fees. Nevertheless, EPIC has billed an approximate total of $6,630 in fees for the preparation of the Objections and the supporting Reply—nearly as much as EPIC billed for its initial, far more extensive Motion for Attorney's Fees and Reply. The only extent to which these pleadings are arguably not redundant is the extent to which they address the FBI's fees-on-fees objections; however, the Court has already ruled that it shall not allow any fees-on-fees-on-fees awards. Accordingly, so as to eliminate the redundancy in EPIC's fees billing and avoid granting EPIC an unjustified windfall, the Court shall not award attorney's fees for EPIC's preparation of its Objections to the Report and Recommendation nor for the preparation of its Reply in support of its Objections.

The Court shall award EPIC fees-on-fees for its fee-related legal work prior to the filing of its Motion for Attorney's Fees, and for its work preparing the initial Motion for Attorney's Fees and its supporting Reply. EPIC has requested a total of $11,614.50 for this work. However, as discussed above, the Supreme Court and courts in this Circuit have held that "fees for fee litigation should be excluded to the extent that the applicant ultimately fails to prevail in such litigation." *Commissioner, INS v. Jean*, 496 U.S. 154, 163 n.10 (1990); *see also Nat. Veterans Legal Services Program v. Dept. of Veterans Affairs,* No. 96-1740, 1999 WL 33740260, *4 (D.D.C. April 13, 1999) (" 'the applicant should not receive fees for the time spent defending' aspects of the fees request that proved unsuccessful" (quoting *Commissioner, INS*, 496 U.S. at 163 n.10)). Some courts have reduced fees-on-fees recovery by a

percentage representing the percentage by which the attorney's fees requested in the prevailing party's original fee motion were reduced. *See id.* (citing cases). Here, EPIC was not entirely successful in litigating for attorney's fees incurred in preparing its Complaint or the Joint Prepared Schedule and the Court has accordingly reduced EPIC's attorney's fee award by $5,548 as discussed above. This amount represents a 21% reduction in EPIC's requested attorney's fees and costs award for litigating the merits of this FOIA action. Accordingly, the Court finds it appropriate to reduce EPIC's requested fees-on-fees award by 21% to $9,175.50.

## IV. CONCLUSION

For the foregoing reasons, the Court adopts Magistrate Judge Kay's Report and Recommendation except for the modifications delineated above. Accordingly, the Court shall award EPIC $20,109.50 in attorney's fees and $350 in costs for litigating the underlying FOIA action and $9,175.50 as a fees-on-fees award. In sum, the Court shall award EPIC $29,635 in attorney's fees and costs.

An appropriate Order accompanies this Memorandum Opinion.

                             _____*/s/*_____
                             **COLLEEN KOLLAR-KOTELLY**
                             UNITED STATES DISTRICT JUDGE